UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARY TROMBLEE,                              Civil Action No.:
                                            1:19-CV-0638 (LEK/CFH)


                          Plaintiff,

                                            SECOND AMENDED
                                            COMPLAINT
                                            JURY TRIAL DEMANDED

        v.

STATE OF NEW YORK, STATE OF NEW YORK,
NEW YORK STATE OFFICE
FOR PEOPLE WITH DEVELOPMENTAL DISABILITIES;
CHAD DOMINIE, Individually and in his capacity as a
Keyboard Specialist/Secretary for the Office for People with
Developmental Disabilities at the Glens Falls Facility;
LIAM STANDER, Individually and in his capacity as a
Treatment Team Leader and Supervisor for the for the
Office for People with Developmental Disabilities at the
Glens Falls Facility;
ALEXIS BARLOW, Individually and in her capacity as
Treatment Team Leader and Office Supervisor for the
Office for People with Developmental Disabilities
at the Glens Falls Facility;

                          Defendants.
_____

        Plaintiff, Mary Tromblee, by her attorneys, Solomon Law Firm, PLLC, Kathryn Barcroft,

Esq., and Ariel Solomon, Esq., alleges in the Complaint as follows:

### JURY DEMAND

        1.      Plaintiff, Mary Tromblee, demands a trial by jury of all issues in this action.

### PRELIMINARY STATEMENT

        2.      Plaintiff, Mary Tromblee, seeks to recover damages against defendants, the State

of New York ("NYS"), New York Office for People With Developmental Disabilities

1

("NYSOPWDD") ("collectively the State"), Mr. Chad Dominie individually and in his official capacity as a Secretary at the Glens Falls facility, located at 10 Glen Street, Glens Falls, NY 12801, Mr. Liam Stander individually and in his official capacity as Treatment Team Leader and Supervisor at the Glens Falls facility, located at 10 Glen Street, Glens Falls, NY 12801, Ms. Alexis Barlow individually and in her official capacity as a Treatment Team Leader and Supervisor at the Glens Falls facility, located at 10 Glen Street, Glens Falls, NY 12801, for unlawful discrimination, hostile work environment, sexual harassment, retaliation, and constructive discharge based upon Plaintiff's sex and gender, in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e *et seq*, (hereinafter "Title VII"), 42 U.S.C. § 1983 (hereinafter "§ 1983") and the New York State Human Rights Law § 290 *et seq*. of the Executive Law of the State of New York (hereinafter "Human Rights Law") and other common law causes of action.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over the Plaintiff's claims on this action pursuant to the United States Constitution, 42 U.S.C. § 1983, 42 U.S.C. § 2000e-5(f)(3), 28 U.S.C. § 1331, and 28 U.S.C. § 1343. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to adjudicate Plaintiffs claims under state statutory law and common law.

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3) because the defendants reside within the jurisdiction of the Northern District of New York, because the unlawful employment practices alleged herein were committed in the Northern District of New York and because defendants have offices, conduct business, and can be found in the Northern District of New York.

5.     Plaintiff is an adult female and currently resides at 2102 Courtland Drive, Sanford, North Carolina 27330.

6.     The Defendant, the State of New York, maintains offices throughout the State of New York.

7.     The Defendant, NYSOPWDD, maintains offices throughout the State of New York including those located in Glens Falls, Schenectady, and Corinth, New York.

8.     Defendant Chad Dominie is, upon information and belief, an adult male resident of the State of New York.

9.     Defendant Liam Stander is, upon information and belief, an adult male resident of the State of New York.

10.     Defendant Alexis Barlow is, upon information and belief, an adult female resident of the State of New York.

11.     At all relevant times defendant Chad Dominie is and has been employed by NYSOPWDD as a Keyboard Specialist/Secretary at the Glens Falls facility, located at 10 Glen Street, Glens Falls, NY 12801.

12.     At all relevant times defendant Liam Stander has been employed by NYSOPWDD as Treatment Team Leader and Supervisor at the Glens Falls facility, located at 10 Glen Street, Glens Falls, NY 12801. Upon information and belief, Mr. Stander is now retired and resides at 16 Crowsnest Ct, Waterford, NY 12188.

13.     At all relevant times defendant Alexis Barlow is and has been employed by NYSOPWDD as a Treatment Team Leader and Supervisor at the Glens Falls facility, located at 10 Glen Street, Glens Falls, 12801.

14. Upon information and belief, defendants are, and at all times mentioned, authorized to do business in the State of New York.

15. Defendants Stander and Barlow are persons subject to the mandates of § 1983.

16. The defendant, the State of New York, is an employer under Title VII as it is engaged in an industry affecting commerce and has 15 or more employees for each working day in 20 or more calendar weeks in the current or preceding calendar year.

17. The defendant, NYSOPWDD, is an employer under Title VII as it is engaged in an industry affecting commerce and has 15 or more employees for each working day in 20 or more calendar weeks in the current or preceding calendar year.

18. The defendant, the State of New York, is also an employer as defined in § 292(5) of the New York Executive Law.

19. The defendant, NYSOPWDD, is also an employer as defined in § 292(5) of the New York Executive Law.

20. At all relevant times, Plaintiff took direction from the defendants.

21. At all relevant times, the defendants jointly exercised control over the terms and conditions of Plaintiff's employment.

22. Upon information and belief, the defendants and their agents jointly made the decisions that led to the violations of the Plaintiff's rights under Title VII, § 1983, the N.Y. Executive Law, and N.Y. State Common Law.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

23. Plaintiff timely filed a charge of discrimination on or about August 1, 2018 with the U.S. Equal Employment Opportunity Commission ("EEOC") (Charge No. 525-2018-01328).

24.     Plaintiff received a Notice of Right to Sue dated March 1, 2019 issued by the U.S. Department of Justice, Civil Rights Division. A true and correct copy of the Notice of Right to Sue is annexed hereto as Exhibit "A". Plaintiff filed the initial Complaint within ninety (90) days of receipt of the Notice of Right to Sue.

25.     Plaintiff filed a Second Charge of Discrimination on or about August 23, 2019 with the EEOC.   Plaintiff received a Notice of Right to Sue dated November 21, 2019 issued by the U.S. Department of Justice, Civil Rights Division.  A true and correct copy of the Notice of Right to Sue is annexed hereto as Exhibit "B". Plaintiff filed an Amended Complaint within ninety (90) days of receipt of the Notice of Right to Sue.

26.     Plaintiff filed a Third Charge of Discrimination on or about April 7, 2021 with the EEOC (Charge No. 525-2021-00836). Plaintiff received a Notice of Right to Sue dated April 8, 2021 issued by the U.S. Department of Justice, Civil Rights Division. A true and correct copy of the Notice of Right to Sue is annexed hereto as Exhibit "C." Plaintiff files this Second Amended Complaint within ninety (90) days of receipt of the Notice of Right to Sue.

27.     Plaintiff has timely filed this action and has complied with all administrative prerequisites to bring this lawsuit.

## FACTS

28.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

29.     Plaintiff, Mary Tromblee, began working in the Glens Falls facility around May 2016.

30.     From on or about on or about December 2016 through on or about October 2017, Plaintiff was subject to unwanted and unwelcome physical and verbal contacts, assaults, and batteries, including those of sexual nature, by Mr. Chad Dominie and Mr. Liam Stander.

31. The actions of these defendants continue to impact the Plaintiff and constitute a continuing violation in connection with the hostile work environment through a series of connected severe and pervasive actions that have harmed her.

32. Ms. Tromblee sat directly in front of Mr. Dominie, sharing a cubicle wall with him.

33. On or about January 2017, while speaking with Dr. Byron, Medical Director of DDSO, Mr. Dominie put his hand down Ms. Tromblee's blouse and cupped her left breast.

34. After getting off the phone, Ms. Tromblee told him that he was never to touch her like this again. Ms. Tromblee also informed her Treatment Team Leader Ms. Barlow.

35. On or about January 2017, Mr. Dominie, on two separate occasions, tackled Ms. Tromblee over the arm of a couch in the office, pinning her to the couch, so that she could not move.

36. Following these events, Ms. Tromblee promptly again informed her Treatment Team Leader Ms. Barlow about Mr. Dominie's conduct.

37. In a meeting regarding these incidents, in which Ms. Barlow and Mr. Dominie were both present, Ms. Tromblee told the parties present that she had previously underwent two back surgeries and she was afraid that she was going to get injured.

38. At this meeting, there was a discussion about "boundaries" with Mr. Dominie and he agreed that he would not touch Ms. Tromblee anymore. Unfortunately, the cessation of the improper conduct lasted only a short time, between days to a week.

39. On or about January or February 2017, Mr. Dominie pulled a chair up to Ms. Tromblee and stated that he liked the pants that Ms. Tromblee was wearing and hit Ms. Tromblee on her thigh, leaving a handprint.

