**UNITEED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

MARY TROMBLEE,

                              Plaintiff,

              v.                                          1:19-CV-638
                                                          (BKS/CFH)

THE STATE OF NEW YORK, et al.,

                              Defendants.

_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| Solomon Law Firm, PLLC<br>300 Great Oaks Blvd. Ste. 312<br>Albany, New York 12203<br>Attorney for plaintiff | ARIEL E. SOLOMON, ESQ. |
| Attorney General for the<br>State of New York<br>The Capitol<br>Albany, New York 12224<br>Attorneys for defendants the State<br>of New York and New York State Office of<br>People with Developmental Disabilities | ROBERT J. ROCK, ESQ.<br>BRITTANY M. HANER, ESQ.<br>Assistant Attorneys General |
| Brennan, White Law Firm<br>163 Haviland Road<br>Queensbury, New York 12804<br>Attorneys for defendant Chad Dominie | WILLIAM J. WHITE, ESQ. |
| Capezza, Hill LLP<br>30 South Pearl Street<br>Ste P-110<br>Albany, New York 12207<br>Attorneys for defendant Liam Stander | BENJAMIN W. HILL, ESQ.<br>ABBY MCCORMICK-FOLEY, ESQ. |
| Conway, Donovan & Manley, PLLC<br>50 State Street – 2nd Floor<br>Albany, New York 12207 | RYAN T. DONOVAN, ESQ. |

Attorneys for defendant Alexis Barlow

**CHRISTIAN F. HUMMEL**
**UNITED STATES MAGISTRATE JUDGE**

**MEMORANDUM-DECISION & ORDER**

Presently pending before the Court is plaintiff Mary Tromblee's ("plaintiff") motion pursuant to Rule 37 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") seeking to compel defendants, the State of New York ("State") and the New York State Office for People with Developmental Disabilities ("OPWDD") (collectively, where appropriate, "State defendants"), to produce specific documents related to allegedly outstanding discovery requests. See Dkt. No. 124 at 7-9. Plaintiff also seeks the imposition of sanctions. See id. at 18-25. State defendants oppose the motion. See Dkt. Nos. 126; 127. Plaintiff filed a reply. See Dkt. No. 138. For the following reasons, plaintiff's motion is granted in part and denied in part.

**I. Background**

**A. Plaintiff's Complaint and State Defendants' Answer**

For purposes of this motion, the Court assumes the parties' familiarity with the factual allegations, providing a brief summation of the factual and procedural background.[1] Generally, plaintiff asserts sex- and gender-based employment discrimination and retaliation claims against State defendants and three individual

---

[1] A more thorough recitation of the factual allegations and claims can be found in the pleadings. See Dkt. No. 88 ("Sec. Am. Compl."); Dkt. No. 89 ("State Defendants' Answer").

defendants, currently and/or formerly employed by State defendants: Chad Dominie ("defendant Dominie"), Liam Stander ("defendant Stander"), and Alexis Barlow ("defendant Barlow") (collectively, where appropriate, "individual defendants").  See Dkt. No. 88 ("Sec. Am. Compl.") at 1-2, 31-43, ¶¶ 2, 6-13, 179-255.  Plaintiff alleges that from December 2016 through October 2017, she was "subject to unwanted and unwelcome physical and verbal contacts, assaults, and batteries, including those of a sexual nature, by Mr. Chad Dominie and Mr. Liam Stander."  Id. at 5, ¶ 30.  Plaintiff states that she reported the conduct to her "Treatment Team Leader Ms. Barlow[.]"  Id. at 6, ¶¶ 34, 36; 10, ¶62.  Plaintiff "filed a formal complaint" and criminal charges against defendant Dominie.  Id. at 13, ¶¶ 83-84.  Plaintiff asserts that she "was forced to transfer to an alternate position due to the continuing, and unremedied, severe and pervasive harassment[.]"  Id. at 14, ¶ 86.  Plaintiff also alleges that she suffered from "discriminatory and/or retaliatory non-selection" for another position that she sought to apply for.  Id. at 16, ¶ 102.  Further, plaintiff claims that the retaliatory conduct extended to plaintiff's "closest family members, her daughters and sister" who also worked for OPWDD.  Id. at 22, ¶ 131-32; 25, ¶ 153.  Finally, plaintiff claims that "[t]he continuous acts and re-traumatization caused [plaintiff] to be constructively discharged from her employment[.]"  Id. at 30, ¶ 178.

State defendants deny plaintiff's substantive allegations and assert numerous affirmative defenses.  See generally Dkt. No. 89 ("State Defendants' Answer").  State defendants contend that they had "legitimate and nondiscriminatory reasons for each and every employment action taken" relative to plaintiff's allegations.  Id. at 35, ¶ 257.  State defendants assert that they "took reasonable care to prevent and/or correct any

alleged discriminatory and/or retaliatory conduct and [p]laintiff unreasonably failed to take advantage of preventative or corrective opportunities provided by [State defendants] to avoid harm." Id. at 35, ¶ 260.  They aver that "[p]laintiff did not subjectively perceive the alleged actions to be harassing [or] unwelcome," and that the alleged conduct did not "give rise to a hostile environment." Id. at 36, ¶ 263.  They assert that plaintiff did not "engage in 'protected activity' within the meaning of any applicable state or federal law or regulation." Id. at 36, ¶ 265.  Furthermore, State defendants contend that plaintiff has brought claims that are time-barred and "outside the scope of the underlying administrative charges purportedly filed with the Equal Employment Opportunity Commission[.]" Id. at 37, ¶¶ 267-269.

## II.  Legal Standard

Under Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" FED. R. CIV. P. 26(b)(1).  Rule 26 tasks the Court to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id.  "A district court has broad latitude to determine the scope of discovery and to manage the discovery process." EM Ltd. v. Republic of Argentina, 695 F.3d 201, 207 (2d Cir. 2012) (citing In re Agent Orange Prod. Liab. Litig., 517 F.3d 76, 103 (2d Cir. 2008)).  Pursuant

4

to Fed. R. Civ. P. 37, "following a good-faith effort to meet and confer, upon to all parties notice, 'a party may move for an order compelling disclosure or discovery.'" Siano Enders v. Boone, No. 19-CV-948 (BKS/CFH), 2021 WL 3471558, at *2 (N.D.N.Y. Aug. 6, 2021) (quoting FED. R. CIV. P. 37(a)). "Motions to compel made pursuant to Rule 37 are 'entrusted to the sound discretion of the district court.'" Harris v. Bronx Parent Hous. Network, Inc., No. 18-CV-11681, 2020 WL 763740, at *1 (S.D.N.Y. Feb. 14, 2020) (quoting United States v. Sanders, 211 F.3d 711, 720 (2d Cir. 2000)).

"The party seeking discovery bears the initial burden of proving the discovery is relevant[.]" Citizens Union of City of N.Y. v. Att'y Gen. of N.Y., 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017) (citing Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y., 284 F.R.D. 132, 135 (S.D.N.Y. 2012) (citations omitted)). During the pre-trial discovery stage, "[t]he relevance standard is construed broadly 'to encompass any matter that bears on, or that could reasonably lead to other matter that could bear on, any issue that is or may be in the case.'" Utica Mut. Ins. Co. v. Fireman's Fund Ins. Co., No. 09-CV-835 (DNH/TWD), 2012 WL 12896163, at *2 (N.D.N.Y. Dec. 21, 2012) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)); see also Cohen v. Altman, No. 19-CV-274 (TJM/TWD), 2021 WL 6106432, at *1 (N.D.N.Y. Jun. 4, 2021) ("Relevance is a matter of degree, and the standard is applied more liberally in discovery than it is at trial."). "Once any possibility of relevance sufficient to warrant discovery is shown, the burden shifts to the party opposing discovery to show the discovery is improper." Condit v. Dunne, 225 F.R.D. 100, 106 (S.D.N.Y. 2004) (citation and internal quotation marks omitted). "Generally, discovery is only limited when 'sought in bad faith, to harass or oppress the party subject to it, when it is irrelevant' or

privileged." Id. (quoting Melendez v. Greiner, No. 01-CV-7888 (SAS/DF), 2003 WL 22434101, at *1 (S.D.N.Y. Oct. 23, 2003)) (additional citation omitted).

### III. Parties' Arguments

Plaintiff argues that "[w]hile documents were produced by the State [d]efendants in various productions, many documents were duplicative or incomplete, and several deficiencies remain which have yet to be cured by the State [d]efendants despite efforts by [p]laintiff to resolve these matters in good faith incurring significant costs in doing so." Dkt. No. 124-1 at 7. Plaintiff asserts that State defendants "also failed to identify or produce a witness with knowledge for a [Fed. R. Civ. P.] 30(b)(6) deposition related to discovery searches and information until December 28, 2021." Id. at 9. Plaintiff's counsel, Kathryn Barcroft, through a declaration, attests that "[t]his Court ordered that State [d]efendants produce all responsive documents to [p]laintiff and to identify any additional 30(6)(b) witnesses by December 28, 2021." Dkt. No. 124-2 at 1, ¶ 4. Attorney Barcroft asserts that "State [d]efendants served nothing" on December 28, 2021, "and then the next day, after representations to the contrary, stated that they have no documents which are responsive to [p]laintiff's outstanding demands that have not already been produced other than a relatively small number of documents which are subject to attorney client privilege." Id. Plaintiff contends that the documents requested exist and are relevant, that State defendants' searches for responsive documents were inadequate, and that an additional 30(b)(6) witness is necessary. See Dkt. No. 124-1 at 7-13. Plaintiff states that "[v]arious witnesses provided testimony supporting the

existence of" the requested documents.  Dkt. No. 138 at 4.  Plaintiff argues that to the extent State defendants rely on the attorney-client privilege to withhold undisclosed documents, they have "never provided an updated privilege log to substantiate the documents' alleged privileged status[.] Dkt. No. 124-1 at 12.  Plaintiff also requests that the Court impose sanctions in the form of reasonable fees and adverse inferences for State defendants' failure to produce the requested documents and earlier provide a Rule 30(b)(6) witness.  See id. at 18-25.

State defendants argue that plaintiff seeks to "compel the production of documents which may not exist[.]"  Dkt. No. 126 at 5.  State defendants contend that plaintiff's motion is asking State defendants to produce documents that "they have been unable to locate or to prove the nonexistence of such documents."  Id.  State defendants' attorney Robert Rock, through his declaration, asserts "that given the [d]efendants' diligent, good faith efforts to assemble the requested information, to the extent that it exists and has not been previously produced, and the constraints placed upon those efforts by the impacts of the pandemic and the recent holidays, it is inappropriate to grant [p]laintiff's motion . . . ."  Dkt. No. 127 at 3, ¶ 12.  State defendants argue that plaintiff's contention regarding an additional Rule 30(b)(6) witness has been resolved by agreement and that the deposition was scheduled for January 13, 2022.  See Dkt. No. 126 at 5.  Moreover, State defendants assert that sanctions are unwarranted because they have made good faith efforts "to resolve the existing discovery disputes and to provide [p]laintiff with all discovery to which she is entitled."  Id.

## IV.  Discussion

As an initial matter, Attorney Barcroft's declaration clearly delineates the requests for production of documents that plaintiff is seeking the Court's intervention—listing them by the numbered requests that were submitted to State defendants.  See Dkt. No. 124-2 at 11-16.  Plaintiff's memorandum of law, however, does not, as clearly, list or name each production request for which she seeks relief.  See generally Dkt. No. 124-1; see also FED. R. CIV. P. 7(b)(1)(B), (C) ("A request for a court order must be made by motion.  The motion must . . . state with particularity the grounds for seeking the order[] . . . and state the relief sought.").  However, plaintiff's memorandum of law states the specific documents that she seeks to be produced and cites to Attorney Barcroft's declaration in support of each.  See Dkt. No. 124-1 at 8-9.  As plaintiff's motion mentions the underlying documents relevant to each request for production named in Attorney Barcroft's declaration, the Court will address each listed request for production of documents as they are listed in the attorney's declaration.  The Court will refer to them as they appear in the declaration as either an initial "request for production," a "first supplemental request for production," or "second supplemental request for production."  Dkt. No. 124-2 at 10-16.  Plaintiff asserts that the following requests for production of documents have gone unanswered, State defendants have inappropriately asserted that they do not have responsive documents, or the production was insufficient: requests for production numbers 18, 22, 23, and 31; first supplemental requests for production numbers 8, 9, 10, 11, 12, 16, 18, and 20; and second supplemental request for production number 8.  See Dkt. No. 124-2 at 11-16.

## A.  Requests for Production of Documents

### 1.  Request for Production Number 18 and First Supplemental Request for Production Number 20[2]

Plaintiff's production request number 18, states:

Provide any and all correspondence and/or other documents indicating or relating to any complaint claims or charges filed against Alexis Barlow, by employees or former employees of NYSOPWDD, through any internal complaint procedures, any local, state or federal court, any Federal Department, any local, state or municipal Department, or union, alleging any, unlawful before, discrimination, harassment, creation of a hostile work environment, and/or retaliation during the course or the aforementioned individuals' employment with NYSOPWDD.

Dkt. No. 124-2 at 28.  State defendants objected to this request, stating that it was overly broad, unduly burdensome, vague, and irrelevant.  See Dkt. No. 124-2 at 49.  State defendants also objected to the request to the extent it called for legal conclusions regarding harassment, discrimination, hostile work environment, and retaliation.  See id.  They also objected to the production of "documents and materials acquired or created in the course of the investigation of any internal complaints of discrimination filed by [d]efendant Dominie against, *inter alia*, [d]efendant Barlow," under the attorney-client and attorney work product privileges and provided plaintiff with a privilege log related thereto.  Id. at 49; 35-38.  Notwithstanding their objections, State defendants produced "Documents relating to a counseling memorandum issued to Defendant Alexis Barlow, identified as DEF 001008-001010."  Id. at 49.  In a November 15, 2021, letter to State defendants, plaintiff explained that she "requested any complaints against Ms. Barlow, not just the complaints related to the present action.  To the extent there is privileged information we request that the information memorialized in a privilege log.  Any other

---

[2] To the extent any of the production requests seek similar responsive documents, the Court will address them together for judicial economy and efficiency.

responsive documents should be produced or produced in redacted format." Id. at 99. Plaintiff asserted that "[i]t is relevant whether Ms. Barlow was the subject of any other complaints at NYS." Id.

Similarly, plaintiff's first supplemental production request number 20 sought "copies of any and all complaints or reports made by any employee at NYSOPWDD's Glens Falls office in which allegations of sex-based harassment and/or hostile work environment were raised." Dkt. No. 124-2 at 67.  State defendants "object[ed] to this demand on the ground that it seeks confidential information and is temporally unbounded.  Without waiving said objections, after diligent search, defendants discovered no responsive documents." Id. at 75.  Plaintiff's November 15, 2021, letter states: "We are aware that Ms. Tromblee made a complaint, therefore, we are confused as to this response.  Also, to the extent there were other complaints, responsive documents should be produced." Id. at 102.