40.     After Ms. Tromblee told Mr. Dominie that he had hurt her by hitting her on the thigh, Mr. Dominie responded, "You love it." Ms. Tromblee responded by telling Mr. Dominie to keep his hands off her and that he had hurt her.

41.     After returning home, Ms. Tromblee found that Mr. Dominie's act of hitting her on the thigh had left a visible bruise.

42.     On at least 3-4 occasions, beginning on or about January 2017, Mr. Dominie grabbed one or both of Ms. Tromblee's wrists and then twisted them. This resulted in bruising on several occasions. Annette Abare and Michelle Bovee, Development Aides who worked with individuals who NYSOPWDD served at the Adirondack Day Hab, saw Ms. Tromblee and questioned her because they thought she had been injured. She replied, "[t]his is what Chad does to me."

43.     On numerous occasions, from December 2016 through on or about October 11, 2017, Mr. Dominie and Mr. Stander exchanged sexually explicit text messages and pictures on their cellular phones in a manner visible to Ms. Tromblee. Mr. Dominie would bring these messages and pictures to the office and discuss them, including instances of showing a picture of a penis to Ms. Tromblee and watching porn on his computer. Mr. Dominie and Mr. Stander would also engage in public displays of "dry humping" each other (i.e. simulating sexual intercourse while clothed).

44.     On numerous occasions, from on or about January 2017 through on or about October 11, 2017, Mr. Dominie publicly showed explicit text messages and pictures from Mr. Stander to Ms. Tromblee and others in the office.

45.     On numerous occasions, from on or about January 2017 through on or about October 11, 2017, Mr. Dominie accessed sexual material using his office computer in a manner

visible to Ms. Tromblee, and publicly shared this material with Ms. Tromblee and others in the office.

46.     On numerous occasions, from on or about January 2017 through on or about October 11, 2017, Mr. Dominie often refused to allow Ms. Tromblee to utilize the light over her desk and often subjected her to verbal abuse for trying to utilize this light.

47.     When Ms. Tromblee would attempt to use the light, Mr. Dominie would say, "I was here first, bitch, and I don't want this light on" or words to that effect.

48.     From on or about January 2017 through on or about October 2017, Mr. Dominie made numerous other explicit, suggestive, degrading, and threatening comments to Ms. Tromblee, including those of a sexual nature, such as calling her names such as cunt, bitch, whore, and slut.

49.     On or about January of 2017 through on or about October 2017, Mr. Dominie told Ms. Tromblee to "shut your whore mouth and go make me a sandwich because that's what women are good for is to be on their knees and make food for men," or words to that effect.

50.     On or about January of 2017 through on or about October 2017, Mr. Dominie called Ms. Tromblee a "bitch."

51.     On or about January of 2017 through on or about October 2017, Mr. Dominie told Ms. Tromblee that they were going to have intercourse, despite her objections, including, without limitation, by stating, on different occasions, "we are going to fuck," "you have fuck me eyes," "you need a real man," and "if you see what I have, you will want to fuck me," or words to these effects.

52.     On or about January of 2017 through on or about October 2017, Mr. Dominie called Ms. Tromblee's husband a "pussy."

53. On or about January 2017 through on or about October 2017, Mr. Dominie would make false accusations of Ms. Tromblee making statements that she did not make.

54. On or about January 2017 through on or about October 2017, Mr. Dominie stated, "I was here long before you, bitch, and I'll be here long after" or words to that effect.

55. On or about January 2017, Ms. Tromblee again complained of Mr. Dominie's behavior to Ms. Barlow, and met with Ms. Barlow and Mr. Dominie to discuss his inappropriate behavior.

56. On or about February or March 2017, after Ms. Tromblee complained of Mr. Dominie's behavior, Mr. Dominie placed a fake rat on Ms. Tromblee's desk and then called Ms. Tromblee a "nark and a rat."

57. From on or about January 2017 through late October 2017, Ms. Tromblee was forced to cease working at her main NYSOPWDD work station during the day at the Glens Falls facility as a result of the continued and unaddressed sexual harassment by Mr. Dominie and was forced to primarily work out of individual homes of NYSOPWDD in which she conducted patient visits.

58. From on or about January 2017 through late October 2017, Ms. Tromblee was forced to be isolated from her workstation, from other nurses and employees, and forced to work extra hours and file paperwork after hours because of her fear of the sexual harassment instigated by Mr. Dominie.

59. From on or about January 2017 through late October 2017, Ms. Tromblee was forced to complete work at her main NYSOPWDD work station located at the Glens Falls facility after normal business hours in order to avoid Mr. Dominie and Mr. Stander and the severe and

pervasive sexually charged hostile work environment Ms. Barlow and Mr. Stander permitted to permeate the office.

60.    From on or about January 2017 through late October 2017, the Agency, including without limitation, through its managers Alexis Barlow and Mr. Stander, failed to sufficiently act to remedy Mr. Dominie's discrimination and harassment despite being informed of it by Ms. Tromblee and others.

61.    On or about February 2017, a coworker, Steve Cernak, sent an email to Mr. Stander regarding a comment Mr. Dominie made to Ms. Tromblee stating, "[s]hut your whore mouth, and make me a sandwich."

62.    On or about February through October of 2017, Ms. Tromblee made additional reports to Ms. Barlow regarding every instance of inappropriate behavior of Mr. Dominie.

63.    On or about January through October 2017, Ms. Barlow witnessed and heard Mr. Dominie engaging in sexually inappropriate behavior or making sexually inappropriate statements and witnessed Mr. Dominie push Ms. Tromblee on a couch on one occasion but chose not to intervene. Ms. Barlow stated, "Stop picking on poor Mary" and "Mary's going to tell me again" in a demeaning and joking manner.

64.    From an unknown time to on or about late October 2017, the Agency, including without limitation, through its managers Alexis Barlow and Mr. Stander, failed to address the sexual harassment and sexual assault of Mr. Dominie in an appropriate manner given his long history of inappropriate behavior, including, but not limited to, actions leading to his reassignment from a direct assistant to a position as a keyboard specialist/secretary.

65.    From an unknown time to on or about late October 2017, the Agency, including and without limitation, through its managers Alexis Barlow and Mr. Stander, failed to address

the sexually inappropriate actions and harassment of Mr. Dominie directed at, without limitation, other females at the NYSOPWDD who were sexually harassed by Mr. Dominie and provided statements to the Associated Press. The names of these women will be kept confidential in this Complaint.

66. From an unknown time through the present, Ms. Tromblee has been excluded by Liam Stander from critical communications regarding vulnerable (disabled) individuals for whom she is responsible.

67. Upon information and belief, this treatment is also part of a campaign to set Ms. Tromblee up for failure, discipline, and/or removal from the Agency.

68. Upon information and belief, Ms. Tromblee was at all times a nurse beloved by patients at the homes where she worked at the NYSOPWDD, winning National Nurse's Week Recognition. Patients described Ms. Tromblee as "a great nurse" and stated she is "always attentive to all the individual's needs" and that "she always answers her phone and answers staff questions." Ms. Tromblee is described as a "very caring and compassionate person to [the group home's] individuals and staff", and "goes above and beyond her job responsibilities."

69. Upon information and belief, despite Ms. Tromblee being an asset to the NYSOPWDD, when informed of Mr. Dominie's actions, the Agency responded at times by taking no action at all, and at other times by merely and inadequately verbally discussing the issues with Mr. Dominie. The agency took no further action despite Mr. Dominie's repeated misconduct.

70. On or about July 2017, Mr. Dominie lifted Ms. Tromblee's shirt up and over her head and held it around Ms. Tromblee's neck and the top of her head, leaving her torso completely exposed.

71.     On at least 3-4 occasions, on or about June and July 2017, Mr. Dominie flung hand sanitizer at Ms. Tromblee, often putting the sanitizer into her hair.

72.     On or about July 2017, Mr. Dominie walked into the entrance of Ms. Tromblee's cubicle and would not let her out. He then unzipped his pants and exposed himself to Ms. Tromblee at her workstation.

73.     On or about July of 2017, on two separate occasions, Mr. Dominie lifted Ms. Tromblee's dress so he could see her underwear.

74.     On at least 3-4 occasions between July 2017 and October 2017, Ms. Barlow responded to Ms. Tromblee's complaints against Mr. Dominie and requests that remedial action be taken against Mr. Dominie by telling Ms. Tromblee that Ms. Tromblee was blameworthy for Mr. Dominie's discrimination and harassment because Ms. Tromblee wore dresses and sometimes spoke to Mr. Dominie.

75.     On or about early October of 2017, during a short period in which Mr. Dominie was away for a surgical procedure, Ms. Tromblee, accompanied by other employees in the same office, approached Ms. Barlow and stated that they were uncomfortable about him returning from medical leave and coming back to the office.

76.     Ms. Barlow responded by stating "one of you is playing into this," and told the women that there was nothing she could do.