Plaintiff addressed these production requests in her memorandum of law, stating that in her communications with State defendants, she "also identified documents not produced in response to initial and supplemental document requested which were without valid objections including [] any complaints made against defendant Alexis Barlow, Ms. Tromblee's supervisor[]" and "complaints or reports made by *any* employee at NYSOPWDD's Glens Falls office in which allegations of sex-based harassment and/or a hostile work environment were raised[.]"  Dkt. No. 124-1 at 9, ¶ 6.  Plaintiff states that "[i]n response to these various requests the State [d]efendants replied *inter alia* that there were no responsive documents or that responsive documents should be subpoenaed from third parties." Id.

In her memorandum, plaintiff does not explain why additional complaints against defendant Barlow or those made at OPWDD Glens Falls office are relevant nor does she assert that there is a good faith basis to believe that additional complaints exist. See generally Dkt. No. 124-1.  Attorney Barcroft's declaration asserts that plaintiff "is filing a Motion to Compel to facilitate the necessary production of documents relevant to [p]laintiff's claims that have been identified that they exist and yet have not been produced"; however, she did not explain how further complaints have been identified as existing.  Dkt. No. 124-2 at 16, ¶ 44.  State defendants argue generally that plaintiff seeks to compel production of documents that "may not exist."  Dkt. No. 126 at 5.  State defendants do not specifically address production request number 18 or first supplement request for production number 20.  See generally Dkt. No. 126.

Following submission of plaintiff's motion to compel, she conducted a Rule 30(b)(6) deposition of Jodi Fisher, State defendants newly identified individual, "who was said to have knowledge of the topics listed within [p]laintiff's Notice of 30(b)(6) Deposition[.]"  Dkt. No. 138-1 at 2, 15-55.  Plaintiff's reply memorandum concerns primarily information learned from Ms. Fisher's deposition.  See Dkt. No. 138 at 9-11. The Court will not typically consider evidence submitted in reply.  See United States v. Hughes, No. 1:14-CV-0719 (LEK/CFH), 2015 WL 729735, at *2 (N.D.N.Y. Feb. 19, 2015) ("A party may not submit new materials in a reply to meet its initial burden."). However, in this instance, State defendants did not identify Ms. Fisher as a Rule 30(b)(6) witness until December 28, 2021, and plaintiff's motion to compel was due to the Court on January 3, 2021.  See Dkt. No. 124-2 at 9, ¶¶ 37-38, 116; see Minute Entry 12/21/2021.  Following Ms. Fisher's deposition, plaintiff sought leave from the Court to

file a reply to her motion to compel specifically because of information learned in the deposition, which the Court granted.  See Dkt. No. 128; see also Minute Entry 02/03/2022.  To the extent Ms. Fisher's deposition concerns arguments raised in plaintiff's initial moving papers, the Court will consider it.  See Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC, 314 F.R.D. 85, 87 (S.D.N.Y. 2016) ("Federal district courts have broad discretion in deciding motions to compel.").  However, to the extent Ms. Fisher's deposition and, in turn, plaintiff's reply memorandum raise issues not first addressed in plaintiff's motion to compel, the Court will later address those requests separately in this Memorandum-Decision and Order.

Plaintiff submitted Ms. Fisher's deposition testimony wherein Ms. Fisher explained that defendant Barlow's "account was on hold but [she] can't remember what it was specifically related to."  Id. at 50.  Ms. Fisher explained that defendant Barlow's account could have been on hold because of a lawsuit, a human rights case, or "an incident with one of our service recipients[.]"  Id. at 51.  Ms. Fisher stated that she "would not be able to tell [] what it was specifically placed on hold for without looking at her data base."  Id.  Ms. Fisher testified that she could search for internal complaints or lawsuits related to discrimination against defendants Barlow and Stander.  See id. at 52.  During the deposition, plaintiff's counsel asked for "not just the present complaint which we did say we want complaints that were brought against Stander and Barlow, which clearly are relevant to this case, if there are other discrimination complaints or other internal complaints about them as managers, we did ask for those to be produced. . . ."  Dkt. No. 138-1 at 52-53.  Based on information learned in Ms. Fisher's deposition, plaintiff filed a reply and asserted that, as to "complaints involving defendants[,]" she

12

"has a need for these documents as any prior complaints against these supervisors would further support her position that they had performance issues or otherwise exhibited misconduct in their supervisory capacity and the Agency was aware of these issues and yet failed to correct them."  Dkt. No. 138 at 10.  Plaintiff also stated that "[p]rior complaints about the conduct of [d]efendant Dominie at a group home on Route 50 which should have been produced as part of his personnel file were also not produced."  Id.

As to request for production number 18, plaintiff does not explain the relevance of additional complaints against defendant Barlow in her motion to compel.  See generally Dkt. No. 124.  Generally, arguments made for the first time in reply will not be considered.  See Barrows v. Brinker Rest. Corp., No. 5:19-CV-144 (GLS/ATB), 2020 WL 1511077, at *2 (N.D.N.Y. Mar. 30, 2020) ("It is hornbook law that new arguments and evidence are not properly presented in a reply memorandum of law.").  State defendants did not object to supplemental production for request number 20, which sought "any complaints" on relevance grounds—only that it was temporally unbound and sought confidential information.  Dkt. No. 124-2 at 75.  State defendants did not brief their relevance objection to request for production number 18 nor did they brief their overbroad objection to first supplemental request for production number 20. "Courts around the country have held that failure to brief an objection constitutes an abandonment of that objection."  Huseby, LLC v. Bailey, No. 3:20-cv-00167 (JBA) (TOF), 2021 WL 723319, at *4 n.1 (D. Conn. Feb. 24, 2021) (citing Cardenas v. Dorel Juvenile Grp., Inc., 230 F.R.D. 611, 620 (D. Kan. 2005) ("[O]ft-cited, leading case holding that 'objections asserted in a party's initial response to a discovery request – but

13

not reasserted in response to a motion to compel – are deemed abandoned.'"); Harrison v. Wells Fargo Bank, N.A., No. 3:13-cv-4682-D, 2016 WL 1392332, at *6 (N.D. Tex. Apr. 8, 2016) ("[A]n objecting party must, in response to a motion to compel, urge and argue in support of his objection to a request, or the objection will be waived or deemed abandoned.")).

Although plaintiff's explanation as to the relevance of additional complaints against individual defendants is stated for the first time in reply, the Court will consider it as plaintiff raised the complaints in her motion to compel as one of the sets of "documents that remain outstanding[]"; she raised the issue of relevance in her motion to compel, albeit generally, by stating that "all requested discovery materials meet [the relevance] standards as related to Ms. Tromblee's claims[]"; and State defendants did not brief their objections to either production request.  Dkt. No. 124-1 at 7, 9, 24; see also Dkt. No. 138 at 10; Dkt. No. 126.

The Court comes to a different conclusion related to an alleged prior complaint against defendant Dominie from a group home.  See Dkt. No. 138 at 10.  Plaintiff did not mention this alleged complaint in her memorandum of law, nor did Attorney Barcroft raise it in her declaration.[3]  See generally Dkt. No. 124-1; Dkt. No. 124-2 at 1-17.  As plaintiff advanced no arguments related to that alleged complaint, and State defendants were, therefore, not given an opportunity to respond, the Court will not consider the newly raised request made in plaintiff's reply.  See Barrows, 2020 WL 1511077, at *2 ("[N]ew arguments, declarations, and exhibits offered for the first time in [] reply will not

---

[3] The Court notes that this appears to relate to second supplemental request for production number 6. See Dkt. No. 124-2 at 87.  However, neither plaintiff nor Attorney Barcroft mention that production request in their filings.  See Dkt. No. 124-1; Dkt. No. 124-2 at 16.

be considered.  Indeed, [the opposing parties] have had no opportunity to respond to them.").

"Broader discovery is warranted when a plaintiff's claims are premised on a pattern or practice of discrimination at the organization-wide level, as opposed to specific allegations of discrimination made against an individual supervisor."  Chen-Oster v. Goldman, Sachs & Co., 293 F.R.D. 557, 562 (S.D.N.Y. 2013).  "To be sure, "[e]vidence of company-wide patterns of discrimination may reveal discrimination against a particular group of employees and thus be relevant."  Gunning, 2022 WL 783226, at *12 (quoting Chen-Oster, 293 F.R.D. at 567 (citation and quotation marks omitted)).

Plaintiff's complaint asserts the following:

> From an unknown time to on or about late October 2017, [OPWDD], including and without limitation, through its managers [defendant] Barlow and [defendant] Stander, failed to address the sexually inappropriate actions and harassment of [defendant] Dominie directed at, without limitation, other females at the [OPWDD] who were sexually harassed by [defendant] Dominie and provided statements to the Associated Press. The names of these women will be kept confidential in this Complaint.

Sec. Am. Compl. at 10-11, ¶ 65.  Furthermore, plaintiff alleges that State defendants and individual defendants "failed to sufficiently act to remedy [defendant] Dominie's discrimination and harassment despite being informed of it by [plaintiff] and others." Sec. Am. Compl. at 10, ¶ 60.  Plaintiff also alleges that the "acts of defendants Dominie and Stander were permitted to continue unremedied for so long as to amount to a practice of the defendants."  Id. at 33, ¶ 193.

Although plaintiff has asserted claims aimed at the conduct of individual defendants, her allegations are also specific to State defendants' Glens Falls office, as

opposed to the State or OPWDD in general.  Plaintiff's first supplemental request number 20 does not contain a time limitation, but her complaint alleges that there were "others" who informed State defendants of similarly discriminatory conduct and harassment "[f]rom on or about January 207 through late October 2017."  Sec. Am. Compl. at 10, ¶ 60.  As such, "all complaints or reports made by any employee at [OPWDD's] Glens Falls office in which allegations of sex-based harassment and/or hostile work environment were raised" are relevant and proportional the to the needs of the case to the extent she has identified a specific time period—namely, January 2017 to October 2017.  Similarly, complaints against defendant Barlow are relevant and discoverable.  State defendants did not brief their objections to the request and the Court, therefore, deems them waived.  See Huseby, 2021 WL 723319, at *4 n.1. However, to the extent State defendants asserted the attorney-client and work product privileges, such assertions should be made through an updated privilege log produced to plaintiff.

Despite the relevance and discoverability of the requested documents, State defendants assert generally that they have searched for all of the documents requested by plaintiff "but have not, to date, been able to locate them."  Dkt. No. 126 at 9. "Generally, a party's good faith averment that the items sought simply do not exist, or are not in his possession, custody, or control, should resolve the issue of failure of production since one cannot be required to produce the impossible."  Mason Tenders Dist. Council of Greater N.Y. v. Phase Constr. Servs., Inc., 318 F.R.D. 28, 42 (S.D.N.Y. 2016) (citations and quotation marks omitted).  Litigants commonly suspect that the responding part is withhold documents; however, "such suspicions, on their own, do not

ordinarily support the entry of discovery orders against the responding party[.]" Lewis v. Doe, No. 3:19-CV-02015 (JCH/TOF), 2021 WL 863473, at *5 (D. Conn. Mar. 8, 2021) (citing Margel v. E.G.L. Gem Lab Ltd., No. 04-CV-1514 (PAC/HBP), 2008 WL 2224288, at *3 (S.D.N.Y. May 29, 2008)).  "[A] different analysis applies when the requesting party 'identifie[s] specific evidence to call into question [the responding party's] contention that no further responsive documents exist.'" Id. (quoting Mason Tenders, 318 F.R.D. at 42-43)).

The Court notes that State defendants produced numerous internal investigation reports related to complaints made against the individual defendants.  See Dkt. No. 138-2 (filed under seal).  There are reports related to two complaints against defendant Barlow and two complaints against defendant Stander, all filed by plaintiff, in 2018 or 2019.  See id. at 60, 83, 105, 124.  To the extent plaintiff sought complaints filed by "any" employees against these defendants concerning sexual harassment or discrimination, the current investigation reports are not responsive if other complaints exist that were not filed by plaintiff.

Plaintiff has identified Ms. Fisher's testimony wherein she explained that when searching for e-mails responsive to discovery requests, she "remember[ed] that [defendant Barlow's] account was on hold[.]"  Dkt. No. 128-1 at 50.  Ms. Fisher did not remember what the account was on hold for or when the hold was placed but stated that the account information dating back to May 2014 exists.  See id.  Plaintiff has, therefore, produced specific evidence showing that defendant Barlow's OPWDD account might have been placed on hold prior to plaintiff's lawsuit and that Ms. Fisher would be able to search defendants Stander and Barlow's account for complaints

17

relating to discrimination.  See id. at 50-52.  State defendants have not rebutted the

possibility of this search nor rebutted the contention that defendant Barlow's account

may have already been on a litigation hold at the time of plaintiff's lawsuit.  See Lewis,

2021 WL 863473, at *5 (Because the plaintiffs had cited to specific evidence that

challenge[d] [the d]efendants' blanket assertion that no additional documents exist, the

burden . . . shift[ed] to [the d]efendants to show specifically where they [had] searched

and why these documents [were] not, in fact, within their custody, possession, or

control.").

Accordingly, plaintiff's motion to compel is granted insofar as State defendants

are directed to supplement their responses to request for production number 18 and

supplemental production request number 20 based on a search of their data base for

complaints against individual defendants Stander and Barlow.  Should no responsive

documents exist, State defendants are directed to supplement their response, under

oath, explaining what efforts were taken to locate the requested documents.

### 2.  Production Request Number 22 and First Supplemental Production Request Numbers 9 and 10

Plaintiff's production request number 22 seeks "any and all computer access

records and/or computer cache of Dominie's computer and/or computer usage from

January 2017 to October 2017 which reflect internet history and internet searches."

Dkt. No. 124-2 at 29.  State defendants objected to production request number 22 "as

overly broad, unduly burdensome, vague as to 'computer access records' and

'reflect[ing] internet history'," and irrelevant.  Dkt. No. 124-2 at 50.  In her November 15,

2021, letter to State defendants' counsel, plaintiff limited the scope of the request "to ten

months[.]"  Dkt. No. 124-2 at 99.  Plaintiff also expressed willingness to "limit the search

to any non-work related conduct on the internet -- any sites that were sexual in nature."
Id.  State defendants did not address the issue of defendant Dominie's search history in their response.  See generally Dkt. No. 126.