77.     On or about October 11, 2017, upon his return from his surgical procedure, Mr. Dominie shoved Ms. Tromblee into a chair, straddled her legs, held her hands over her head and threatened to rape her, stating, "If you aren't going to fucking give me what I want, I am going to take it," or words to that effect. Ms. Tromblee screamed for help, causing Mr. Dominie to end his assault and battery.

12

78. There was one other NYSOPWDD employee present in the office at the time of the attack, Ms. Tammy Madison. Ms. Tromblee immediately went into Ms. Madison's office and reported what had happened at the hands of Mr. Dominie.

79. On or about October 16, 2017, following Mr. Dominie's attack on Ms. Tromblee, Ms. Tromblee reported the attack to Ms. Barlow who stated in response, "I can't believe he's only been back three days, and he's already in trouble again."

80. On or about October 16, 2017, following Mr. Dominie's attack on Ms. Tromblee, Mr. Stander made comments that "we all have taken part in fooling around, and we all hold some blame."

81. On or about October 16, 2017, following Mr. Dominie's attack on Ms. Tromblee, Ms. Barlow finally told Mr. Dominie that "there will be no name calling, no rats on her desk and no calling her a rat."

82. On or about mid to late October 2017, after Ms. Tromblee asked Ms. Barlow why Ms. Barlow was unwilling to take appropriate remedial action against Mr. Dominie, Ms. Barlow responded, "I do not care about you. I care about my job," or words to that effect. Ms. Tromblee asked her, "What would you do if this was your daughter?" Ms. Barlow responded, "I'd kill them" or words to that effect. Ms. Tromblee then asked why she didn't matter.

83. On October 19, 2017, Ms. Tromblee filed a formal complaint against Mr. Dominie alleging the facts occurring on October 11, 2017.

84. On October 25, 2017, Ms. Tromblee filed criminal charges and a supporting deposition against Mr. Dominee at the Glens Falls Police Department.

85.     On or about October 27, 2017, Mr. Chad Dominie filed an internal complaint against Liam Stander, Mary Tromblee, and Kristin Friers for sexual harassment in retaliation for Ms. Tromblee disclosing Mr. Dominie's sexual harassment.

86.     On or about late October or November 2017, Ms. Tromblee was forced to transfer to an alternate position due to the continuing, and unremedied, severe and pervasive harassment experienced at the Glens Falls office to a position located at the NYSOPWDD Corinth facility.

87.     In or about October 2017, Ms. Tromblee was mistakenly included on an internal e-mail between Dr. Paul Byron, Laura LaValley and James Doddemeade, all high level employees at NYSOPWDD in which Ms. LaValley, a supervisor at NYSOPWDD stated that in addition to concerns about changing locks at the NYSOPWDD she would be addressing "inaction by TTL" – this is a reference to the Treatment Team Leader, Ms. Barlow.

88.     From on or about December 2017 through the present, Ms. Barlow attempted to solicit statements that Ms. Tromblee had been discussing her complaints and/or cases. Without limitation, this includes Ms. Barlow asking at least one individual, Sheila Rowland, with whom Ms. Tromblee works, whether Ms. Tromblee made any comments about any of her complaints and telling that individual to report Ms. Tromblee to the Agency if she makes any such statements. Upon information and belief, Ms. Barlow was not supposed to be discussing the matter, given the ongoing investigation.

89.     As a result of the transfer, Ms. Tromblee was forced to accept a distinct patient load and learn a separate and distinct set of mental and physical conditions suffered by her new patients.

90.     From on or about November 2017 through the present, Ms. Tromblee's timecards, for which management is responsible for signing, have not been signed in a timely manner, thereby impacting Ms. Tromblee's compensation.

91.     On or about November 9, 2017 and November 27, 2017, NYSOPWDD employee Ms. Michelle Russo threatened Ms. Tromblee with discipline for allegedly speaking about her sexual harassment complaint, even though Ms. Tromblee had not spoken about her complaint(s) in any prohibited manner.

92.     On November 28, 2017, Mr. Dominee was arrested on charges stemming from the assault of Ms. Tromblee on October 11, 2017.

93.     On or about January 2017 through the present, Ms. Barlow has needlessly and inappropriately discussed Ms. Tromblee's complaints and cases with others.

94.     On January 3, 2018, Ms. Tromblee filed a supplemental criminal deposition to clarify the previous October 25, 2018 deposition regarding charges filed against Mr. Dominie.

95.     On April 16, 2018, Chad Dominie pled guilty to Harassment-2nd -Physical Contact (PL 240.26 01 V harassment-2nd: Physical Contact) in Glens Falls City Court located at 42 Ridge Street Floor 3rd, Glens Falls, NY 12801. A person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person: "**1. He or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same.**"

96.     On April 16, 2018, Ms. Tromblee was issued an order of protection pursuant to criminal conviction PL 240.26 01 that remained in effect until April 16, 2019.

97.     From on or about April 2018 through late July 2018, the Agency prevented Plaintiff from competing for the position of Registered Nurse for its Corinth, New York

Adirondack Clinic by refusing to make this vacant position available after learning that Ms. Tromblee was interested in filling it, in reprisal for complaining about the discriminatory conduct of Mr. Dominie.

98.      On May 24, 2018, Ms. Sheehan provided Ms. Tromblee with the results of the investigation regarding NYSOPWDD internal complaint #1727 dated October 19, 2017, in which she found Ms. Tromblee's sexual harassment allegations against Mr. Chad Dominie to be substantiated. A true and correct copy of Ms. Sheehan's May 24, 2018 correspondence is annexed hereto as Exhibit "D".

99.      On May 24, 2018, Ms. Sheehan provided Ms. Tromblee with the results of the investigation regarding NYSOPWDD internal complaint #1731 dated October 27, 2017 in which she found Mr. Chad Dominie's sexual harassment allegations against Liam Stander, Mary Tromblee, and Kristin Friers unsubstantiated.

100.      On or about May of 2018 through June 2018, Dr. Byron stated that there would be a position opening in the Adirondack clinic, but they would not be posting the position because they "would get someone they don't want," or words to this effect.

101.      On or about May of 2018 through June of 2018, Dr. Byron stated, "I hope the next person that files a sexual harassment claim isn't having a relationship with them," or words to that effect.

102.      Plaintiff alleges this constitutes discriminatory and/or retaliatory non-selection for this position.

103.      On June 14, 2018, Ms. Tromblee disclosed, amongst other things, failure of her supervisors to promptly sign pay cards for at least seven different pay periods in retaliation for

disclosing discriminatory behavior by Mr. Dominie, to Ms. Sheehan, Amy Link, and Mr. Doddemeade.

104. In addition to retaliation based on failure to sign pay cards, Ms. Tromblee informed Ms. Sheehan, Amy Link, and Mr. Doddemeade, of retaliatory behavior of, but not limited to, Dr. Byron, Ms. Russo, Ms. Barlow and Mr. Stander.

105. On July 11, 2018, Ms. Tromblee filed another internal complaint of discrimination with the NYSOPWDD, alleging that her supervisors had failed to promptly sign pay forms for compensation and overtime on at least ten occasions in retaliation for her disclosure of misconduct at the Glens Falls facility as listed herein.

106. At all times, Ms. Tromblee has alleged the retaliatory behavior has been an ongoing and continuous as a direct result of her disclosure of discriminatory conduct.

107. On or about Fall of 2018, Ms. Tromblee attended a fire safety training in which Ms. Barlow and Mr. Dale Stone, a close friend of Mr. Dominee, came in and sat directly behind Ms. Tromblee, even though other seats were available, to further intimidate Ms. Tromblee. Ms. Tromblee felt targeted by this behavior in retaliation for disclosing the misconduct of Mr. Dominee.

108. On or about Spring of 2018, Dr. Byron stated, "We created sexual harassment here at the state, I voted for it," or words to this effect, in the presence of Plaintiff and other personnel at the Adirondack clinic after Ms. Tromblee was finally awarded a position with the Adirondack clinic.

109. Upon information and belief, this treatment is also part of a campaign to set Ms. Tromblee up for failure, discipline, and/or removal from NYSOPWDD.

110.     Ms. Tromblee informed the Agency of all acts of discrimination and reprisal alleged above and requested this discrimination and reprisal be remedied, but no remedial action has been taken.

111.     In February 2019, NYSOPWDD set up a sham interrogation, for March 5th, into an issue that Ms. Tromblee was not involved in a further act of retaliation. Ms. Erika Valenti, a long-time friend of Mr. Dominie, was to be the investigator in the sham interrogation. Ms. Tromblee, upon notice of the interrogation, immediately responded concerning Ms. Valenti's relationship with Mr. Dominie and explained that the issue involved in the investigation had nothing to do with her nursing duties. NYSOPWDD eventually removed Ms. Valenti as the investigator upon Ms. Tromblee's request.

112.     On or about March 1, 2019, Mr. Dominie made an admission to calling female co-workers "whores" in an interview with the Associated Press.

113.     Upon information and belief, Mr. Dominie acknowledged in an interview with the AP that he engaged in "locker room" behavior that included calling female co-workers "whores," providing marijuana to supervisors and viewing pornography in the office.