In her reply, plaintiff asserts that Ms. Fisher testified that "the best person to speak to" "a search of [d]efendant Dominie's internet cache and search history" "would likely be Peter Scalise."  Dkt. No. 138-1 at 6; see also Dkt. No. 138-1 at 27, 29. Following submission of plaintiff's motion, Mr. Scalise, Director/Chief of Investigations for the Office of Investigation's and Internal Affairs, submitted an affidavit which does not address the internet cache or search history searches.  See Dkt. No. 136.  In an e-mail to State defendants' counsel on February 15, 2022, plaintiff asked for a supplemental affidavit from Ms. Scalise addressing the "internet cache searches," and Attorney Rock agreed to do so.  Dkt. No. 138-1 at 76.  As of the date of this motion, no affidavit has been filed.

The Court notes that plaintiff does not explicitly address the relevance of this request in her memorandum of law.  See generally Dkt. No. 124-1.  State defendants do not address the request, whatsoever, in their response.  See generally Dkt. No. 126. Further, State defendants have not explained how performing a search of defendant Dominie's internet cache for a ten-month period concerning only "non-work related conduct" is overbroad or burdensome.  Dkt. No. 124-2 at 99.

However, plaintiff's complaint alleges that "[o]n numerous occasions, from on or about January 2017 through on or about October 11, 2017, [defendant] Dominie accessed sexual material using his office computer in a manner visible to [plaintiff], and publicly shared this material with [plaintiff] and others in the office."  Sec. Am. Compl. at

7-8, ¶ 45.  Additionally, plaintiff alleges that defendant Dominie would "watch[] porn on his computer."  Id. at 7, ¶ 43.  Therefore, defendant Dominie's internet searches are plainly relevant to her hostile work environment claims.  See Huseby, LLC v. Bailey, No. 3:20-CV-00167 (JBA), 2021 WL 3206776, at *6 (D. Conn. July 29, 2021) ("In a few instances, the relevance of such information is plain from the face of the request . . . .").

Moreover, plaintiff limited the scope of her request, State defendants did not further object following the limitation being added, State defendants did not address this request in their response to plaintiff's motion, and State defendants agreed to produce a supplemental affidavit from Mr. Scalise but have not done so.  Accordingly, plaintiff's motion is granted insofar as State defendants are directed to conduct a search and supplement their production related to "any non-work related conduct on the internet -- any sites that were sexual in nature" on defendant Dominie's work computer during the limited, ten-month time period.  To the extent such information cannot be found, State defendants are directed to produce a supplement affidavit from Peter Scalise, or the individual who conducts the search, explaining the efforts taken to obtain the responsive documents.

Plaintiff's first supplemental production request number nine seeks "any and all documents related to Mr. Dominie's internet usage on any NYSOPWDD computer, including any browser search history for websites visited that were sexual in nature." Dkt. No. 124-2 at 66.  State defendants objected to the request "on the ground that it is vague and unduly broad and burdensome and to the extent it seeks data outside the State Defendants' control.  Without waiving said objections, the State Defendants' diligent search uncovered no responsive documents."  Dkt. No. 124-2 at 73.

In the November 15, 2021, letter, plaintiff stated:

We understand from eyewitness testimony, including Ellen Davis, that Mr. Dominie visited sites that were sexual in nature.  We request that the browser search history for Mr. Dominie's computer be produced with respect to this request and that if not available the OPWDD personnel that conducted the searches be able to testify to the same.

Dkt. No. 124-2 at 100.  Plaintiff's first supplemental production request number 9 is largely duplicative of production request number 22.  See Dkt. No. 124-2 at 50.  As such, plaintiff's motion to compel response to first supplemental production request number 9 is granted insofar as State defendants are directed to supplement their production and/or update Mr. Scalise's affidavit explaining what steps were taken to locate "any non-work related conduct on the internet -- any sites that were sexual in nature" relative to defendant Dominie's work computer during the ten-month period.

Plaintiff's first supplemental production request number 10 sought "any and all documents related to Mr. Dominie's internet usage on any NYSOPWDD computer, including any browser search history for any social media sites or posts made by Mr. Dominie that referenced [p]laintiff."  Dkt. No. 124-2 at 66.  Defendants objected to the request, stating that it was "vague and unduly broad and burdensome."  Id. at 73.  In her November 15, 2021, letter plaintiff stated that "[t]his request is limited to social media sites or posts by Mr. Dominie related only to [p]laintiff – it is not unduly broad or burdensome as it involves two persons, Mr. Dominie and Ms. Tromblee, and it is limited to the time when they worked together in 2016 to October 2017."  Id. at 101.

In her motion, plaintiff includes this request among the list of documents that "remain outstanding[,]" but she makes no further substantive arguments concerning the request.  Dkt. No. 124-1 at 9, ¶ 6.  Attorney Barcroft's declaration similarly lists the

request as one which has not been responded to but provides no further information related to the request.  See Dkt. No. 124-1 at 15.  State defendants do not address this request in their response and plaintiff does not address it in her reply.  See generally Dkt. Nos. 126, 138.

As to social media sites, plaintiff does not explain the relevance of the search, nor is it clear form the face of her complaint.  See generally Sec. Am. Compl.  Plaintiff must do more than simply list the production requests she seeks an answer to.  See N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc., 325 F.R.D. 36, 48 (E.D.N.Y. 2018) (explaining that the "requesting party" must make "a *prima facie* showing of relevance").  Ffollowing Ms. Fisher's deposition and Mr. Scalise's affidavit, plaintiff does not address any social media posts in her reply.  See Dkt. No. 138. Additionally, the request does not appear plainly relevant as there are no discernable allegations related to defendant Dominie's social media in plaintiff's complaint.  See generally Sec. Am. Compl.  As plaintiff has not stated any reason justifying the Court's intervention on this production request, the motion is denied as to first supplemental production request number 10.  See Benjamin v. Oxford Health Ins., Inc., No. 3:16-CV-00408 (AWT), 2017 WL 772328, at *5 (D. Conn. Feb. 28, 2017) (denying motion to compel, in part, where the plaintiff "made no argument in support of her motion to compel further responses[.]").

In sum, plaintiff's motion to compel is granted as it relates to production request number 22 and supplemental production request number 9, as outlined herein, but denied as to supplemental production request number 10.

### 3.  Production Request Number 23

Plaintiff's production request number 23 sought "any and all communications between Dominie and Stander and Dominie and Barlow, including from personal phones and personal email addresses, relating pornography, sexual matters or referring to [p]laintiff in any manner from January 2017 to October 2017."  Dkt. No. 124-2 at 29. State defendants objected to the request being overly broad and unduly burdensome as it sought "all communications[.]"  Dkt. No. 124-2 at 51.  State defendants also objected to the request as being vague as to "sexual matters[,]" duplicative of requests made to individual defendants for their own respective communications, and seeking information not in State defendants' possession as the request sought information from "personal" phones and e-mail addresses.  Id.  In her November 15, 2021, letter, plaintiff stated

> While we understand that the State may not be in possession of personal phones or emails, the request is not limited to this, it merely states 'including' this, therefore, please produce any communications in OPWDD's possession, custody or control regarding communications between Dominie and Barlow and Dominie and Stander related to pornography or sexual matters or communications that refer to Mary Tromblee.

Dkt. No. 124-2 at 99.  State defendants do not address this document request in their response.  See generally Dkt. No. 126.  Plaintiff's reply addressed only the requests for production concerning "state-issued cell phones" and not individual defendants personal cell phones.  Dkt. No. 138 at 2, 10-11; Dkt. No. 138-1 at 6-9.

As plaintiff has not explained in her memorandum of law, attorney's declaration, or reply why information from individual defendants' personal e-mail addresses and cell phones is relevant and discoverable, the Court denies her motion as to request for production 23.

### 4.  Production Request Number 31

Plaintiff's production request number 31 seeks "any and all correspondence among and between Kristi Beitter and Barlow concerning [p]laintiff and Dominie."  Dkt. No. 124-2 at 30.  State defendants objected to the request "as vague as to the meaning of 'among and between' and 'concerning' to the extent that it is not reasonably limited in time or scope or otherwise related to the events at issue in the instant litigation."  Dkt. No. 124-2 at 53.  State defendants explained that, nevertheless, "a good-faith effort is underway to locate non-privileged documents or materials responsive to his request, to be disclosed to [p]laintiff's counsel at the conclusion of said search.  The State [d]efendants further refer the [p]laintiff to those documents and material disclosed in response to Demand No. 18."  Id.

In her follow-up letter, plaintiff stated:

> The reference to Demand 18 is to the counseling memo from Ms. Beitter to Ms. Barlow.  We requested any and all correspondence between Ms. Beitter and Ms. Barlow including Lynx[4] messages, text messages, emails, written correspondence, which is deficient.

Dkt. No. 124-2 at 100.  In that letter, plaintiff also specifically requested, "Lynx messages (a former messaging system at NYSOPWDD) from Chad Dominie to Angela Erfelt where Mr. Dominie asked Ms. Erfelt to f***, as testified to by Ms. Abare."  Id. at 97.  Plaintiff submitted portions of union representative Annette Abare's deposition transcript in which she testified that her "notes" "read . . . Angela Ertelt asked if he would f*** her on Link[,]" which "[i]f [she was] reading it right, Chad asked Angela Ertelt to f*** him on Link, which was a message system at the time."  Id. at 175.  Ms.

---

[4] Ms. Fisher testified that the messaging system was spelling "L-y-n-c, Lync[.]"  Dkt. No. 138-1 at 18.  As such, the Court will utilize this spelling when not directly quoting the parties.

Abare stated she knew "Link" was a messaging system, but that she did not use it and she did not know if it was used by an OPWDD agency or whether it was personal.  Id. at 175-176.

Aside from listing request number 31 in her memorandum of law and in Attorney Barcroft's declaration, plaintiff makes no argument concerning the relevance of this specific request.  See Dkt. No. 124-1 at 9; Dkt. No. 124-2 at 13.  However, State defendants did not object to this request on relevance grounds, only that it was "vague" and stated that they were nevertheless searching for responsive documents.  Dkt. No. 124-2 at 53.  In reply, plaintiff addresses her request for Lync messages and refers the Court to Ms. Fisher's testimony.  See Dkt. No. 138 at 10.  Ms. Fisher testified that she "think[s she] searched for Liam Stander, Chad Dominie, Mary Tromblee, Alexis Barlow, and there may have been a couple of others but [she doesn't] recall the names."  Dkt. No. 138-1 at 20.  Ms. Fisher did not limit the search in time or by "key word searches" and received "a little over a hundred hits[.]"  Id. at 22-23.  Plaintiff asserts that as of the date of her reply, "the list of Lync messages, the export report, and any privilege logs ha[d] not been produced."  Dkt. No. 138 at 10.

As to e-mails, Ms. Fisher testified that "in December 2017 [she] officially put four [e-mail] accounts on hold.  I know one was Mr. Stander.  One was Ms. Tromblee.  One was Mr. Dominie.  And the fourth was either Alexis Barlow or Christie Bitter, but [she] can't remember without going back to review it."  Dkt. No. 138-1 at 24.  She also testified that she "was asked to provide 21 custodial email accounts for the time period of January 1st, 2017 through December 31st, 2018."  Id. at 26.  She testified that she has a spreadsheet from providing the custodial accounts.  See id.  Ms. Fisher explained

that if an individuals' "account was on hold, then we wouldn't have lost any of their emails for the entire time frame[]"; however, if there was no hold on an account, the e-mail will be gone if it is deleted from "deleted folder[.]"  Id. at 28.  Ms. Fisher stated that she searched defendant Stander's e-mail account and remembers searching for e-mails or instant messages involving defendant Dominie.  See id. at 32.  She also testified, "[s]o in the initial searches that I did, I know I did searches between Barlow and Stander, between – and I think it was anything related to Tromblee or Dominie and those, when I did those specific searches, if there were any Lync messages they would have shown up with the emails."  Id. at 33.  She stated that she has a copy of the original exports she "did for any emails or Lync messages[.]"  Id. at 34.  Finally, Ms. Fisher stated that she is "the only person who does email searches for lawsuits for OPWDD."  Id. at 35.

Despite State defendants responding to plaintiff's initial request by stating that a search was underway, State defendants do not explain, and it is not otherwise evident to the Court, why the results from the search of the Lync messages or e-mails were not produced to plaintiff.  See generally Dkt. No. 126.  Rather, State defendants now generally assert that plaintiff seeks irrelevant information and that they do not have responsive documents.  See id.  Plaintiff asserts that the Lync messages would support her hostile work environment allegations.  See Dkt. No. 138 at 10.  Additionally, as to Ms. Beitter, in plaintiff's complaint, she alleged that "[o]n June 14, 2018, Ms. Tromblee disclosed, amongst other things, failure to her supervisors to promptly sign pay cards for at least seven different pay periods in retaliation for disclosing discriminatory behavior by Mr. Dominie, to Ms. Sheehan, Amy Link, and Mr. Doddemeade."  Dkt. No. 88 at 16-

17, ¶ 103.  Plaintiff also asserts that "Kristen Beitter, a Development Disabilities

Program Specialist with NYSOPWDD and the same employee who made hostile and

retaliatory statements against Ms. Tromblee regarding her allegation concerning

unsigned timecards by management and mileage, signed the paperwork concerning

Ms. Tromblee's sister's termination."  Id. at 26, ¶ 160.  As plaintiff has identified Ms.

Beitter as an individual involved in the alleged retaliatory conduct, she should be added

to the search of Lync messages.  Additionally, as Ms. Fisher testified to conducting

relevant searches and having results, and Ms. Abare testified that her notes identified

messages between defendant Dominie and Angela Erfelt; therefore, Ms. Erfelt's

messages should be added to the search.  See Mason Tenders, 318 F.R.D. at 42-43

("[The p]laintiffs have identified specific evidence to call into question [the d]efendants'

contention that no further responsive documents exist.").

Accordingly, plaintiff's motion is granted as to the individual defendants' Lync

messages and e-mails, as well as Ms. Beitter's and Ms. Erfelt's messages and e-mails.

To the extent such documents do not exist, State defendants are directed to

supplement their responses explaining, under oath, the efforts taken to search for such

messages.

### 5.  First Supplemental Production Request Number 8

Plaintiff's first supplemental production request number 8 sought "any and all

attendance sheets, calendar invitations, meeting minutes or other documents reflecting

the attendance of NYSOPWDD employees during meetings relating to, or convened on,

the dates referenced in the Amended Complaint."  Dkt. No. 124-2 at 66.  State

defendants responded that their "diligent search revealed no such documents

responsive to this request."  Dkt. No. 124-2 at 73.  Thereafter, in her November 15, 2021, letter, plaintiff stated: "We are aware from Mr. Albano's testimony that calendar invitations and other documents related to the attendance of OPWDD employees at meetings related to the dates referenced in the Amended and Second Amended Complaint.  We request that these documents be produced for Mr. Albano and other personnel."  Dkt. No. 124-2 at 100.