114.     Mr. Dominie contended that he was only punished after he threatened to report the improper behavior of supervisors, and that his conduct and language were long tolerated as part of the office "culture."

115.     Mr. Dominie further stated that "I was never offended by it," and "I'm an old Marine. It was a joke. We were just horse playing."

116.     Upon information and belief, other women interviewed by the AP provided information related to the harassment at Mr. Dominie's hands.

117.    Upon information and belief, one woman stated, ""[i]t got to a point where I stopped caring what I look like. I stopped doing my makeup, doing my hair. I gained a lot of weight. I would wake up every day thinking 'what can I do to stop him from bothering me today?'""

118.    Upon information and belief, one woman recalled how Mr. Dominie not only used explicit language, but also assigned letter grades — A, B, C, D or F — to female co-workers based on their outfits and appearance on any given day. The woman said he showed a particular interest in feet, forcing her to swear off open-toed shoes.

119.    Upon information and belief each of the women quoted corroborated the fact that the supervisors witnessed the behavior and didn't properly handle multiple complaints, some of which date to at least 2015. Instead of reporting them for further investigation, the women said the supervisors would repeatedly call Mr. Dominie in for meetings with his accusers and ask him to "do better." The women said he would reform for a few days, only to go back to his old ways.

120.    On or about February 11, 2019, Ms. Tromblee was notified that her testimony was requested pursuant to disciplinary proceedings against Mr. Dominie, causing her additional mental anguish and stress.

121.    Upon information and belief, NYSOPWDD's insistence on requiring testimony at an arbitration is further evidence of retaliation against Ms. Tromblee, given that Mr. Dominie pled guilty to Second Degree harassment and was the subject of a Protective Order issued by a Court. In addition, Ms. Tromblee was also already required to participate in a lengthy investigation against Mr. Dominie, despite the conviction, which was substantiated. The continued requirement of Ms. Tromblee's involvement to assist NYSOPWDD in terminating an

employee that pled guilty to harassment, despite Ms. Tromblee's health and requests not to testify, did not cease.

122.     On or about February 21, 2019, Mr. David Albano, an investigator for NYSOPWDD, was informed that Ms. Tromblee suffered from ongoing mental anguish and stress as a result of Mr. Dominie's actions, and that testimony during the disciplinary hearing without legal counsel or security protection was improper. This request received no response or acknowledgment.

123.     On or about March 13, 2019, the Governor's Office of Employee Relations was informed of the February 21, 2019 disclosure made to Mr. David Albano regarding Ms. Tromblee's opposition to testify at Mr. Dominie's disciplinary hearing.

124.     On or about March 25, 2019, Linda Ronda, Disciplinary Panel Administrator, was informed of communications concerning the disciplinary hearing, the February and March letters to Mr. Albano and the Governor's Office of Employee Relations and requesting a subpoena for Ms. Tromblee's testimony.

125.     On or about March 28, 2019, Eileen Haynes, Deputy Counsel for NYSOPWDD issued a subpoena duces tectum to Ms. Tromblee to testify at proceedings against Mr. Dominie to take place on April 29, 2019.

126.     Throughout the sustained harassment and retaliation to require Ms. Tromblee to testify, she was intimidated and bullied by Mr. Albano, who multiple times threatened Ms. Tromblee's job if she did not assist NYS with terminating Mr. Dominie. This campaign of fear and retaliation left Ms. Tromblee at risk for a stroke with elevated blood pressure.

127.     Mr. Albano forced Ms. Tromblee to participate in multiple sessions, despite her informing him of the impact on her health, to prepare for the testimony against Mr. Dominie.

She was forced to relive the events again in agonizing detail. In one of these so-called preparation sessions, Mr. Albano mistakenly referenced Mr. Cernak's statement, the IT Professional who reported to Human Resources the conduct of Mr. Dominie when he stated "shut your whore mouth and go make me a sandwich," that Mr. Dominie has told him after he made the statement that "Mary likes to get fucked up the ass" and "she likes it when men cum on her face."

128.     While Ms. Tromblee had initially agreed to try to testify, despite the impact on her health, NYSOPWWD multiple times refused to permit Ms. Tromblee to testify outside of the room from Mr. Dominie, despite the Order of Protection and the security concerns that Ms. Tromblee's expressed in writing and verbally about her own safety and Mr. Dominie's mental instability and unpredictability. In one of the preparation sessions, Mr. Albano even informed Ms. Tromblee that during the first day of testimony Mr. Dominie had to be disciplined for intimidating witnesses and making inappropriate comments during the hearing.

129.     On or about April 26, 2019, both Eileen Haynes and Dana Scalere were informed of Ms. Tromblee's intent to file a Motion to Quash the subpoena issued by NYSOPWDD on March 28, 2019 if it was not withdrawn. Ms. Tromblee's forward her NYS licensed clinical psychologist's letter that the required testimony in the same room with defendant Dominie would be extremely detrimental to Ms. Tromblee's health, both physical and emotional. Ms. Tromblee's blood pressure had been extremely high in response to the fear, she was at risk for a stroke and had been unable to sleep. NYSOPWDD, with the recent subpoena and the other internal investigations, caused Ms. Tromblee to re-experience the original trauma again and again as a result of Mr. Dominie's actions.

130. Out of fear of losing her position with NYS, based on threats by Mr. Albano, and due to the failure of NYS to withdraw the subpoena, Ms. Tromblee was forced to testify at the arbitration hearing for Mr. Dominie on April 29, 2019.

131. In addition to these acts, NYSOPWDD, in a continuous concerted campaign of retaliation and hostile work environment retaliation, targeted Ms. Tromblee's closest family members, her daughters and sister, which further impacted her at work.

132. Amanda Tromblee ("Amanda"), Ms. Tromblee's daughter is employed by NYSOPWDD as a Habilitation Specialist 1. During Amanda's mandatory sexual harassment, mindfulness and on the job training sessions between late March through mid-April 2019, several comments were made by instructors, which Amanda witnessed, in which they alluded to Ms. Tromblee's sexual harassment matter against NYS.

133. Upon information and belief, the instructors made these statements without knowledge that Amanda, Ms. Tromblee's daughter, was in attendance at the training after an article had been published concerning the harassment related to women, including Ms. Tromblee at NYSOPWDD.

134. During mindfulness training, Jim Maier, an instructor, made statements critical of reports of sexual harassment as related to the news story and commented how people "believe what they want to" and further stated "[i]t's like when you see a news report about something happening halfway across the country, you believe it, until you see a story in the paper where you know all the parties," and "realize that almost none of it is true" or words to that effect.

135. Later in the training, Mr. Maier, during routine questions around the training room, asked participants including Amanda, who was responsible for her working at the State. When Amanda mentioned her mother's name, Mr. Maier had a very surprised look on his face.

136. After these comments were made by Mr. Maier, Christine Potter, another trainer with the NYSOPWDD, became aware of his statements. When Mr. Maier left the room, Ms. Potter informed the other NYSOPWDD staff being trained that Mr. Maier's words were inappropriate, and that those in attendance at the training should never talk about someone's family because you never know whose brother, cousin, aunt, uncle and grandparent works at the agency. She stated "[y]ou never know who you're talking to."

137. Amanda interpreted this as confirmation that Mr. Maier was discussing her mother, Mary Tromblee.

138. Ms. Tromblee, had confronted accusations by management at NYSOPWDD similar to the accusations at the training. For example, Ms. Tromblee had been told by Cynthia Holt, a nursing supervisor with NYSOPWDD, that it was told to her by NYSOPWDD management that Ms. Tromblee was having an affair with Mr. Dominie.

139. It was Amanda's belief that this was another retaliatory reference given that management at NSYOPWDD had attempted to allege that Ms. Tromblee was having an affair with her alleged abuser, Mr. Dominie, which was completely inappropriate as was this comment at the training.

140. On or about July 12, 2019, Amanda's supervisor, Tarrene Whitcomb of NYSOPWDD, informed her that as of July 14, Ms. Barlow, the same supervisor who had discriminated and retaliated against Ms. Tromblee, would be covering as Amanda's supervisor in another act to intimidate Ms. Tromblee through her daughter.

141. On or about July 16, 2019, Amanda inquired about this retaliatory action via email. Her supervisor dismissed her concern and informed her that Ms. Barlow's appointment as her supervisor had nothing to do with her.

142.     Amanda sent follow-up emails after the meeting, to question this new chain of command.  The supervisor's response was that Ms. Barlow was only covering "temporarily" and that Amanda should not have any reason to contact Ms. Barlow, so that Amanda's concerns did not matter.

143.     On or about July 15, Amanda was notified of a meeting about one of her clients where Ms. Barlow would be in attendance.  Amanda's supervisor, Ms. Whitcomb, later excluded Amanda from the meeting regarding an individual in her classroom due to Ms. Barlow's involvement in the meeting as acting supervisor.  NYSOPWDD moved the meeting to another location, but Amanda's supervisor made a misrepresentation to Amanda that the meeting was not happening, yet she later attended the same meeting. These events occurred on or about July 2019, in another act of retaliation by NYSOPWDD.  Acts directed toward Amanda continued through in or about December 2020.