In her motion, plaintiff references Human Resource Specialist David Albano's deposition testimony.  See Dkt. No. 124-1 at 9, ¶ 5.  Plaintiff seeks files and communications allegedly possessed by Mr. Albano related to defendant Dominie's "arbitration matter[.]"  Dkt. no. 124-1 at 9, ¶ 5.  Specifically, plaintiff asserts that "Mr. Albano acknowledged the existence of [] scheduled conference calls and other reminders related to [p]laintiff's case in Mr. Albano's Outlook calendar . . . and potentially additional emails to and from Mr. Albano . . . ."  Id. at 16.  Plaintiff's counsel asserts that she requested "a file related to [defendant] Dominie's arbitration, any and all invitations or reminders on his Outlook calendar for preparation sessions, hearings, meetings, telephone conversations or the like . . . and any and all communications to or from David Albano relating to" the arbitration, and that these documents have not been produced, despite her request.  Dkt. No. 124-2 at 11, ¶ 43.d.  State defendants contend only that they "have made a diligent search of their files and have not been able to locate those documents."  Dkt. No. 126 at 10.

Plaintiff's complaint alleges that State defendants "refused to permit [her] to testify outside of the room from [defendant] Dominie, despite the Order of Protection and the security concerns that [plaintiff] expressed in writing and verbally about her own

safety and [defendant] Dominie's mental instability and unpredictability."  Sec. Am. Compl. at 21, ¶ 128.  Plaintiff contends that "Mr. Albano even informed [plaintiff] that during the first day of testimony [defendant] Dominie had to be disciplined for intimidating witnesses and making inappropriate comments during the hearing."  Id. She also alleges that Mr. Albano "intimidated and bullied" plaintiff, and repeatedly "threatened [plaintiff's] job if she did not assist NYS with terminating [defendant] Dominie."  Id. at 20, ¶ 126.  Plaintiff avers that "Mr. Albano forced [plaintiff] to participate in multiple sessions, despite her informing him of the impact on her health, to prepare for the testimony against [defendant] Dominie."  Id. at 20, ¶ 127.

Plaintiff has submitted testimony excerpts from Mr. Albano's deposition, in which he testified about plaintiff participating remotely during defendant Domine's disciplinary arbitration.  See Dkt. No. 124-2 at 178-79.  Based on the testimony excerpts submitted to the Court, it appears that, at some unspecified date, Mr. Albano may have informed plaintiff that she could testify in a different room.  See id. at 181.  However, Mr. Albano indicated that he did not know when he communicated with plaintiff.  See id.  Mr. Albano also testified that he may have corresponded with the arbitrator about plaintiff testifying, but that he could not recall when.  See id.  Mr. Albano testified that his Outlook calendar might reflect scheduled conference calls regarding the matter and that he could conduct a search by "punch[ing] in Tromblee, and then any appointments that [he] had involving Tromblee would come up."  Id. at 182.

Mr. Albano further testified that he "[u]sually [] keep[s] a file of [his] exhibits" that were presented during an arbitration.  Dkt. No. 124-2 at 183.  Mr. Albano testified that a file concerning defendant Dominie's arbitration "should" exist and that his files are

maintained electronically.  Id. at 184.  As to searching his e-mails related to plaintiff

testifying remotely, Mr. Albano testified that he "would just probably start with her name,

[his] e-mail, would go down to 2018 when [he] first started, and then [he] would just start

working up."  Id. at 185.

In reply, plaintiff addresses only the 2019 arbitration file, and states that the file is

necessary "as it would provide insight into the documents, facts, witnesses, and other

information considered and relied upon by the arbitrator in reaching [his] decision.  Most

critically, the information relied upon in sustaining the charges against [d]efendant

Dominie relating to his creation of a hostile work environment are relevant."  Dkt. No.

138 at 11.

Plaintiff does not explain the relevance of her request for outlook information, and

it is not otherwise plainly evident from the production request.  As plaintiff has provided

no information to meet her initial burden of proving relevance, the motion to compel as

to Outlook or calendar invites is denied.[5]  To the extent plaintiff seeks Mr. Albano's

arbitration file, State defendants contend, and their counsel declares that no additional

responsive documents exist.  See Dkt. No. 126 at 9; Dkt. No. 127 at 2-3, ¶¶ 8, 11.

However, Mr. Albano testified that a file concerning defendant Dominie's arbitration

"should" exist and that he maintained his filed electronically.  Dkt. No. 124-2 at 184.

State defendants have not explained, either in their response or through counsel's

declaration, what searches they conducted related to this case.  See generally Dkt. No.

---

[5] The Court notes, however, that State defendants did not object to this request on relevance grounds.
See Dkt. No. 124-2 at 73.  Nevertheless, the burden on a motion to compel lies first with the requesting
party to prove the relevance of the requested documents.  See Sheindlin v. Brady, No. 21-CV-01124
(LJL) (SDA), 2021 WL 2075483, at *2 (S.D.N.Y. May 24, 2021) (citing In re Subpoena to Loeb & Loeb
LLP, No. 19-MC-00241 (PAE), 2019 WL 2428704, at *4 (S.D.N.Y. June 11, 2019)), aff'd, 2021 WL
2689592 (S.D.N.Y. June 30, 2021) ("The party seeking discovery bears the initial burden of proving the
discovery is relevant.").

126, 127.  As such, State defendants are ordered to supplement their response, under

oath, to explain what efforts were taken to search for Mr. Albano's 2019 arbitration file

which he testified should be maintained electronically.

### 6.  First Supplemental Production Request Numbers 11 and 12

Plaintiff's first supplemental production request number 11 states:

> Provide any and all written or electronic communications and/or other
> documents sexual in nature or relating to sexual misconduct at
> NYSOPWDD and/or any allegations related to the Amended Complaint
> between Defendants Barlow and Stander, including electronics mail and
> text messages from their personal and State-issued cellular phones,
> written or received by any employee of NYSOPWDD regarding, relating
> to, or referencing [p]laintiff's complaints to Defendants Barlow or Stander
> regarding any issues with Defendant Dominie.

Dkt. No. 124-2 at 66.  State defendants objected to the request as "vague, unduly broad

and burdensome, and appears to seek documents outside of defendants' control.

Defendants do not have access to the text of any text messages sent or received from

state-issues cell phones."  Dkt. No. 124-2 at 73.  Nevertheless, State defendants stated:

> Defendants have provided plaintiff with the phone numbers and carriers
> for Barlow's and Stander's state-issued cell phones to allow plaintiff to
> subpoena the carriers.  Dominie did not have a state-issued cell phone.
> Without waiving said objections, responsive documents appear in the ESI
> produced by defendants and in the supplemental disclosures provided
> herewith.

Id. at 74.

Plaintiff's first supplemental production request number 12 sought "any

and all correspondence and/or other documents written or received by Alexis

Barlow, Liam Stander, or Chad Dominie regarding, relating to, or referencing

[p]laintiff, including electronic mail and text messages from their personal and

State-issued cellular phones."  Dkt. No. 124-2 at 66.  State defendants

31

> object[ed] to this demand on the ground that it is vague, unduly broad and burdensome, and appears to seek documents outside of defendants' control.  Defendants do not have access to the text of any text messages sent or received from state-issued cell phones.  Defendants have provided plaintiff with the phone numbers and carrier's for Barlow's and Stander's state-issued cell phones to allow plaintiff to subpoena the carriers.  Dominie did not have a state-issued cell phone.  The State Defendants do not control the individual Defendants' personal cell phones.

Dkt. No. 124-2 at 74.

In the November 15, 2021, letter, plaintiff responded to supplement production request number 12 by referring State defendants to plaintiff's supplemental production request number 11.  See Dkt. No. 124-2 at 120.  Plaintiff's response to production request number 11 states:

> We have no Lynx messages or text messages produced in response to this request, to the extent there are responsive documents in OPWDD's possession, custody or control we request that they be produced limited to the time period at issue, the carrier will not have text messages available for this time period that can be subpoenaed, and it should not be incumbent on Plaintiff to have to subpoena the text messages if on state issued phones.  It is also concerning that OPWDD does not have access to these text messages as they are their employees' phones.

Id. at 101.

In Mr. Scalise's affidavit, he avers that "OPWDD does not at this point in time have the equipment necessary to conduct the requested searches of state cell phones issued to employees."  Dkt. No. 126 at 1, ¶ 4.  Mr. Scalise stated that "[i]n the past, if a similar request for the search of a state issued cell phone was received, it was the position of OPWDD to refer the requester to the cell phone carrier.  The carrier would then, upon information and belief, conduct the search if provided with a proper subpoena."  Id. at 1, ¶ 5.  Further, Mr. Scalise explained that he "learned that the carrier could not complete text search requested here because of the time frame in question.

32

OPWDD is obtaining the equipment necessary to complete the searches requested herein and will have the same available in the next couple of weeks." Id. at 1, ¶¶ 6-7. He also stated that "[u]pon information and belief [d]efendant Barlow and Strander were issues state owned cell phones but defendant Dominie was not issued such phones." Id. at 2, ¶ 8.  Mr. Scalise's affidavit was signed on February 14, 2022.  See id. at 2.

During Ms. Beitter's deposition, she testified that she had a state-issued cell phone.  See Dkt. No. 138-1 at 74.  In an e-mail exchange, plaintiff's counsel stated that Mr. Scalise's affidavit "does not address Ms. Beitter's cell phone from which texts were requested and are responsive.  Can you have Mr. Scalise address her phone as well when you provide an affidavit from him regarding the internet cache searches?"  Dkt. No. 138-1 at 76.  State defendants' counsel responded, "[y]es, I most assuredly will do so."  Id.  In another e-mail, State defendants' counsel asserted "that all relevant emails, text messages and other similar documents have already been produced."  Dkt. No. 124-2 at 155.  In response to plaintiff's motion to compel, State defendants do not address the issue regarding the search of cell phones or their capabilities for doing so. See generally Dkt. No. 126.

In reply, plaintiff asserts that "not a single text message has been produced.  If State defendants are unable or unwilling to complete this search, then State defendants should turn the cell phones over to [p]laintiff to arrange for the searches."  Dkt. No. 138 at 11.  To date, State defendants have not produced an updated affidavit from Mr. Scalise regarding Ms. Beitter's cell phone, whether the "equipment necessary" has been obtained, or provided plaintiff with the state-issued cell phones.  Dkt. No. 126 at 1, ¶ 7.

As an initial matter, to the extent requests for production numbers 11 and 12 concern Lync messages to or from individual defendants, the Court concludes that such messages are appropriate to produce or to explain the attempted production of, as outlined above.  See supra at 25-26.

As to text messages, the Court notes that State defendants did not initially challenge the production requests as irrelevant.  See Dkt. No. 124-2 at 74.  However, in response to plaintiff's motion to compel, State defendants contend that there is no "relevance to the alleged text messages between Leyna Marcotte and Elyse Lavin or those between Mr. Dominie and Mr. Stander."  Dkt. No. 126 at 11.  In reply, plaintiff states that "[a]ll of the documents requested are relevant[,]" but does not specifically address the relevance of the text messages.  Dkt. No. 138 at 5.  Rather, plaintiff relies primarily on Mr. Scalise's affidavit and State defendants' counsel's e-mails agreeing to provide a supplemental affidavit as support for her motion to compel.  See generally id.

Purporting that an opposing party agreed to do something does not amount to a legal argument in support of a motion to compel.  See OnActuate Consulting Inc. v. Aeon Nexus Corp., No. 1:20-CV-508 (LEK/CFH), 2022 WL 866418, at *11 (N.D.N.Y. Mar. 23, 2022) (explaining that counsel's assertion that the opposing party agreed to produce certain documents during their prior meetings, "even if true, does not warrant granting a motion to compel, and defendant does not make any legal arguments in its letter motion . . . .").  Rather, any failure to deal with an opposing party in good faith will factor into a sanctions analysis.  Plaintiff does not argue in her motion to compel or reply why the sought-after text messages are relevant.  See Dkt. Nos. 124-1, 138.  However, in her complaint, plaintiff clearly alleged the existence of inappropriate text messages

contributing to the alleged hostile work environment between defendants Stander and Dominie.  See Sec. Am. Compl. at 7, ¶¶ 43-44.  As such, text messages from defendant Stander's phone are plainly relevant.  However, although plaintiff has produced evidence that Ms. Beitter and Ms. Barlow had a state-issued cell phones, she has not established the relevance of Ms. Beitter's text messages and it is not otherwise clear from the Complaint or production request.  See Dkt. No. 138-1 at 76.  Accordingly, the motion is denied as to Ms. Beitter's and Ms. Barlow's state-issued cell phones.

State defendants initially objected to the requests as vague, broad, unduly burdensome, or as requesting documents out of their control.  See Dkt. No. 124-2 at 74. State defendants provided plaintiff "with the phone numbers and carrier information for Barlow's and Stander's state-issued cell phones to allow plaintiff to subpoena the carriers[]" and Mr. Scalise explained that OPWDD's practice was to provide such information to the requesting party because they lacked equipment to conduct the searches themselves.  Dkt. No. 124-2 at 74; Dkt. No. 136 at 1, ¶ 5.  The carrier was also unable to conduct the search "because of the time frame in question."  Dkt. No. 136 at 1, ¶ 6.

To the extent State defendants do not have the "equipment necessary" to search the text messages, a motion to compel cannot be used to order production of documents that are unobtainable.  See Dkt. No. 136 at 1, ¶ 4.  However, Mr. Scalise's affidavit asserted that "OPWDD is obtaining the equipment necessary to complete the searches requested herein and will have the same available in the next couple of weeks."  Dkt. No. 136 at 1, ¶ 7.  Plaintiff's motion is, therefore, granted insofar as Ms. Scalise has sworn to OPWDD obtaining the equipment and conducting the searches.

See id.  Accordingly, State defendants are directed to either: (1) conduct the search of defendants Stander's phone with the obtained equipment and produce the results to plaintiff; or (2) produce an updated affidavit from Mr. Scalise outlining what efforts have been taken to secure the equipment.

Plaintiff also specifically seeks an e-mail between IT employee, Stephen Cernak and defendant Strander.  See Dkt. No. 124-1 at 8, ¶ 3; 15-16.  Plaintiff states that "Stephen Cernak, an IT employee who witnessed some examples of the sexual harassment by [d]efendant Dominie against [p]laintiff[,]" provided deposition testimony about an alleged reply e-mail from defendant Stander, who at the time supervised defendant Dominie.  Dkt. No. 124-2 at 11, ¶ 43.b.  Plaintiff contends that State defendants failed to provide a copy of the e-mail, and that there is no indication Mr. Cernak was asked after the deposition to check his e-mail for the same.  See Dkt. No. 124-1 at 8, ¶ 3.