144.     Retaliatory acts aimed at Ms. Tromblee continued, this time against Ms. Tromblee's daughter, Aubrey Shrestha.

145.     Aubrey, who was working at the Spier Falls IRA (an NYSOPWDD group home), put in her notice of resignation and left the Agency on or about June 28, 2018. On or about July 27, 2018, she reapplied and asked to return to her previous position.

146.     The Collective Bargaining Agreement with NYSOPWDD provides that an employee who leaves in good standing is permitted to return to a position with New York State within one year by notifying the office of personnel and submitting an application.

147.     Aubrey had left the Spier Falls IRA in good standing.

148.     Despite her trainings being up to date, only being gone for four weeks, being in good standing when she left, and NYSOPWDD having approximately 288 positions available

and paying overtime frequently to current employees, Aubrey was not permitted to return to NYSOPWDD.

149. In or around August 2018, Aubrey reapplied for her position a second time.

150. In or around late August or early September 2018, Aubrey reapplied for her position a third time. During this attempt, she took her application to the office directly, and the person working at the office looked Aubrey up in the computer and told her there was no sense in putting the third application in. Aubrey left her application with that office in spite of this retaliatory statement. Upon information and belief, the office disposed of Aubrey's third application.

151. Aubrey then filled out three separate new applications, as directed by Connie Bing and Teresa Doxater from NYSOPWDD's personnel office and called the office regularly to follow up concerning the status.

152. No one at the personnel office would return Aubrey's calls, and she was informed that they *lost* all three of the applications Aubrey had submitted.

153. Ms. Tromblee's sister, Marcia Marcotte, was also targeted by NYSOPWDD. On or about March 15, 2019, Ms. Marcotte was performing her regular 3:00 p.m. - 11:00 p.m. shift at the Greenfield House in Greenfield, NY. After completing her shift, Ms. Marcotte was instructed to work at Saratoga Hospital to sit with a patient, referred to by NYSOPWDD as an "individual" from 11:00 p.m. - 7:00 a.m. for another shift-- a 16-hour shift which is not uncommon at NYSOPWDD.

154. At the time Ms. Marcotte was directed to work at this hospital for the second shift, she did not have "alone status" and, as such, should not have been permitted by NYSOPWDD to be with the "individual" without another staff member present. Even if Ms.

Marcotte did have "alone status" her responsibilities for this shift would not have been to provide care but rather to observe the "individual" and alert hospital staff if the "individual" required care.

155.    During this shift, a staff nurse accused Ms. Marcotte of having closed her eyes while watching the "individual." Ms. Marcotte adamantly denied this allegation.   She advised the supervisor of the same, stating that given that the lights are low during this sitting shift, when the light was turned on by a nurse she was startled.

156.    NYSOPWDD again retaliated against Ms. Tromblee, threatening to place Ms. Marcotte on an *abuse registry* for the false and retaliatory action relating to this sham allegation, which would effectively destroy her ability to find a new position.

157.    Ms. Marcotte never fell asleep nor was she in any way responsible for care provided to the "individual" so as to be placed on this type of registry.

158.    Ms. Marcotte was terminated from NYSOPWDD.

159.    The temporal proximity of Ms. Marcotte's termination, on or about July 3, 2019, approximately 6 weeks after Ms. Tromblee's complaint was filed, a termination for allegations without merit, is retaliatory.

160.    Kristen Beitter, a Developmental Disabilities Program Specialist with NYSOPWDD and the same employee who had made hostile and retaliatory statements against Ms. Tromblee regarding her allegation concerning unsigned timecards by management and mileage, signed the paperwork concerning Ms. Tromblee's sister's termination.

161.    Upon information and belief, Ms. Beitter had been instructed not to have contact with Ms. Tromblee and it is believed that the termination of Ms. Marcotte (Ms. Tromblee's sister), is a retaliatory action against Ms. Tromblee.

162.    On or about July 31, 2019, Mr. Albano informed Ms. Tromblee via email that, despite her health and safety concerns, "The arbitrator rendered her decision a few days ago, and our Counsel's Office is reviewing the award. She ordered him back to work with a suspension to date." The "him" referenced in this email was Mr. Dominie, the individual who sexually harassed, demeaned, and assaulted Ms. Tromblee.

163.    Upon information and belief, despite Mr. Dominie's misconduct, NYSOPWDD intended to reinstate Mr. Domine.  Apparently, realizing this grossly improper decision, the Governor's office has filed an appeal. The pending decision to reinstate Mr. Dominee was made in spite of Ms. Tromblee participating in two investigations against Mr. Dominie, having the NYSOPWDD find that Mr. Dominie had violated the NYS policies, and an article being published by the AP outlining the grossly improper and egregious behavior of Mr. Dominie, which included selling drugs to supervisors on state property and viewing pornography in the office.

164.    Participation in the arbitration process, including rigorous preparation sessions and having to testify against Mr. Dominie, and then the decision to reinstate her abuser, has caused Ms. Tromblee a great deal of physical, mental, and emotional trauma after already having been subjected to the abhorrent actions of Mr. Dominie, and after having been through the above acts of retaliation prior to learning of Mr. Dominie's reinstatement.

165.    NYSOPWDD has in no way taken any steps to protect the female victims of Mr. Dominie.  If Mr. Dominie returns to work, not only Ms. Tromblee but his other female victims, one still employed with NYSOPWDD, will suffer recurring trauma if forced to again have contact with Mr. Dominie. Ms. Tromblee filed an internal complaint with the NYSOPWDD on August 12, 2019 concerning the retaliatory acts against her, through her family members, and

the continued hostile work environment. Upon information and belief, NYSOPWDD never met with any witnesses, including Ms. Tromblee, yet made a determination that her complaint was not substantiated.

166.    Ms. Tromblee filed an internal complaint with NYSOPWDD on August 12, 2019 concerning the retaliatory acts against her, through her family members, and the continued hostile work environment. Upon information and belief, NYSOPWDD never met with any witnesses, including Ms. Tromblee, yet made a determination that her complaint was not substantiated.

167.    Due to the persistent intolerable working conductions at NYS and NYSOPWDD, Ms. Tromblee was constructively terminated when she was forced to apply to retire early on or about October 13, 2020, and ultimately left employment with NYSOPWDD on November 30, 2020.

168.    Defendants, through the actions of their agents and supervisors, participated in the discriminatory conduct, perpetuated the hostile working environment, and retaliated against Plaintiff until the time of her constructive termination by forcing her to interact with Mr. Dominie, even after an Order of Protection was issued against him and he was, belatedly, placed on administrative leave.

169.    Among other things, Ms. Tromblee, was repeatedly required to listen to Mr. Dominie's voice recordings on the defendants' answering machines, even though she asked Liam Stander, her supervisor, to remove Mr. Dominie's voice from NYSOPWDD's voicemail system after Mr. Dominie was no longer present at the NYSOPWDD office. Ms. Tromblee and other women Mr. Dominie sexually harassed, put management, including Mr. Stander, on notice that repeated exposure to Mr. Dominie's voice on the office's voicemail was both unwanted and

re-traumatizing. Ms. Tromblee explained, as a result of the sexual harassment, it was upsetting to hear Mr. Dominie's voice on the agency's answering machine each and every time her calls to the office were directed to voicemail.

170. For approximately, three and a half years, Ms. Tromblee was repeatedly re-traumatized by hearing Mr. Dominie's voice various times each month, depending on the number of times she was required to reach out to nurses in the Glens Falls office as part of her job. If the nurses were not present, the voicemail with Mr. Dominie's voice would pick up forcing Ms. Tromblee to endure panic attacks up through the time when she was forced to retire from the State.

171. The State through their agents or employees rendered the working environment intolerable and failed to take corrective action even though an Order of Protection directed that Mr. Dominie refrain contact with Ms. Tromblee via any means, including by, telephone, email, voice-mail, electronic or any other means whatsoever. The State ignored the Protective Order and the notice Ms. Tromblee provided that the continued exposure to Mr. Dominie's voice was both unwanted and re-traumatizing. As a result, Ms. Tromblee was forced to listen to the same voice of the individual who sexually harassed and assaulted her, until such time that she was compelled to retire from her position.

172. The continual re-traumatization and re-living of the sexual harassment by Mr. Dominie also included compelling Ms. Tromblee's testimony during employment related administrative proceedings against Mr. Dominie. In advance of the proceedings, Tromblee was intimidated and bullied by NYS's investigator, who threatened Ms. Tromblee's job if she did not testify in the administrative proceeding.

173.  This continuous campaign of fear and retaliation left Ms. Tromblee at risk for severe emotional distress, elevated blood pressure, stroke, and other mental and physical issues.