State defendants assert that, "[Mr.] Cernak's deposition testimony that he 'believe[d] that an email was sent' does not overcome the fact that a search of the emails has been conducted [and] that no such email has been located."  Dkt. No. 126 at 10-11.  State defendants assert that Mr. Cernak's testimony explaining that "he 'would have to go back in and . . . pull the record on the e-mails and verify' is proof that he is uncertain of the existence of such emails."  Id. at 11.

The relevant disposition testimony is as follows:

> Q.     So you wrote an e-mail to Mr. Strander after observing the February 20th, 2017, interaction between [defendant Dominie and plaintiff]?
>
> A:     Correct.

Q:      And that e-mail is something that you also provided to Ms. Margaret Sheehan at some point?

A:      Yes.

Q:      In that e-mail to Mr. Strander, to the best that you recall, what did you report?

A:      The exact same thing that – pretty much verbatim for what this was written out when asked – what the report was.

Q:      Okay.  And after sent – do you recall when you sent that e-mail to [defendant Stander], was it the same day, was it the next day?

A:      It was either that night when I got back, if it was too late, then it would have been the next day.  So it was within a 24-hour period.

Q:      Did Mr. Stander respond to you by e-mail, to the extent that you recall?

A.      I don't know if she replied to the e-mail.  She[6] did give me a call and said that, hey, we know that Chad gets out of hand here now and then, and we all know how he is.  I said, we do, and I understand it, but that was way, way - - it's getting out of control.  It's getting more and more aggressive.  I said it's got to stop.

        What he did in front of us, we have to make sure we stop this, because the staff even in the office were, you know, very quiet and embarrassed.  I was kind of shocked none of them didn't say anything either.

Q.      So you sent this to Mr. Stander within 24 hours of this happening?

A.      Yes.

Q.      And then Mr. Stander responded to you by e-mail?

        **MR. LIBERATI-CONANT:** Objection.

Q.      I could have gotten that wrong.

---

[6] It appears that plaintiff's counsel was asking Mr. Cernak about a response from Mr. Stander.  See Dkt. No. 124-2 at 171-72.  However, Mr. Cernak had also mentioned an e-mail to Ms. Sheehan.  See id.  It is not clear whether, when testifying that "she gave me a call[,]" he misspoke and intended to say "he" as in Mr. Stander, or whether he was referring to a response and phone call from Ms. Sheehan.  Id. at 172.

> A.      I would have to go back in, and I could pull the record on the e-mails and verity.  Everything is backed up, so any time that we need any of these e-mails, I can retrieve them, anything from the time our exchange server has been started I can have it . . . .

Dkt. No. 124-2 at 171-72.

Contrary to plaintiff's counsel's declaration, the deposition except submitted to the Court ends at "it" and does not include "pulled.  I do believe an e-mail was sent . . . ."  Dkt. No. 124-2 at 11, ¶ 43.b; 171-72.  However, State Defendants do not contest whether Mr. Cernak made such statement; rather, they assert that Mr. Cernak was "uncertain" about the existence of the e-mail, which is consistent with the relevant testimony excerpts provided.  See Dkt. No. 126 at 11.

While State defendants argue in their memorandum of law that a diligent search for documents was conducted, they have not provided an explanation describing what efforts, if any, were undertaken to locate any potential reply e-mail from defendant Stander's.  Although the Court cannot compel disclosure of documents that do not exist, State defendants' attorney declaration provides no detail as the searches conducted. See Dkt. No. 127 at 3, ¶ 12; see also Grayson v. Gen. Elec. Co., No. 3:13-CV-1799(WWE/WIG), 2016 WL 1275027, at *2 (D. Conn. Apr. 1, 2016) ("It is quite clear that Rule 34 cannot be used to compel a party to produce a document that does not exist.").  Mr. Cernak's testimony alludes to the potential existence of the e-mail and indicates that he could search and confirm the existence or non-existence of the e-mail. See Dkt. No. 124-2 at 172.  Accordingly, plaintiff's motion to compel is granted insofar as State defendants are directed to supplement their responses, explaining what steps were taken to locate the alleged reply email referenced in Mr. Cernak's testimony.  If the reply e-mail exists, State defendants are directed to produce the e-mail to plaintiff.

38

### 7.  First Supplemental Production Request Number 16

Plaintiff's first supplemental production request number 16 states: "Provide any and all written or electronic communications between Defendants Stander, Barlow and/or Dominie including but not limited to e-mails, text messages from State-issued cellular phones, Facebook or other social media messages or postings, or instant messages relating to the use, sale or possession of illegal drugs."  Dkt. No. 124-2 at 66.  State defendants objected to the request as "unduly broad and burdensome and to the extent that it seeks electronic information not in the control of defendants, including but not limited to, data and documents controlled by facebook, and text data controlled by telecommunications providers."  Id. at 74-75.  Nevertheless, State defendants asserted that "after diligent searched, defendants have discovered no responsive documents."  Id. at 75.

Plaintiff does not raise this production request in her motion, State defendants do not raise it in response, and plaintiff does not address it in her reply.  See generally Dkt. Nos. 124-1, 126, 138.  The only place it appears is in Attorney Barcrofts' declaration listing the production requests that she deems relevant to the motion to compel.  See Dkt. No. 124-2 at 15.  Listing a production request among the many for which plaintiff seeks relief is insufficient to warrant granting her motion.  Consequently, plaintiff's motion to compel responses to first supplemental production request number 16 is denied.

### 8.  First Supplemental Production Request Number 18

Plaintiff's first supplemental production request number 18 sought "a copy of any and all surveillance footage, badge swipes, clock rings, visitor logs or other information

maintained by NYSOPWDD to monitor when an individual has entered or existed the Glens Falls office."  Dkt. No. 124-2 at 67.  State defendants  "object[ed] to this demand on the ground that it is temporally unbounded.  Without waiving said objection, after diligent search, defendants discovered no responsive documents."  Id. at 75.  Plaintiff's November 15, 2021, letter asserts: "We have testimony that some of this information was required at OPWDD's Glens Falls office.  We request that responsive documents be produced for the time period of the sexual harassment claims in 2016/2017, if available."  Dkt. No. 124-2 at 102.

The Court first notes that State defendants also did not object to the request on relevance grounds.  See Dkt. No. 124-2 at 75.  State defendants objected solely on temporal grounds and stated that they did not have responsive documents.  See id.  However, State defendants did not respond following plaintiff's temporal limitation.  State defendants also do not address this request in their response to plaintiff's motion to compel.  See Dkt. No. 126.  A party cannot be compelled to produce document is does not have; however, absent any explanation as to how they attempted to search for responsive information, or any response to plaintiff agreement to limit the relevant time frame for the request, the Court will direct State defendants to supplement their response, explaining the efforts taken to locate "any and all surveillance footage, badge swipes, clock rings, visitor logs or other information maintained by NYSOPWDD to monitor when an individual has entered or existed the Glens Falls office" from December 2016 to October 2017.  Dkt. No. 124-2 at 67; see Dkt. No. 124-2 at 102.

**9. Second Supplemental Document Production Request No. 8**

Plaintiff's second supplemental document production request number 8 sought "any and all documents related to the termination or investigation of Marcia Marcotte, including but not limited to any emails between Human Resources, Kristi Beitter, James Doddemeade, and/or Ms. Bennett." Dkt. No. 124-2 at 87. In her memorandum of law, plaintiff seeks only "[d]ocuments related to the termination or investigation of Marcia Marcotte, [p]laintiff's sister, a[s] part of her retaliation claim." Dkt. No. 124-1 at 7; see Dkt. No. 124-2 at 87; Sec. Am. Compl. at 25-26, ¶¶ 153-159. Plaintiff argues that her complaint "contains clear allegations of retaliation regarding Marcotte's disciplinary action" and that she seeks documents that "could show the connection, i.e., who reported Marcotte or who was involved in/had influence over deciding discipline." Dkt. No. 138 at 5-6. Attorney Barcroft's declaration states, in pertinent part:

> On or about November 1, 2021, the undersigned sent State[d]efendants' former counsel, Christopher Liberati-Conant, an email noting deficiencies in the State [d]efendants' most recent October 28, 2021[,] document production, responsive to the Second Supplemental Requests, including documents related to the termination or investigation of Marcia Marcotte, [p]laintiff's sister, a copy of the interrogation of Ms. Marcotte, documents produced in response to a Corrective Action Plan, as well as reports or notes related to an Incident Review Committee as referenced in [d]efendant State's production. A true and correct copy of this email is attached hereto as **Exhibit 6**. These documents were unknown until this date as they were referenced in the production provided to the Second Supplemental production.

Dkt. No. 124-2 at 3, ¶ 13.

In the e-mail to State defendants' counsel, plaintiff's counsel stated that "Ms. Marcotte was interrogated" and plaintiff does not "have a copy of the interrogation." Dkt. No. 124-2 at 92. Further, plaintiff indicated that there were "references to a Corrective Action Plan which is missing as well as reports or notes related to an Incident Review

41

Committee as referenced in [State defendants'] recent production Bates no. 0006827[.]"
Id.

In opposition, State defendants contend that they are unable to locate "documents related to the dismissal of Marcia Marcotte[.]"  Dkt. No. 126 at 9.  In any event, State defendants argue that "the documents requested by [p]laintiff concerning the dismissal of Marcia Marcotte would not be likely to contain any information tending to prove the claims alleged in the Second Amended Complaint since they involve a disciplinary action against a non-party to this action not involving any other parties to this action."  Id. at 10.

Plaintiff alleges that her sister's termination from OPWDD six weeks after plaintiff filed her initial complaint in this action was retaliatory.  See Sec. Am. Compl. at 26, ¶ 159.  State defendants previously and unsuccessfully sought to dismiss plaintiff's retaliation claims relative to her sister pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  See Dkt. No. Dkt. No. 58 at 22-26.  In a March 16, 2021, Memorandum-Decision and Order, Judge Kahn rejected State defendants' argument "that plaintiff lacks standing to assert a retaliation claim predicated on employment actions directed at her relatives."  Dkt. No. 80 at 28-30 (relying on Thompson v. North America Stainless, LP, 562 U.S. 170 (2011), in which "the Supreme Court held that the plaintiff had standing to assert a retaliation claim based on allegations that his employer fired him after his fiancée, who worked for the same employer, filed a discrimination charges with the Equal Employment Opportunity Commission.")).  The Supreme Court of the United States has stated that it "expect[s] that firing a close family member will almost always meet the" anti-retaliation standards set forth in Burlington N. & S.F.R. Co. v. White, 548 U.S. 53

(2006).  <u>Thompson</u>, 562 at 173-75.  As such, information related to Ms. Marcotte's termination from OPWDD is relevant to plaintiff's retaliation claim.

As to State defendants' assertion that the requested information concerning Ms. Marcotte may not exist, plaintiff's counsel e-mailed Stated defendants' counsel asserting that a "Corrective Action Plan" and "Incident Review Committee" were referenced in State defendants' document production, "Bates no. 0006827[.]"  Dkt. No. 124-2 at 92.  In plaintiff's reply, she submitted under seal numerous documents related to internal investigations; however, the document that plaintiff's counsel identified in the e-mail—"Bates no. 006827"—has not been provided to the Court.  <u>Id.</u> at 92; <u>see</u> Dkt. no. 138-2 (filed under seal).  Further, plaintiff's assertion that "a copy of the interrogation of Ms. Marcotte" exists appears based on counsel's knowledge that Ms. Marcotte was interrogated.  <u>Id.</u> at 3, ¶ 13.  Plaintiff does not otherwise explain the basis of her knowledge that a copy of the interrogation exists.  <u>See id.</u>

"[T]he Court cannot compel disclosure of [documents] that do[] not exist."  <u>Johnson v. Miller</u>, No. 9:20-CV-622 (LEK/ATB), 2021 WL 4803647, at *2 (N.D.N.Y. Sept. 2, 2021).  State Defendants assert that they "have made a diligent search of their files and have not been able to locate" "documents related to the dismissal of Marcia Marcotte[.]"  Dkt. No. 126 at 10.  Plaintiff has sufficiently identified the information related to Ms. Marcotte that she seeks: the interrogation and information related to an Incident Review Committee and Corrective Action plan, which were purportedly identified in State Defendants' previous document production.  <u>See</u> Dkt. No. 124-2 at 92.  State defendants have not explained what searches they conducted to attempt to locate responsive documents.  <u>See</u> Dkt. No. 126 at 10.  Although the appropriate

43

remedy, when a party asserts that it does not possess documents, "is not to pound the table and ask the Court to order additional production," a supplemental response is warranted.  Sidman v. Concord Arena Parking, LLC, No. 15-CV-7426 (CBA/SJB), 2021 WL 1940255, at *3 (E.D.N.Y. May 11, 2021); see OnActuate Consulting Inc. v. Aeon Nexus Corp., No. 20-CV-508 (LEK/CFH), 2022 WL 866418, at *8-9 (N.D.N.Y. Mar. 23, 2022) (collecting cases).  As these documents were referenced in State defendants' previous productions, plaintiff avers that "Marcotte's disciplinary action and these documents could show the connection" for establishing retaliation, and State defendants are being required to supplement most, if not all of their responses to the production requests present challenges, the Court will order the same here.  Dkt. No. 138 at 5. State defendants are, therefore, directed to supplement their responses, under oath, explaining what efforts were taken to locate the documents concerning Ms. Marcotte, described as "Corrective Action Plan," "Incident Review Committee," and any supposed "copy of the interrogation of Ms. Marcotte."  Dkt. No. 124-2 at 3, 9.  If, in supplementing their response, State defendants locate the aforementioned documents, they should be produced to plaintiff.

## B.  Additional Requests

### 1. Attachment to Investigations[7]

In her first supplemental document production requests, plaintiff sought copies "of any and all recordings, transcripts or statements obtained or received by

---

[7] This request appears to relate to first supplemental production request number 7, which sought copies "of any and all recordings, transcripts or statements obtained or received by NYSOPWDD as a result of interviews conducted by" Ms. Sheehan.  Dkt. No. 124-2 at 65, ¶ 7.  However, neither plaintiff nor Attorney Barcroft specifically raise an issue with first supplemental production request number 7.  See Dkt. No. 124-2 at 13.