174.  In or about August or September 2020, Ms. Tromblee observed Mr. Dominie's brother coming into the Adirondack Clinic, from a window where she worked. The brother physically resembled Mr. Dominie, and when Ms. Tromblee looked at him, she thought it was Mr. Dominie. She panicked and said some something to Barb Facin, another a nurse in the office, who confirmed he was Mr. Dominie's brother, not Mr. Dominie himself. Ms. Tromblee's fragile emotional state was tested, hearing Mr. Dominie's voice on that answering machine, living in fear of being victimized, and largely being kept off emails from decision makers at NYSOPWDD all contributed to the intolerable working environment.

175.  Ms. Tromblee's daughter, Amanda Tromblee, was repeatedly targeted by NYSOPWDD and supervisors as a result of her being Ms. Tromblee's daughter up until the date Ms. Tromblee retired. Amanda had been told to "watch her back." These concerted actions against her family were designed to force her to involuntarily retire.

176.  As a result of the forced retirement, Ms. Tromblee lost significant earnings and retirement benefits and has been left physically and mentally damaged.

177.  The cumulative effect of the conduct of the State created working conditions that were so difficult or unpleasant that Ms. Tromblee was compelled to retire early, losing significant benefits.

178.  The continuous acts and re-traumatization caused Ms. Tromblee to be constructively discharged from her employment at NYSOPWDD with intolerable working conditions the defendants created and perpetuated and/or the adverse impact it was having on Plaintiff's psychological and physical well-being.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

## (Sexual Discrimination (Hostile Work Environment) in Violation of Title VII of the Civil Rights Act of 1964, *as amended,* U.S.C. § 2000e-2(a) against NYS and NYSOPWDD))

179.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 178 above as though the same were set forth in full herein.

180.    Plaintiff was, at all times relevant herein, an employee of defendant State of New York, OPWDD within the meaning of Title VII of the Civil Rights Act (42 U.S.C. §2000e *et seq.*).

181.    At all times relevant herein, the State was Plaintiff's employer within the meaning of Title VII of the Civil Rights Act (42 U.S. C. §2000e *et seq.*).

182.    Through the aforementioned acts, the defendants NYS and NYSOPWDD and its agents and employees subjected Plaintiff to a constant stream of sexual harassment and a hostile work environment, willfully engaged in unlawful employment practices in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* by subjecting Plaintiff to a severe and pervasive hostile work environment, discriminating against Plaintiff, and denying her equal terms and conditions of employment and harassing the Plaintiff.

183.    Plaintiff was subjected to harassment by NYSOPWDD's agents and employees, including defendants Stander, Dominie and Barlow because of her sex, female.

184.    NYSOPWDD's agents and employee's conduct was not welcomed by Plaintiff.

185.    The conduct was so severe or pervasive that a reasonable person in Plaintiff's position would find his/her work environment to be hostile or abusive.

186.    Plaintiff believed the work environment to be hostile or abusive as a result of NYSOPWDD's agents' and employees' conduct.

187.     Management-level employees knew, or should have known, of the abusive conduct. Plaintiff provided management level personnel, including Ms. Barlow and Mr. Stander, with information sufficient to raise a probability of sexual harassment in the mind of a reasonable employer. Moreover, the harassment was so pervasive and open that a reasonable employer would have had to have been aware of it. Indeed, management level employees were themselves complicit in the abusive conduct.

188.     Defendants NYS and NYSOPWDD did not exercise reasonable care to prevent harassment in the workplace on the basis of sex and did not exercise reasonable care to promptly correct any harassing behavior that did occur.

189.     As a direct, legal and proximate result of the discrimination, Plaintiff has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

190.     Defendants' NYS and NYSOPWDD's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on sex.

191.     After Plaintiff refused defendant Dominie's unwanted sexual advances, the State, through the acts of defendant Stander, and defendant Barlow, altered the terms, conditions and/or privileges of plaintiff's employment because of her gender and sex.

192.     Defendant Dominie's actions were continuous, extreme, outrageous, and well outside of the bounds of human decency.

193.     The State and defendants Stander, and Barlow condoned, permitted and/or otherwise ratified defendant Dominie's conduct when it failed to take action to stop the

harassment and/or otherwise failed to protect plaintiff from defendant Dominie through its policies, practices and/or procedures.

194. The aforementioned acts of defendants Dominie and Stander were permitted to continue unremedied for so long to amount to a discriminatory practice of the defendants.

195. As a result of the aforementioned acts and omissions, defendants violated the Plaintiff's right to be free from a hostile working environment, pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et. seq.*

196. As a direct and proximate result of defendants' conduct, Plaintiff has sustained and will continue to sustain economic injury in the form of loss of wages, loss of benefits, irreparable damage to her reputation, severe emotional distress, loss of consortium, physical and mental health problems and legal expenses to date, which all have caused permanent economic injury to be determined at trial.

### SECOND CLAIM FOR RELIEF

### (Retaliation and Retaliatory Hostile Work Environment in Violation of Title VII of the Civil Rights Act of 1964, *as amended,* U.S.C. § 2000e-2(a) against NYS and NYSOPWDD)

197. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 196 above as though the same were set forth in full herein.

198. Section 704(a) of Title VII of the Civil Rights Act of 1964, *as amended*, prohibits employers from discriminating against an employee "because [she] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).

199. Plaintiff made informal and formal complaints to defendants' NYS and NYSOPWDD's agents and employees opposing defendants' unlawful, discriminatory employment practices based on the hostile work environment and sex/gender discrimination.

200.   As a result of Plaintiff's complaints, NYSOPWDD's agents and employees took materially adverse actions against Plaintiff, including, but not limited to, issuing sham interrogations, requiring Plaintiff to participate in investigations and arbitrations, threats of termination, reprimands by supervisors, soliciting statements and discussing Plaintiff's concerns with other employees, preventing Plaintiff from seeking another position, excluding Plaintiff from communications critical to her position, delaying/failing to sign Plaintiff's time cards, and intimidation at office meetings.   In addition, NYSOPWDD targeted Ms. Tromblee's daughters and sister in order to indirectly attack and wear down Ms. Tromblee with continued retaliatory adverse acts.

201.   These defendants' adverse actions constituted retaliatory workplace harassment.

202.   These defendants' retaliatory actions were sufficient to deter a reasonable person from engaging in protected activity under Title VII.

203.   Through the aforementioned acts and omissions, the defendants retaliated against plaintiff for refusing Dominie's unwanted sexual advances and for complaining about the hostile work environment created by defendant Dominie and Plaintiff's co-workers.

204.   Ms. Tromblee also faced retaliatory hostile work environment, or retaliatory harassment, as she has alleged engagement in a protected activity and she was subjected to severe or pervasive retaliatory harassment by supervisors at NYSOPWDD.

205.   The severe and pervasive hostile work environment that Ms. Tromblee faced as a result her internal complaints and the filing of a lawsuit demonstrates a causal link between the protected activity and the harassment and retaliation that was so severe that NYSOPWDD targeted her children and sister.

206.    Through the aforementioned acts and omissions, the defendants retaliated against Plaintiff after she reported the hostile work environment, initially to defendant manager Barlow and thereafter to defendant managers Barlow and/or Stander, and on a continuing basis and then through a complaint filed with NYSOPWDD, alleging violations of Title VII of the Civil Rights Act and the NYSHRL, including by altering the compensation, terms, conditions and/or privileges of her employment and by taking tangible employment actions against her, by permitting and/or facilitating defendant Dominie's continued harassment, and by permitting and/or facilitating Plaintiff's intimidation by her co-workers.

207.    As a result of the aforementioned acts and omissions, defendants NYS and NYSOPWDD and its agents or employees unlawfully retaliated against plaintiff in violation of Title VII of the Civil Rights Act.

208.    Defendants' NYS and NYSOPWDD's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiffs' right to be free from discrimination based on sex.

209.    As a direct and proximate result of defendants' conduct, Plaintiff has sustained and will continue to sustain economic injury in the form of loss of wages, loss of benefits, irreparable damage to her reputation, severe emotional distress, loss of consortium, physical and mental health problems and legal expenses to date, which all have caused permanent economic injury to be determined at trial.

### THIRD CLAIM FOR RELIEF

**(Sex Based Discrimination (Disparate Treatment) in Violation of Title VII. of the Civil Rights Act of 1964, *as amended,* U.S.C. § 2000e-2(a) against NYS and NYSOPWDD)**

210.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 209 above as though the same were set forth in full herein.

211. Plaintiff was, at all times relevant herein, an employee of defendant State of New York, NYSOPWDD within the meaning of Title VII of the Civil Rights Act (42 U.S.C. §2000e et seq.).

212. At all times relevant herein, the State was Plaintiff's employer within the meaning of Title VII of the Civil Rights Act (42 U.S. C. §2000e et seq.).

213. Title VII of the Civil Rights Act prohibits employment practices that discriminate against a plaintiff on the basis of their sex. Plaintiff has been the victim of unlawful discriminatory conduct in the workplace.