NYSOPWDD as a result of interviews conducted by" Ms. Sheehan.  Dkt. No. 124-2 at 65, ¶ 7.  Plaintiff presently seeks "[a]ttachments to various New York State investigative reports."  Dkt. No. 124-1 at 8.  Plaintiff's counsel avers that State defendants did not produce the documents that Ms. Sheehan relied on in conducting various investigations, but which were referenced in her reports.  See Dkt. No. 124-2 at 5-6, ¶¶ 22-23.  Specifically, plaintiff's counsel contends that the following was relied on but not produced: "Staffing list for OPWDD Glens Falls Office"; "Timesheets for confirming [plaintiff] and [Mr. Dominie] did work together on all dates"; "Personnel History File for Shannon Earle"; "Personnel History File [for] Dr. Paul Byron"; and "NYS Inspector General Investigation No. 3902-031-2017 of Jeff Monsour."  Id. at 6, ¶ 23.  Further, plaintiff seeks "a text message between Leyna Marcotte and Elysee Lavin[;] inappropriate text messages between Mr. Dominie and Mr. Stander referenced in Mr. Stander's interrogation; and outlines of Ms. Sheehan's interviews/interrogations similar to the one produced and used for [p]laintiff's interview."  Dkt. No. 124-1 at 8; Dkt. No. 124-2 at 10, ¶ 43.a.  Plaintiff's counsel contends that "some of the other documents relied upon by Ms. Sheehan were produced throughout State [d]efendants' various productions, [but] they were not produced in conjunction with the reports themselves.  Rather, given the fragmented production, it remains unclear whether the versions produced [] were the true and complete versions . . . ."  Dkt. No. 124-2 at 6, ¶ 24.

Plaintiff submits portions of Ms. Sheehan's deposition testimony.  See Dkt. No. 124-2 at 158-68.  In her testimony, Ms. Sheehan confirmed that her investigative report stated that she looked at "[t]ime sheets [] confirming complainant and respondent did work together on all dates."  Id. at 159.  Ms. Sheehan did not recall whether those times

sheets were exhibited to her "draft investigation report."  Id.  Ms. Sheehan also

confirmed that her report referenced a text message between Leyna Marcotte and

Elyssa and Lavin but that she does not recall if she had a copy of the message.  See id.

at 161-62.  As to text messages and pictures between defendants Stander and Dominie

on defendant Dominie's computer, Ms. Sheehan testified that she never received the

text messages or evidence from defendant Dominie's computer.  See id. at 165-66.

Plaintiff's counsel showed Ms. Sheehan a document that "[l]ook[ed] like it might be a

draft document."  Id. at 166.  Ms. Sheehan explained that she would sometimes

electronically write out questions prior to conducting an interview but that she does not

remember if she did so for her investigations related to plaintiff.  See id. at 166-67.

    During this deposition, State defendants' counsel stated that he gave plaintiff

"everything that [he] understand[s] are exhibits to this report."  Dkt. No. 124-2 at 160.

Plaintiff's counsel asked that State defendants' counsel "double check."  Id. at 160-61.

Ms. Sheehan testified that documents concerning the relevant investigative reports

"would have been maintained in [a] locked filed cabinet."  Id. at 163.  State defendants'

counsel stated that "[t]his cabinet has been searched and [plaintiff has] received all the

documents that were in the cabinet . . ." but stated that he would "ask OPWDD to take

another look, make sure there's nothing else hanging around in the back of a filing

cabinet."  Id. at 164.  State defendants' counsel told plaintiff's counsel that he would

"check for those outlines."  Id. at 168.

    State defendants argue that the attachments do not exist, and that even if they

do, they are irrelevant.  See Dkt. No. 126 at 9.  They assert that they "have made a

diligent search of their files and have not been able to locate those documents."  Id. at

10.  Specifically, State defendants contend that "text messages alleged to have been sent between Leyna Marcotte and Elyssa Lavin are not likely to have been in the possession of the State [d]efendants."  Id.  They further argue that the timesheets requested would confirm that plaintiff worked with defendant Dominie on specific dates, but that this matter is not in dispute as reflected by "ample deposition testimony that they did in fact work together."  Id. at 11.  State defendants assert that "the alleged text messages between Leyna Marcotte and Elysee Lavin or those between [defendant] Dominie and [defendant] Stander" are irrelevant.  See id.  State defendants do not specifically address the remaining attachments.  See id. at 9-11.

As to the requested timesheets, staffing lists, and "NYS Inspector General Investigation No. 3902-031-2017 of Jeff Monsour[,]" production is appropriate.  State defendants contend that "[t]here is no dispute that [defendant Dominie and plaintiff] worked together and there is ample deposition testimony that they did in fact work together."  Dkt. No. 126 at 11.  Noticeably, however, State defendants did not cite to or provide excerpts of any such testimony.  See generally Dkt. No. 126.  In reply, plaintiff states that she requested the timesheets "as they were included as attachments to, and relied upon in, [Ms. Sheehan's] investigative reports."  Dkt. No. 138 at 12.

In plaintiff's motion, she references "a text message between Leyna Marcotte and Elysse Lavin, inappropriate text messages between Mr. Dominie and Mr. Stander referenced in Mr. Stander's interrogation[,]" and text messages between Ms. Barlow and Ms. Beitter.  Dkt. No. 124-1 at 8-9.  Margaret Sheehan, Director of Affirmative Action/EEO & ADA Coordinator testified in her deposition that in conducting internal investigations into plaintiff's complaints she reviewed "a copy of a text, a copy of a text

47

between [Leyna Marcotte] and Elysse Levin, saying [defendant Dominie] was returning to the office and neither was happy about it." Dkt. No. 124-2 at 162. Ms. Sheehan stated that if she was shown the text message she "would have maintained it." Id.

State defendants contend that "text messages alleged to have been sent between Leyna Marcotte and Elyssa Lavin are not likely to have been in the possession of the State defendants[,]" and there is no "relevance to the alleged text messages between Leyna Marcotte and Elyssa Lavin or those between Mr. Dominie and Mr. Stander." Dkt. No. 126 at 10-11.

On review of the investigative reports that plaintiff submitted under seal with her reply, the Court notes that the requested documents—timesheets, staffing lists, and NYS Inspector General Investigation No. 3902-031-2017 of Jeff Monsour, and the personnel files—were referenced or relied on in the reports. See Dkt. No. 138-2 at 22, 75, 7493, 106.

In response to plaintiff's complaint, one of State defendants' affirmative defenses is as follows: "Plaintiff's claims are barred to the extent that the [d]efendants took reasonable care to prevent and/or correct any alleged discriminatory and/or retaliatory conduct, and [p]laintiff unreasonably failed to take advantage of preventative or corrective opportunities provided by the [d]efendant to avoid harm." Answer at 35, ¶ 260. "This affirmative defense is commonly referred to as the *Faragher/Ellerth* defense." Williams v. Fire Sprinkler Assocs. Inc., No. 15-CV-3147 (ADS/AKT), 2017 WL 1155771, at *5 (E.D.N.Y. Mar. 27, 2017); see Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998); Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998). "Whether an employer's response to an employee's allegation of [discrimination] is reasonable

must be assessed from the totality of the circumstances. . . ." Brownell v. Roadway

Package Sys., Inc., 185 F.R.D. 19, 25 (N.D.N.Y. 1999). "[E]quity requires that [the

p]laintiff be permitted to explore the parameters of the investigation in order to rebut this

affirmative defense." Id.; see also Angelone v. Xerox Corp., No. 09-CV-6019, 2011 WL

4473534, at *3 (W.D.N.Y. Sept. 26, 2011) (ordering "any document or communication

considered, prepared, reviewed, or relied on" as part of an internal investigation be

produced where the defendant "claim[ed] that it used reasonable care to prevent and

promptly correct any alleged harassment or discrimination and that [the] plaintiff failed to

take advantage of 'preventative and corrective opportunities provided by'" the

defendant).

The caselaw discussing the Faragher/Ellerth defense does so in the context of

privileged communications and waiver. See, e.g., Fahrenkrug v. Verizon Servs. Corp.,

No. 5:11-CV-1014 (GLS/ATB), 2013 WL 12180868, at *3 (N.D.N.Y. Nov. 21, 2013)

(explaining that "waiver in inapplicable" because the defendants "have not placed their

internal investigation of [the plaintiff's] claim of discrimination at issue. Indeed, [the]

defendants have *not* claimed as affirmative defenses that they took appropriate

remedial action after [the plaintiff's] claim of discrimination or that their investigation was

adequate."). However, the relevance standard is broader than an assessment of

whether the attorney-client privilege has been waived based on a party placing certain

subject matter "at issue." Nomura Asset Capital Corp. v. Cadwalader Wickersham &

Taft, LLP, 880 N.Y.S.2d 617, 619 (N.Y. App. Div. 1st Dep't 2009) (citation omitted)

("'[A]t issue' waiver of privilege occurs where a party affirmatively places the subject

matter of its own privileged communication at issue in litigation, so that invasion of the

privilege is required to determine the validity of a claim or defense of the party asserting the privilege, and application of the privilege would deprive the adversary of vital information.").  The relevance standards asks only whether the sought-after information "bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  Oppenheimer Fund, 437 U.S. at 351.

As State defendants have asserted a Faragher/ Ellerth affirmative defense by alleging the adequacy of their response to plaintiff's complaints and plaintiff's failure to take advantage of corrective measures, their internal investigations are relevant and discoverable, as is the information relied on in them.  See Angelone v. Xerox Corp., No. 09-CV-6019, 2011 WL 4473534, at *2 (W.D.N.Y. Sept. 26, 2011) ("By pleading the so-called Faragher–Ellerth defense in its Answer, [the defendant] has affirmatively and deliberately put its internal investigation of [the plaintiff's] workplace complaints at issue in this litigation.").  This extends to outlines or drafts of Ms. Sheehan's investigations that she prepared prior to competing the investigation.  See Babbitt v. Koeppel Nissan, Inc., No. 18-CV-5242 (NGG/CLP), 2019 WL 3296984, at *3 (E.D.N.Y. July 23, 2019) (citation omitted) ("[I]n order for plaintiff and the factfinder to examine the reasonableness of the investigation, disclosure of the underlying investigation materials is necessary.").  Accordingly, plaintiff's motion to compel is granted insofar as she seeks staffing lists, timesheets, NYS Inspector General Investigation, and outlines.  See Dkt. No. 124-1 at 8.

To the extent plaintiff seeks "Personnel History File for Shannon Earle" and "Personnel History File [for] Dr. Paul Byron[,]," "discovery of a personnel file is appropriate where the individual is alleged to have engaged in the discrimination or

retaliation at issue, or played a significant role the in the decision or incident that gives rise to the lawsuit." Dzanis v. JPMorgan Chase & Co., No. 10-CV-3384, 2011 WL 5979650, at *4 (S.D.N.Y. Nov. 30, 2011).  Generally, however, an employer has an "interest in maintaining the confidentiality of employee personnel files."  Duck v. Port Jefferson Sch. Dist., No. 07-CV-2224 (ADS/WDW), 2008 WL 2079916, at *4 (E.D.N.Y. May 14, 2008) (citations omitted).

Dr. Byron and Ms. Earle are not defendants in this action.  See generally Sec. Am. Compl.  Plaintiff's complaint asserts that, on or around October 2017, she was "mistakenly included on an internal e-mail between Dr. Paul Byron" and other "high level employees" regarding defendant Barlow's alleged "inaction."  Id. at 14, ¶ 87.  The complaint also alleges that "[o]n or about May of 2018 through June 2018, Dr. Byron stated that there would be a position opening in the Adirondack clinic, but they would not be posting the position because they 'would get someone they don't want,' or words to this effect."  Id. at 16, ¶ 100.  Plaintiff alleges that "Dr. Byron stated, 'I hope the next person that files a sexual harassment claim isn't having a relationship with them,' or words to that effect."  Id. at 16, ¶ 101.  Moreover, the complaint avers that "[o]n or about Spring of 2018, Dr. Byron stated, 'We created sexual harassment here at the state, I voted for it,' or words to this effect, in the presence of [p]laintiff[.]"  Id. at 17, ¶ 108.  The complaint contains no discernable allegations regarding Ms. Earle.  See generally id.

Given an employer's interest in maintaining the confidentiality of employee personnel files, plaintiff has not demonstrated that Ms. Earle's personnel file is relevant and proportional to the needs of the case; therefore, production is not warranted.  See Duck, 2008 WL 2079916, at *4.  However, as Ms. Sheehan relied on Dr. Byron's

personnel file in her internal investigation and plaintiff alleges retaliation claims that include actions taken by Dr. Byron, plaintiff is entitled to relevant portions of Dr. Byron's personnel file.  See Dzanis, 2011 WL 5979650, at *4.  Thus, plaintiff's motion to compel is granted insofar as she seeks Dr. Byron's personnel file but denied as to Ms. Earle's personnel file.

In sum, plaintiff's motion to compel production of "[a]ttachments to various investigative reports" is granted, except for Ms. Earle's personnel file.  Accordingly, State defendants are ordered to produce the responsive documents to plaintiff.  However, as to Dr. Byron's personnel file, given its generally confidential nature, State defendants are ordered to produce the file to the Court within ten (10) days of the filing of this Order for the Court to conduct an in camera review.  Following review, the Court will issue an Order reflecting what portions of the file must be produced to plaintiff.  Insofar as responsive documents do not exist, State defendants are ordered to supplement their responses explaining under oath the efforts taken to search for the requested documents.[8]

## 2. Spreadsheet of Custodians and Export Reports

Based on information learned during Ms. Fisher's deposition testimony, plaintiff seeks, through her reply, "a spreadsheet containing a list of [email] custodians' names, the date the hold was implemented, and whether the custodian had an Office 365 account or an archived account [] and export reports for all searched conducted related to [p]laintiff's matter."  Dkt. No. 138 at 9.

---

[8] The Court notes that in State defendants' response to plaintiff's motion to compel, their table of contents includes a heading, "The Attorney-Client Privilege Applies to the Subject Communications."  Dkt. No. 126 at 2.  However, State defendants did not include an argument related to the attorney-client privilege in their memorandum.  See generally id.

Ms. Fisher testified that she was provided "a list of custodians and a list of terms that [the attorney for OPWDD and the attorney general's office] wanted [her] to search with time frames." Dkt. No. 138-1 at 19. Ms. Fisher explained that she does "an initial search, [she] provide[s] them with the search statistics that come up, and they then tell [her] if they want [her] to narrow the search at or just export as is. When [she] export[s] the search it exports into a PST document or a PST file, and then [she] provide[s] the PST file to the attorney." Id. Ms. Fisher testified that she "searched Liam Stander, Chad Dominie, Mary Tromblee, Alexis Barlow, and there may have been a couple others but [she] do[es not] recall the names." Id. at 20. Ms. Fisher explained that in December of 2017, there were four e-mail accounts on hold—defendants Stander and Dominie, plaintiff, and "either Alexis Barlow or Christie Bitter[.]" Id. at 24. Ms. Fisher stated that she "would have to go back to the tracking spreadsheet that [she] had used to tell [] who exactly was put on hold and what date[.]" Id. at 25. Ms. Fisher then confirmed that she has a spreadsheet that is "a list of the employee names, the date their account was put on hold, and whether or not it was all on [a] 365 account or an archive account . . . ." Id. at 25. Ms. Fisher specified that "in October or 2020 [she] was asked to provide 21 custodial email accounts for the time period of January 1st, 2017[,] through December 31st, 2018." Id. at 26. She testified that she has "a spreadsheet that shows the 21 custodians." Id. Ms. Fisher further explained that she does not review the content of messages that come up in her searched "except like [she] get[s] a little bit of a preview to see if what comes up might be relevant." Id. at 30. She stated that "there

would have been an export summary that would show every account that had a hit in it." Id.[9]  Ms. Fisher testified that she has "all of the export reports available."  Id. at 33.