214. Plaintiff is a member of a protected class.

215. Plaintiff was qualified for her position as a Nurse at the NYSOPWDD.

216. Plaintiff was unlawfully and intentionally subjected to disparate treatment and was subjected to an adverse employment actions as a result of her sex. NYSOPWDD's agents and employees took materially adverse actions against Plaintiff, including, but not limited to, issuing sham interrogations, requiring Plaintiff to participate in investigations and arbitrations, threats of termination, reprimands by supervisors, soliciting statements and discussing Plaintiff's concerns with other employees, preventing plaintiff from seeking another position, excluding Plaintiff from communications critical to her position, delaying/failing to sign Plaintiff's time cards, refusing to remove Mr. Dominie's voice from the office voicemail, and intimidation at office meetings, and constructive discharge.

217. Other male employees similarly situated to the Plaintiff were treated more favorably and not subjected to these actions.

218. Defendants' NYS and NYSOPWDD's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on sex.

219. As a direct and proximate result of these defendants' conduct, Plaintiff has sustained and will continue to sustain economic injury in the form of loss of wages, loss of benefits, irreparable damage to her reputation, severe emotional distress, loss of consortium, physical and mental health problems and legal expenses to date, which all have caused permanent economic injury to be determined at trial.

### FOURTH CLAIM FOR RELIEF

**(Sexual Based Discrimination (Hostile Work Environment)
in Violation of N.Y. Exec. Law § 290 et. seq. against Dominie, Stander and Barlow)**

220. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 219 above as though the same were set forth in full herein.

221. Plaintiff was, at all times relevant herein, an employee of defendant State within the meaning of the New York State Human Rights Law (N.Y. Exec. Law § 290 *et seq.*).

222. At all times relevant herein, the State is a covered employer pursuant to the NYSHRL.

223. By and through their course of conduct as alleged above, the individual defendants Barlow, Dominie and Stander, willfully violated the NYSHRL, by subjecting Plaintiff to a hostile work environment, discriminating against Plaintiff, and denying her equal terms and conditions of employment, harassing the Plaintiff, and materially altering the terms and conditions of her employment because of her gender and sex.

224. Plaintiff was subjected to harassment by NYSOPWDD's agents and employees, including defendants Barlow, Dominie, and Stander because of plaintiff's sex.

225. NYSOPWDD's agents and employees' conduct was not welcomed by Plaintiff.

226. These agents and employees' conduct was because of the fact that Plaintiff was a member of a protected class. The conduct was so severe or pervasive that a reasonable person would consider the work environment to be hostile, and Plaintiff was subjected to this conduct by these defendants and she was harmed as a result of this conduct. Regardless of whether the conduct was severe or pervasive, the harassment rises above the level of petty slights or trivial inconveniences.

227. Plaintiff considered the work environment to be hostile as a result of NYSOPWDD's agents and employees' conduct.

228. Defendant Dominie actively engaged in harassment, assault, and intimidation against Ms. Tromblee. Defendants Barlow and Stander knew, or in the exercise of reasonable care should have known, about the conduct, and either approved or accepted the conduct. At the time of the conduct, defendants Barlow and Stander were high-level managerial employees. These management level employees were themselves complicit in the abusive conduct and also participated in the course of conduct aiding and abetting the unlawful discrimination and hostile work environment against Plaintiff in violation of the NYSHRL.

229. Defendant Dominie actively sexually harassed, assaulted, abused, and intimidated Tromblee and defendants Barlow and Stander did not exercise reasonable care to prevent harassment in the workplace on the basis of sex and did not exercise reasonable care to promptly correct any harassing behavior that did occur.

230. Through the aforementioned acts and omissions, these defendants subjected Plaintiff to sexual harassment and a hostile work environment, in violation of the NYSHRL.

231.    As a result of the aforementioned acts and omissions, these defendants violated the Plaintiff's right to be free from a hostile work environment, pursuant to the NYSHRL.

232.    As a direct and proximate result of these defendants' conduct, Plaintiff has sustained and will continue to sustain economic injury in the form of loss of wages, loss of benefits, irreparable damage to her reputation, severe emotional distress, loss of consortium, physical and mental health problems and legal expenses to date, which all have caused permanent economic injury to be determined at trial.

## FIFTH CLAIM FOR RELIEF

## (Retaliation in Violation of N.Y. Executive Law § 290 *et. seq.* against Dominie, Barlow and Stander)

233.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 232 above as though the same were set forth in full herein.

234.    As a result of the aforementioned acts and omissions of the defendants Dominie, Barlow and Stander unlawfully retaliated against plaintiff in violation of the NYSHRL.

235.    Defendants Dominie retaliated against Plaintiff when she refused his unwanted sexual advances. Defendants Barlow and Stander retaliated against plaintiff for refusing Dominie's unwanted sexual advances and for reporting and complaining about the hostile work environment created by defendant Dominie and Plaintiff's supervisors and the unwanted harassment and discrimination and participating in an investigation and lawsuit concerning the reported conduct. Plaintiff made informal and formal complaints to Defendants' agents and employees' opposing the hostile work environment based on sex.

236.    As a result of Plaintiff's complaints, defendants' agents and employees took materially adverse actions against Plaintiff, including, but not limited to, issuing sham

interrogations, requiring plaintiff to participate in investigations and arbitrations, threats of termination, reprimands by supervisors, soliciting statements and discussing Plaintiff's concerns with other employees, preventing Plaintiff from seeking another position, excluding Plaintiff from communications critical to her position, delaying/failing to sign Plaintiff's time cards, intimidation at office meetings, targeting her family members, and subjecting her to Dominie's voice every time she called the NYSOPWDD office and she was forced to listen to the voicemail message.

237.    Upon information and belief, defendants Barlow and Stander and NYSOPWDD retaliation against Plaintiff was negligent and in violation of federal and state law.

238.    As a direct and proximate result of defendants' conduct, Plaintiff has sustained and will continue to sustain economic injury in the form of loss of wages, loss of benefits, irreparable damage to her reputation, severe emotional distress, loss of consortium, physical and mental health problems and legal expenses to date, which all have caused permanent economic injury to be determined at trial.

### SIXTH CLAIM FOR RELIEF

**(42 U.S.C. § 1983 against Barlow and Stander)**

239.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 238 above as though the same were set forth in full herein.

240.    Plaintiff has a constitutionally protected property and liberty interest in her continued employment with the State free of unconstitutional harassment and/or retaliation under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

241.    Defendants Barlow and Stander are "persons" within the meaning of Section 1983.

242.    Defendants Barlow and Stander were at all times state actors and acted under the color of law and in their official capacity, when committing the aforementioned acts of harassment and retaliation.

243.    There is such a close nexus between the State and the challenged action that the behavior of these defendants Barlow and Stander may be fairly treated as that of the State itself.

244.    Defendants Barlow and Stander were plaintiffs' supervisors, and each were personally involved in the actions, decisions, treatment, mistreatment, harassment and/or retaliation of the Plaintiff as set forth herein.

245.    By and through their course of conduct as alleged above, defendants Barlow and Stander violated 42 U.S.C. § 1983 by allowing Plaintiff to be subjected to a hostile work environment, discriminating against Plaintiff, retaliating against Plaintiff, and materially altering the terms and conditions of her employment because of her gender and sex, and thereby depriving her of the equal protection of the laws under the Fourteenth Amendment to the United States Constitution of the United States as incorporated and applied to the States by way of the Fourteenth Amendment to the Constitution of the United States. These acts constitute violations of the Fourteenth Amendment to the Constitution and are actionable pursuant to 42 U.S.C. § 1983, in that the actions taken herein by defendants Barlow and Stander were intended to deprive Plaintiff of her rights guaranteed to by applicable and known federal law and were done by defendants Barlow and Stander under "color of state law." Defendants Barlow and Stander violated Plaintiffs' constitutional rights by engaging in a course of conduct intended to injure the Plaintiff and which was unjustified by any legitimate governmental interest.

246.    As a direct and proximate result of defendants Barlow and Stander's unconstitutional conduct, Plaintiff was subjected to a deprivation of rights, privileges and/or

immunities secured by the Constitution, federal law, and the laws of New York State, and has been damaged thereby, in violation of 42 U.S.C. § 1983.

247.    Defendants Barlow and Stander's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiffs' rights.

248.    As a direct and proximate result of defendants' conduct, Plaintiff has sustained and will continue to sustain economic injury in the form of loss of wages, loss of benefits, irreparable damage to her reputation, severe emotional distress, loss of consortium, physical and mental health problems and legal expenses to date, which all have caused permanent economic injury to be determined at trial.

## SEVENTH CLAIM FOR RELIEF

**(Constructive Discharge in Violation of Title VII of the Civil Rights Act of 1964, *as amended*, U.S.C. § 2000(e)-2(a) against NYS and NYSOPWDD)**

249.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 248 above as though the same were set forth in full herein.