In an e-mail change provided by plaintiff, State defendants' counsel Attorney Rock to plaintiff's counsel Attorney Barcroft stated "I will be happy to produce most, most likely all, of what you asked for during today's deposition of Ms. Fisher.  I think the major items that you requested that have not been previously requested are the spreadsheets and export summaries that the witness referred to during her testimony." Dkt. No. 138-1 at 81.  Attorney Rock asked Attorney Barcroft to "send over a list of items requested during the deposition" so that he could "arrange to get them, review and, if need be, redact them and get them right over to" Attorney Barcroft."  Id.  There does not appear to be a follow-up e-mail explaining that the information was provided, unobtainable, still being searched for, etc.

In her reply, plaintiff explains that "*over six weeks* have elapsed since Fisher's deposition and State [d]efendants have yet to turn over anything [p]laintiff requested on the record, even the export reports and spreadsheets Fisher is confident she has and are easily obtainable, despite representations by counsel that most, if not all, would be produced."  Dkt. No. 138 at 9.

As the information concerning the spreadsheets and export reports was not learned until after plaintiff submitted her motion to compel and was requested only in her reply, State defendants did not respond to the request in their response to the motion.  See Dkt. Nos. 126, 138.  The Court also notes that State defendants did not submit or request to submit a sur-reply in response to plaintiff's reply.

---

[9] The two pages following this testimony are missing from the excerpts provided by plaintiff.  See Dkt. No. 138-1 at 30-31.

In her reply, plaintiff asserts that she requested this information from State defendants' counsel "[d]ue to the delay in implementing the holds and the potential loss of data[.]" Dkt. N. 138 at 9.  As discussed, the Lync messages and e-mails that Ms. Fisher's searches found are relevant.  See supra at 24-27.  Therefore, to the extent that information has not been produced and/or no longer exists, Ms. Fisher's reports and spreadsheet may be consequential to any potential failure to preserve information. Accordingly, the Court will order State defendants to produce Ms. Fisher's spreadsheet and export logs.

### 3. Updated Privilege Log

Plaintiff also seeks an order compelling State defendants to "produce an updated privilege log to reflect [] newly discovered, unproduced, responsive documents . . . ." Dkt. No. 124-1 at 17.  Plaintiff argues that an updated privilege log is necessary because "State [d]efendants acknowledged the existence of responsive documents which fall under the attorney-client privilege[.]"  Id.  State defendants did not respond to plaintiff's request for an updated privilege log.  See generally Dkt. No. 126.

Plaintiff submitted an e-mail wherein on December 29, 2021, Attorney Rock informed Attorney Barcroft that State defendants "had no documents which are responsive to your outstanding demands that have not already been produced other than a relatively small number of documents which are subject to attorney client privilege." Dkt. No. 124-2 at 155.  Attorney Rock stated,

> I know that I  told you that I had been provided with a substantial amount
> of documents that are responsive and that is true.  What I did not know at
> the time, and which I was not able to confirm until this morning, is that
> those documents have already been produced by the AAGs who
> proceeded me in the handling of this file.  I have now confirmed that all

> relevant emails, text messages and other similar documents have already
> been produced.

Id.  In Attorney Rock's declaration, submitted in conjunction with State defendants'

response to the motion to compel, he stated that "[a]s soon as [he] was able to confirm

that these documents had already been produced in discovery, [he] immediately

advised [p]laintiff's counsel that we had been unable to locate any non-privileged

documents responsive to [p]laintiffs."  Dkt. No. 127 at 2, ¶ 10.

Federal Rule of Civil Procedure 26(b)(5) requires that a party withholding

documents based on a specific privilege "expressly make the claim[] and [] describe the

nature of the documents, communications, or tangible things not produced or disclosed-

-and do so in a manner that, without revealing information itself privileged or protected,

will enable other parties to assess the claim."  FED. R. CIV. P. 26(b)(5)(A).  State

defendants have not formally asserted the privilege in their response to plaintiff's motion

to compel, provided the documents in whole or redacted form for the Court to review,

provided a privilege log, or included any information regarding the allegedly privileged

documents in their attorney's affidavit.  See generally Dkt. Nos. 126-27.  Accordingly,

there is no information for the Court to conduct a privilege analysis.  See Loguidice v.

McTiernan, No. 1:14-CV-1323 (TJM/CFH), 2016 WL 4487779, at *18 (N.D.N.Y. Aug.

25, 2016) ("As the Court was not provided with the privilege log, the Court is unable to

assess whether the redaction was proper.") (citing In re Symbol Techs., Inc. Sec. Litig.,

No. CV 05-3923 (DRH/AKT), 2015 WL 5719719, at *7 (E.D.N.Y. Sept. 29, 2015) ("While

'[c]ourts have a degree of discretion in assessing whether a claim of privilege has been

adequately supported,' a party's privilege log, supporting affidavits and an in camera

review of the documents themselves are generally required to permit a proper inquiry)).

As such, State defendants, "as the party asserting the existence of [the] privilege," In re Symbol Techs., 2015 WL 5719719, at *8, are required to serve an updated privilege log setting for the specific documents they deem privileged as set forth in Fed. R. Civ. P. 26.  Although State defendants have previously produced a privilege log, see Dkt. No. 124-2 at 37-38, based on their attorney's representation to plaintiff's counsel in an e-mail it appears that new responsive documents were located that they deem to be privileged.  See id. at 155.  To the extent the documents have already been produced or are listed in their original privilege log, State defendants are directed to submit an affidavit explaining such along with their supplemental responses to production requests as outlined herein.

### C.  Request for Rule 30(b)(6) Witnesses

Plaintiff contends that State defendants "failed to identify or produce a witness with knowledge for a 30(b)(6) deposition related to discovery searches and information until December 28, 2021."  Dkt. No. 124-1 at 9.  "Plaintiff requests that State [d]efendants be compelled to work promptly with [p]laintiff and fellow counsel to schedule the deposition, as well as be compelled to produce any responsive documents uncovered during the deposition no later than one week following the deposition."  Id. at 18.  As such, State defendants ask that plaintiff's motion to compel on this ground "be denied as moot since State [d]efendants have identified Jodi Fisher as that additional witnesses" and they scheduled her deposition.  Dkt. No. 126 at 11.

Plaintiff's "Notice of Rule 30(b)(6) Deposition of Defendant NYSOPWDD" contains thirty-nine topics and additional subtopics concerning, inter alia, human resource information; personnel information; policies and procedures for reporting

internal complaints, investigating complaints, hiring, firing, training, and performance reviews; information about the individual defendants' positions with State defendants; formal or informal complaints of discrimination; criminal charges against defendant Dominie; statements made by defendant Dominie; information on Amanda Tromblee, Aubrey Shrestha, and Marcia Marcotte; internal actions taken to respond to plaintiff's internal complaints; payroll information; record and retention policies; "facts upon which [d]efendant bases its affirmative defenses"; collection and production of documents in anticipation of litigation; legal hold process for documents; NYOSPWDD database or system for stored information; electronically stored information; testing and refining search terms; collection process; exporting; reviewing electronically stored information; custodians of documents produced; nature of privileged documents; investigations reports; written or records statements "in connection with the subject matter of this litigation"; and the process for approving timecards. Dkt. No. 124-2 at 124-28. Plaintiff sent this Notice to counsel for NYOPWDD and the State of New York. See id. at 121, 131.

State defendants explained that they have produced three witnesses "pursuant to [p]laintiff's 30(b)(6) notice." Dkt. No. 126 at 11. "The State [d]efendants first produced Heidi Lynn Wager who testified . . . on September 20, 2021. A second 30(b)(6) witness was produced on November 12, 20[2]1 but when it became apparent that the witness lacked the requisite knowledge of what had occurred in this case, the deposition was concluded . . . ." Id. State defendants then produced Ms. Fisher for her deposition. See id.

58

Ms. Fisher has since been deposed.  See Dkt. No. 138-1 at 15-55.  Following Ms. Fisher's deposition, plaintiff submitted her reply wherein she argues that Ms. Fisher lacked "knowledge regarding the noticed topics,[] and State [d]efendants' fail[ed] to communicate this prior to Fisher's deposition and identify and produce additional 30(b)(6) witness(es) as necessary."  Dkt. No. 138 at 8.  Plaintiff asserts that Ms. "Fisher was only involved in, and thus only had knowledge of, the Agency's search of emails and instant messages[,]" and was, therefore, "unable to speak to several topics identified in the Notice."  Id.  During her deposition, Ms. Fisher identified Mr. Scalise as someone who could speak to the cell phones and internet searches referenced in plaintiff's document requests.  See Dkt. No. 138-1 at ().  Plaintiff asserts that "State [d]efendants have yet to provide a final affidavit from Scalise or provide availability for his deposition, if one is deemed necessary, despite requests for this information."  Id.  Finally, plaintiff asserts that "State [d]efendants have yet to produce a witness to testify about the entire scope of topics covered in the Notice . . . ."  Id.

"When an organization, such as a corporation, partnership, or association, is issued a Rule 30(b)(6) deposition notice, the organization will designate an individual or individuals to 'testify on its behalf . . . about information known or reasonably available to the organization.'"  Fashion Exch. LLC v. Hybrid Promotions, LLC, No. 14-CV-1254 (SHS/OTW), 2019 WL 1533212, at *1 (S.D.N.Y. Apr. 9, 2019) (quoting Fed. R. Civ. P. 30(b)(6)).  "As a result, the organization has a duty to prepare its designated witness to answer questions to the best of the organization's knowledge."  Id. (citation omitted).  "It is well settled, therefore, that 'Rule 30(b)(6) deponents need not have personal knowledge concerning the matters set out in the deposition notice'. . . ."  Bush v.

Element Fin. Corp., No. 16-CV-1007 (RJS), 2016 WL 8814347, at *2 (S.D.N.Y. Dec. 13, 2016) (quoting Spanski Enterprises, Inc. v. Telewizja Polska, S.A., No. 07-CV-930 (GEL), 2009 WL 3270794, at *3 (S.D.N.Y. Oct. 13, 2009)).

Plaintiff takes issue with Ms. Fisher's alleged lack of knowledge of all of the Rule 30(b)(6) notice topics.  See Dkt. No. 138 at 8.  Specifically, plaintiff raises an issue regarding state issued cell phones and internet searches, but acknowledges that State defendants have provided an affidavit from Mr. Scalise and agreed to schedule his deposition if an additional affidavit is insufficient.  See id.  To the extent Mr. Scalise's affidavit was insufficient and discussed only some of the requested information, the Court has ordered State defendants to produce an updated affidavit. See supra at 34. As plaintiff has not otherwise identified information that requires an additional 30(b)(6) witness, her motion to compel is denied on this ground.  See Fashion Exch., 2019 WL 1533212, at *2 ("[I]f [the p]laintiff believes that [the] designated 30(b)(6) deponents were unprepared to testify on behalf of the organization, the appropriate remedy would be to move for sanctions under Federal Rule of Civil Procedure 37. . . .  [The p]laintiff's dissatisfaction with [the] selection of its Rule 30(b)(6) witnesses is an insufficient ground to order additional Rule 30(b)(6) depositions.").

### D.  Sanctions

"Plaintiff proffers that State [d]efendants' failure to produce all responsive documents in accordance with this Court's order, and failure to produce documents that exist and were relied upon by NYS but not produced, warrants that they should not only compensate [p]laintiff for fees/costs in pursuing this motion[]" but also receive adverse inferences and "any other relief deemed appropriate by the Court."  Dkt. No. 124-1 at

19.  Plaintiff also grounds her request for sanctions largely in State defendants delay in identifying Ms. Fisher as a Rule 30(b)(6) witness.  See Dkt. No. 138 at 13.  Plaintiff states that "[d]espite working directly with Fisher on searching Agency emails and Lync messages as early as December 2017 and Fisher being the *only* individual charged with such a search, State Defendants failed to timely identify or produce her until over one year after the initial Notice served in December 2020."  Id.

State defendants argue that sanctions are inappropriate because "the facts demonstrate that State [d]efendants have acted in good faith and have consistently attempted to provide [p]laintiff with requested discovery."  Dkt. No. 126 at 12.  State defendants asserts that "counsel has been in regular contact with [p]laintiff's counsel in an effort to resolve the outstanding discovery dispute without Court intervention."  Id.  State defendants state that they complied with plaintiff's requests by producing a 30(b)(6) witness and because they did not have any further documents to produce.  See id. at 13.

Under Fed. R. Civ. P. 37(b)(2), the Court has discretion to issue sanctions against a party that "fails to obey an order to provide or permit discovery . . . ."  FED. R. CIV. P. 37(b)(2).  "[T]he Second Circuit advised as follows concerning the imposition of sanctions:"

> [S]everal factors may be useful in evaluating a district court's exercise of discretion to impose sanctions pursuant to this rule, including (1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of noncompliance.

Williams v. LaRock, No. 9:13-CV-0582 (GTS/DEP), 2017 WL 4861492, at *2 (N.D.N.Y. Sept. 27, 2017), report and recommendation adopted, 2017 WL 4857582 (N.D.N.Y. Oct.

25, 2017) (quoting S. New England Tel. Co. v. Global NAPs Inc., 624 F.3d 123, 144 (2d Cir. 2010)).

Here, State defendants have generally asserted that they do not possess any documents that are responsive to plaintiff's requests. See Dkt. Nos. 126, 127. State defendants' representation has also changed multiple times throughout the discovery phase of this litigation. See Dkt. No. 127 at 2, ¶ 6. Based on the e-mail chains submitted by plaintiff, it appears that State defendants counsel has been communicative throughout their efforts to resolve discovery disputes. See Dkt. No. 124-2 at 92-93, 109-19, 151-56; Dkt. No. 138-1 at 57-66, 76-77, 80-81. It is unclear to the Court why an updated privilege log has not been produced despite State defendants' asserting the attorney-client privilege and why an updated affidavit from Mr. Scalise has not been produced despite State defendants' representation that they would do so. See Dkt. No. 124-2 at 155-56; Dkt. No. 138-1 at 76. Absent those two documents, to the extent plaintiff asserts that State defendants failed to comply with a Court order, the Court cannot conclude that State defendants have been "noncompliant" where the Court is not certain that responsive documents exist—and State defendants' counsel has affirmed under the penalty of perjury that such documents do not exist. See Dkt. No. 127 at 2, ¶ 10 (State defendants' counsel affidavit asserting that no further responsive documents exist). However, as the Court has ordered State defendants to supplement its responses and outline its efforts to search for responsive documents—particularly those identified as existing in various witness testimonies—plaintiff's request for sanctions on this ground is denied without prejudice with leave to renew should she be able to show

prejudice by documents or information that is belatedly produced as a result of this Memorandum-Decision and Order.