250.    Plaintiff was, at all times relevant herein, an employee of defendant State of New York, OPWDD within the meaning of Title VII of the Civil Rights Act (42 U.S.C. §2000e et seq.).

251.    At all times relevant herein, the State was Plaintiff's employer within the meaning of Title VII of the Civil Rights Act (42 U.S. C. §2000e et seq.).

252.    Through the course of conduct as alleged above, Plaintiff was subjected to multiple acts of discrimination, a continuous hostile work environment and retaliation against her directly and through her family members.

253.    Had NYS and NYSOPWDD and its supervisors properly protected Plaintiff from the discrimination and the continuous hostile work environment, immediately disciplined or

removed Mr. Dominie from the Glens Falls NYSOPWDD office, and not repeatedly re-traumatized her or retaliated against her, she would have continued working at NYSOPWDD rather than being forced to apply for early retirement.

254.    Plaintiff was intentionally subjected to an objectively intolerable working environment that forced her to retire early involuntarily. The act was a result of the culmination of a concerted effort on the part of the State to force her departure.  Plaintiff, along with any reasonable person, would have found the aforementioned acts to be so intolerable that they would feel compelled to retire early and leave employment with the State.

255.    As a direct and proximate result of the defendants' conduct, Tromblee has sustained and will continue to sustain economic injury in the form of loss of wages, loss of benefits, irreparable damage to her reputation, severe emotional distress, loss of consortium, physical and mental health, problems and legal expenses to date, which all have caused permanent economic injury to be determined at trial.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests that this Court enter a judgment:

1.    Declaring that defendants' NYS and NYSOPWDD's actions and practices violated Title VII of the Civil Rights Act;

2.    Declaring that defendants' Dominie, Barlow and Stander's actions violated the NYSHRL;

3.    Permanently enjoining defendants from engaging in actions or practices that discriminate, harass or retaliate against any of the State's employees, including Plaintiff;

4.    Awarding damages for lost wages, lost benefits, reimbursement for any and all lost benefits, and reimbursement for any and all past and future medical expenses for injuries

(mental or otherwise) caused or exacerbated by defendants, together with applicable interest thereon from the time of the initial loss until satisfaction of judgment, as well as post-judgment interest thereon;

5.     Directing defendants to pay Plaintiff compensatory damages for her emotional distress caused by defendants' unlawful employment practices;

6.     Directing defendants to pay Plaintiff punitive damages sufficient to punish defendants' unlawful employment practices and deter continuation of defendants' unlawful employment practices;

7.     Assessing civil fines and penalties pursuant to the New York State Human Rights Law§ 297;

8.     Awarding Plaintiff reasonable attorney's fees, expert fees and all other costs and disbursements associated with this action; and

9.     Granting such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims properly triable by a jury.

Dated: May 17, 2021         SOLOMON LAW FIRM, PLLC

By: _____
Ariel E. Solomon, Esq.,
(N.D.N.Y. No. 515601)
Kathryn Barcroft, Esq.,
(N.D.N.Y No. 701100)
Attorneys for Plaintiff
300 Great Oaks Blvd Ste 312
Albany, New York 12203
Telephone: (866) 833-3529
asolomon@fedemploylaw.com
kbarcroft@fedemploylaw.com

EXHIBIT A



U.S. Department of Justice
Civil Rights Division

CERTIFIED MAIL
7003 0500 0002 5072 1572

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson , EMP, PHB, Room 4701*
*Washington, DC 20530*

March 01, 2019

Ms. Mary Tromblee
c/o Kathryn Barcroft, Esquire
Solomon Law Firm
300 Great Oaks Blvd.
Suite 312
Albany, NY  12203

Re: EEOC Charge Against New York State Office For People With Developmental Disabilities
    No. 525201801328

Dear Ms. Tromblee:

Because you filed the above charge with the Equal Employment Opportunity Commission, and the Commission has determined that it will not be able to investigate and conciliate that charge within 180 days of the date the Commission assumed jurisdiction over the charge and the Department has determined that it will not file any lawsuit(s) based thereon within that time, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

The investigative file pertaining to your case is located in the EEOC New York District Office, New York, NY.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Eric S. Dreiband
Assistant Attorney General
Civil Rights Division

by *Karen L. Ferguson*
   Karen L. Ferguson
   Supervisory Civil Rights Analyst
   Employment Litigation Section

cc: New York District Office, EEOC
    New York State Office For People With Developmental Disabilities

EXHIBIT B



U.S. Department of Justice
Civil Rights Division

CERTIFIED MAIL
7018 1830 0000 1246 8414

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson , EMP, PHB, Room 4701*
*Washington, DC 20530*

November 21, 2019

Ms. Mary Tromblee
c/o Kathryn Barcroft, Esquire
Soloman Law Firm
The Seagram Building
375 Park Ave., Suite 2607
New York, NY  10152

Re:  EEOC Charge Against New York State, Office for People with Developmental Disabilities
      No. 525201901460

Dear Ms. Tromblee:

    Because you filed the above charge with the Equal Employment Opportunity Commission, and the Commission has determined that it will not be able to investigate and conciliate that charge within 180 days of the date the Commission assumed jurisdiction over the charge and the Department has determined that it will not file any lawsuit(s) based thereon within that time, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

    If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

    The investigative file pertaining to your case is located in the EEOC Buffalo Local Office, Buffalo, NY.

    This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

                              Sincerely,

                              Eric S. Dreiband
                              Assistant Attorney General
                              Civil Rights Division

                        by  *Karen L. Ferguson*
                              Karen L. Ferguson
                              Supervisory Civil Rights Analyst
                              Employment Litigation Section

cc: Buffalo Local Office, EEOC
    New York State, Office for People with Developmental Disabilities

EXHIBIT C



U.S. Department of Justice
Civil Rights Division

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

VIA EMAIL

*150 M Street, N.E.*
*Karen Ferguson , EMP, 4CON, Room 9.514*
*Washington, DC 20530*

April 08, 2021

Ms. Mary Tromblee
c/o Kathryn Barcroft, Esquire
Solomon Law Firm
300 Great Oaks Blvd.
Suite 312
Albany, NY  12203

Re:  EEOC Charge Against State of New York, New York State Office For People With
Developmental Disabilities, et al.
　　No. 525202100836

Dear Ms. Tromblee:

　　Because you filed the above charge with the Equal Employment Opportunity Commission, and the
Commission has determined that it will not be able to investigate and conciliate that charge within
180 days of the date the Commission assumed jurisdiction over the charge and the Department has
determined that it will not file any lawsuit(s) based thereon within that time, and because you through
your attorney have specifically requested this Notice, you are hereby notified that you have the right
to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.
2000e, et seq., against the above-named respondent.

　　If you choose to commence a civil action, such suit must be filed in the appropriate Court within
90 days of your receipt of this Notice.

　　The investigative file pertaining to your case is located in the EEOC Buffalo Local Office, Buffalo,
NY.

　　This Notice should not be taken to mean that the Department of Justice has made a judgment as to
whether or not your case is meritorious.

Sincerely,

Pamela S. Karlan
Principal Deputy Assistant Attorney General
Civil Rights Division

by　　/s/ Karen L. Ferguson
Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: Buffalo Local Office, EEOC

State of New York, New York State Office For People With Developmental Disabilities, et al.

EXHIBIT D

 **NEW YORK** STATE OF OPPORTUNITY. | **Office for People With Developmental Disabilities**

ANDREW M. CUOMO
Governor

KERRY A. DELANEY
Acting Commissioner

**CONFIDENTIAL**

May 24, 2018

Ms. Mary Tromblee
4 Wall Street
Corinth, NY 12822

> Re: Discrimination Complaint dated October 19, 2017 - OPWDD # 1727
> Mary Tromblee v. Chad Dominie based upon sexual harassment

Dear Ms. Tromblee:

This is to advise you that the NYS Office for People With Developmental Disabilities Office of Affirmative Action/Equal Opportunity has completed its investigation of the above referenced complaint and has determined that the allegations are substantiated. Therefore, the agency's Anti-Discrimination Policy was violated. The matter will be referred to Office of Human Resources Management for administrative action in accordance with the terms of the applicable collective bargaining agreement or civil service law.

Please note that OPWDD prohibits retaliation against any individual who has opposed any practices prohibited by this Policy or because he or she has filed a complaint or reported acts of discrimination, testified, participated or assisted in any discrimination investigation or enforcement proceeding or hearing.

If you have any questions or concerns, please call me at (518) 402-7644.

Sincerely,

Margaret Sheehan

Director of Affirmative Action
EEO & ADA Coordinator

cc: OPWDD EO/AA Central Office

Division of Workforce and Talent Management
44 Holland Avenue, Albany, New York 12229-0001 | 866-946-9733 | www.opwdd.ny.gov
Buffalo/Rochester: 585-461-8934 | Schenectady/Tupper Lake: 518-359-4150
Binghamton/Syracuse/Poughkeepsie: 607-240-4758 | White Plains/New York City/Long Island: 718-217-1756