To the extent plaintiff references Fed. R. Civ. P. 37(a) discussing the imposition of "expense shifting sanctions[,]" the Court finds them similarly unwarranted.  Dkt. No. 124-1 at 22.  Here, the Court is granting in part and denying in part plaintiff's motion to compel largely because (1) State defendants have not fully explained the extent of searches it conducted in an attempt to be responsive and witnesses have identified evidence which would seem to be in existence, but (2) plaintiff failed to sufficiently explain the relevance for numerous production requests aside from generally asserting that the relevance standard applies to all requests.  See Dkt. No. 124-1 at 24.  As the motion is being in granted in part and denied in part, and that result is due to both parties' insufficiencies, monetary sanctions are not warranted.  See Perros v. Cnty. of Nassau, No.15-CV-5598 (GRB/AKT), 2021 WL 4480666, at *8 (E.D.N.Y. Sept. 30, 2021) ("Given the mixed results of Plaintiff's motion to compel, the Court finds it appropriate for each side to bear its own expenses regarding the completion and filing of the instant motions.").

As to the issues concerning the Rule 30(b)(6) witnesses, "[s]anctions in connection with a Rule 30(b)(6) deposition are appropriate only where 'the inadequacies in a deponent's testimony [are] egregious and not merely lacking in desired specificity in discrete areas.'"  Heras v. Metro. Learning Inst., No. 19-CV-2694 (DG), 2022 WL 20899, at *2 (S.D.N.Y. Jan. 3, 2022) (quoting Kyoei Fire & Marine Ins. Co. Ltd. v. M/V Maritime Antalya, 248 F.R.D. 126, 152 (S.D.N.Y. 2007) (internal quotation marks and additional citations omitted).  "Moreover, a corporation's obligation to prepare a witness to address

topics included in a Rule 30(b)(6) notice of deposition is triggered where the witness lacks personal knowledge of the matters set forth in the deposition notice." Id. (citation omitted).

Plaintiff asserts that her "counsel has expended significant effort to obtain the identity of [Ms. Fisher], been required to subpoena and bear the costs of the wrong witness, and then learning after an extended period and representations to the contrary that there is a 30(b)(6) witness at NYSOPWDD." Dkt. No. 124-1 at 18.  The second Rule 30(b)(6) witness that State defendants identified was Scott Greer of New York State Information Technology Services.  See Dkt. No. 124-2 at 95.  Plaintiff was required to subpoena Mr. Greer for his deposition testimony, but quickly learned at the beginning of his deposition that he lacked knowledge responsive to plaintiff's Rule 30(b)(6) notice.  See id.  State defendants confirmed this in their response to the motion to compel by stating that "it became apparent that the witness lacked the requisite knowledge of what had occurred in this case . . . ." Dkt. No. 126 at 12.  State defendants then identified Ms. Fisher as their Rule 30(b)(6) witness.  See id.

During Ms. Fisher's deposition, she testified that she was not given the Rule 30(b)(6) Notice to review, and she did not go over any of the topics with counsel prior to her deposition.  See Dkt. No. 138-1 at 16.  Ms. Fisher also stated that she was the only person who conducted e-mail searches related to lawsuits concerning OPWDD and that she was first asked to conduct a search in December 2017.  See id. at 35, 39.  Ms. Fisher was able to testify to only Lync messages and e-mails and OPWDD's retention of e-mails.  See id. at 15-55.  Although State defendants subsequently submitted Mr. Scalise's affidavit, it only addressed State defendants' inability to search state-issued

64

cell phones.  See Dkt. No. 136.  However, plaintiff initially depose Heidi Lynn Wagner

who was OPWDD's Director of Labor Relations and thereafter sought only "the name of

an NYSOPWDD who could testify on the other IT related topics that Ms. Wagner could

not provide testimony."  Dkt. No. 124-2 at 4-5, n.1; Dkt. No. 138-2 at 106 (investigative

report filed under seal but naming Ms. Wagner's title).  To the extent Mr. Greer was then

identified by did not have sufficient information, State defendants produced Ms. Fisher

and where she lacked knowledge, State defendants provided Mr. Scalise's affidavit.

In reply, plaintiff explains in a footnote that Ms. "Fisher was not able to testify

about searches and the collection of text messages from state-issued cell phones,

certain hard copy documents, internet caches/usage by [d]efendant Dominie, the Glens

Falls Office's visitor log and surveillance footage, as well as the file related to Defendant

Dominie's arbitration or confirm that this was searched for . . . ."  Dkt. No. 138 at 8, n.3.

However, plaintiff's Rule 30(b)(6) Notice contained thirty-nine topics spanning hiring,

discrimination complaints, retaliatory actions against plaintiff's family members, storing

of electronically stored information, human resource information, employee performance

reviews, recruitment policies, new employee orientation, criminal charges against

defendant Dominie, and more.  See Dkt. No. 124-2 at 124-28.  It is highly unlikely that

any one individual had sufficient knowledge of every single topic plaintiff raised in the

notice.  Additionally, the only information plaintiff identifies as remaining unanswered

has been answered through other depositions or affidavits—Mr. Albano testified

regarding the arbitration file and Mr. Scalise provided an affidavit regarding cell phones

and internet searches.  See Dkt. No. 124-2 at 183; Dkt. No. 136.  As for the Glens Falls

visitor logs and surveillance footage, the Court has directed State defendants to

supplement their response to that request explaining the steps it took to locate responsive documents.  See supra at 38-39.  All of the topics were addressed—or will presumably be addressed following compliance with this Memorandum-Decision and Order—through various depositions, affidavits, and production requests, and plaintiff has not identified an egregious amount of information left unanswered by State defendants' Rule 30(b)(6) witnesses.  See Dkt. No. 138.

Although the Court acknowledges plaintiff's frustration in having to depose multiple people and seek updated affidavits, the Court does not see State defendants' production of witnesses and information as so egregious or deficient as to warrant sanctions at this juncture.  Accordingly, plaintiff's motion is denied on this ground.  Cf. Jenkins v. XpresSpa Grp., Inc., No. 19-CV-1774 (VEC/SLC), 2020 WL 1644012, at *5 (S.D.N.Y. Apr. 2, 2020) (collecting cases) (citing Agniel v. Central Park Boathouse LLC, No. 12-CV-7227 (NRB), 2015 WL 463971, at *3 (S.D.N.Y. Jan. 26, 2015) (declining to award sanctions for "failure to appear" where Rule 30(b)(6) witness testified sufficiently as to six of nine topics and otherwise testified at length); Fashion Exch. LLC v. Hybrid Promotions, LLC, 333 F.R.D. 302, 308 (S.D.N.Y. 2019) (declining to award sanctions where Rule 30(b)(6) witness testified for over six hours and gave substantive answers on most topics); Bank of New York v. Meridien BIAO Bank Tanzania Ltd., 171 F.R.D. 135, 152, n.10 (S.D.N.Y. 1997) (declining to award costs where Rule 30(b)(6) witness provided sufficient testimony on one of [three of] the noticed topics)).

### 1.  Adverse Inferences

Plaintiff requests that the Court impose adverse inferences relative to State defendants' failure to produce documents.  See Dkt. No. 124-1 at 18-25.  Under Fed. R.

Civ. P. 37(b)(2), where a party fails to comply with a discovery order, the court may issue sanctions, including, inter alia, "directing that the matters embraced in the order or other designated facts be taken as established for purposed of the action, as the prevailing party claims[.]" FED. R. CIV. P. 37(b)(2)(A)(i).  Further, where a party has failed to preserve electronically stored information "that should have been preserved in the anticipation or conduct of litigation," regardless of whether a discovery order has been issued, the court may, "only upon finding that the party acted with intent to deprive another party of the information's use in the litigation may []presume that the lost information was unfavorable to the party[.]" FED. R. CIV. P. 37(e)(2)(A).  In the Second Circuit, the party seeking an "adverse inference" must demonstrate:

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed "with a culpable state of mind"; and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

Residential Funding Corp. v. DeGeorge Financial Corp., 306 F.3d 99, 107 (2d Cir. 2002) (citation omitted) superseded by statute on other grounds as stated in Sawyer v. Locy, No. 9:19-CV-879 (MAD/ATB), 2021 WL 4458822, at *1 (N.D.N.Y. Sept. 29, 2021).

Plaintiff seeks the imposition of an adverse-inference sanction because "State [d]efendants unequivocally had an obligation to timely produce the []requested materials, with a Court Order dated December 27, 2021," "there was no effort to timely produce documents as there were no written responses provided to supplemental document requests, no substantive reply to [p]laintiff's good faith letter, and no response to on the record requests at depositions to produce certain documents once the

existence of the documents became known[,]" and the Court can infer that State [d]efendants had the requisite culpable state of mind in failing to produce the [] requested discovery materials."  Dkt. No. 124-1 at 23-24.

Ms. Fisher testified that litigation holds were in put in place on numerous accounts when this litigation was initiated.  See Dkt. No. 138-1 at 24-25.  Further, State defendants' counsel, Attorney Rock, affirmed under the penalty of perjury that he "advised [p]laintiff's counsel that a substantial amount of documentation had been provided to me by the State Defendants."  Dkt. No. 127 at 2, ¶ 8.  However, after reviewing all of the documentation, he "was able to confirm that these documents had already been produced in discovery, I immediately advised [p]laintiff's counsel that we had been unable to locate any non-privileged documents responsive to [p]laintiffs."  Id. at 2, ¶ 10.  Plaintiff has presented no evidence at this time that responsive documents were destroyed.  See Dkt Nos. 124-1, 138.  To be sure, plaintiff cites Raymond v. City of New York, No. 15-CV-6885 (LTS/SLC), 2020 WL 1067482, at *14 (S.D.N.Y. Mar. 5, 2020) (subsequent history omitted), to provide an example of when adverse inferences have been imposed because the party agreed to produce documents but later rescinded that offer.  See Dkt. No. 124-1 at 23-24.  In Raymond, the "[d]efendants agreed to produce the Memo Book, but then reversed course and stated that they did not have it to produce[,]" and the court found "that in failing to preserve such a fundamental record . . . [the d]efendants failed to 'conform to the standard of what a party must do to meet its obligation to participate meaningfully and fairly in the discovery phase of a judicial proceeding' that rises to the level of grossly negligent spoliation." 2020 WL 1067482, at *14 (citation omitted).  Here, Attorney Rock explained to plaintiff's

counsel that although he told her that he "had been provided with a substantial amount of documents[,]" he "did not know at the time, and which [he] was not able to confirm until [later] is that those documents ha[d] already been produced by the AAGs who proceeded [him] in the handling of this file."  Dkt. No. 124-2 at 155.  He then "confirmed that all relevant emails, text messages and other similar documents have already been produced."  Id.  This is not a sufficiently culpable state of mind warranting adverse inferences.  Cf. Candlehouse, Inc. v. Town of Vestal, N.Y., No. 3:11-CV-0093 DEP, 2013 WL 1867114, at *25 (N.D.N.Y. May 3, 2013) ("If [the] defendant did not notify the relevant [] officials of their duty to preserve evidence, at a minimum, this is sufficient to establish negligence. Notably, [the] defendant does not argue that its attorneys notified the relevant [] officials, whose e-mails were allegedly deleted, to search for information requested by [the] plaintiff.").

Witnesses' testimony to specific information that may exist is directly contradicted by Attorney Rock's affirmation that additional responsive documents do not exist.  As such, plaintiff's request for adverse inferences is premature as the Court cannot conclude that evidence was destroyed absent a clearer indication of the State defendants' efforts to search for responsive documents, update its privilege log, provide an updated affidavit from Mr. Scalise, and provide responsive documents as outlined herein.  Accordingly, plaintiff's motion is denied at this juncture.  However, it is denied with leave to renew should plaintiff believe that State defendants' responses to this Memorandum-Decision and Order reveal information indicating a destruction of, or failure to preserve, evidence and to the extent plaintiff is able to sufficiently outline the relevance of the information.  To the extent plaintiff seeks "leave to make a spoliation

motion" if the requested "document[s] were destroyed despite their existence in" Ms.

Sheehan's investigative reports, that request is granted.  Dkt. No. 124-1 at 8, ¶ 2, n.4.

## V. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's motion to compel be **GRANTED** in part and **DENIED**

in part; and it is further

**ORDERED**, that State defendants shall produce to plaintiff within thirty (30) days

of the date of this Order, documents responsive to the following requests:

(a) Request for production of documents number 22

(b) Request for production of documents number 31

(c) First supplemental request for production of documents number 9

(d) Second supplemental request for production of documents number 8

(e) Attachments to internal investigations listed in plaintiff's motion to compel

and limited to staffing lists, timesheets, and NYS Inspector General

Investigation

(f) Jodi Fisher's spreadsheets and export logs; and it is further

**ORDERED**, that State defendants shall produce to the Court within ten (10) days

of the date of this Order, Paul Bryon's personnel file for the Court to conduct an in

camera review, after which time the Court will review the file and order the production of

relevant portions therein; and it is further

**ORDERED**, that to the extent the above-listed documents do not exist, that within thirty (30) days of the date of this Order, State defendants shall supplemental, under oath, their responses explaining the steps taken to search for responsive documents; and it is further

**ORDERED**, that within thirty (30) days of the date of this Order, State defendants shall, under oath, supplement their responses to the following requests for production outing their efforts to search for responsive documents:

(a)  Request for production number 18

(b)  First supplemental request for production number 8 insofar as it seeks David Albano's 2019 arbitration file

(c)  First supplemental request for production numbers 11 and 12 as they relate to defendant Stander's state-issued cell phone and reply e-mail

(d)  First supplemental request for production number 18

(e)  First supplemental request for production number 22; and it is further

**ORDERED**, that within thirty (30) days of the date of this Order, State defendants shall produce an updated affidavit from Peter Scalise, or an individual having knowledge of the relevant information as outlined herein; and it is further

**ORDERED**, that within thirty (30) days of the date of this Order, State defendants shall produce to plaintiff an updated privilege log regarding all documents for which they are claiming any privilege; and it is further

**ORDERED**, that plaintiff's motion to compel is otherwise **DENIED**; and it is further

**ORDERED**, that plaintiff's request for sanctions is **DENIED with leave to renew**
to the extent outlined herein.

**IT IS SO ORDERED**.


Dated: July 19, 2022
      Albany, New York


Christian F. Hummel
U.S. Magistrate Judge