**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

MARY TROMBLEE,

                                    Plaintiff,                1:19-cv-00638 (BKS/CFH)

v.

THE STATE OF NEW YORK, NEW YORK STATE
OFFICE FOR PEOPLE WITH DEVELOPMENTAL
DISABILITIES; CHAD DOMINIE, Individually and in his
capacity as a Keyboard Specialist/Secretary for the Office
for People with Developmental Disabilities at the Glens
Falls Facility; LIAM STANDER, Individually and in his
capacity as a Treatment Team Leader and Supervisor for
the Office for People with Developmental Disabilities at
the Glens Falls Facility; ALEXIS BARLOW, Individually
and in her capacity as Treatment Team Leader and Office
Supervisor for the Office for People with Developmental
Disabilities at the Glens Falls Facility,

                                    Defendants.

_____

**Appearances:**

*For Plaintiff*:
Ariel E. Solomon
Solomon Law Firm, PLLC
300 Great Oaks Blvd, Suite 312
Albany, NY 12203

*For Defendants The State of New York,*
*New York State Office for People with Developmental Disabilities*:
Letitia James
Attorney General for the State of New York
Robert J. Rock
Assistant Attorney General, of Counsel
Office of the Attorney General
The Capitol
Albany, NY 12224

*For Defendant Liam Stander*:
Benjamin W. Hill
Capezza, Hill LLP
30 South Pearl Street, Suite P-110
Albany, NY 12207

*For Defendant Alexis Barlow*:
Ryan T. Donovan
Conway, Donovan & Manley PLLC
50 State Street – 2nd Floor
Albany, NY 12207

**Hon. Brenda K. Sannes, Chief United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

**I.     INTRODUCTION**

Plaintiff Mary Tromblee brings this action against Defendants the State of New York, New York Office for People with Developmental Disabilities ("OPWDD"), Chad Dominie, Liam Stander, and Alexis Barlow asserting claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended 42 U.S.C. § 2000e, et seq., 42 U.S.C. § 1983, and the New York State Human Rights Law ("NYSHRL") N.Y. Exec. Law § 290, et seq. (Dkt. No. 49-1, ¶ 2). Presently before the Court are Plaintiff's motions for leave to seal certain exhibits both in support of her pending partial summary judgment motion and in opposition to Defendants' pending summary judgment motions, (Dkt. Nos. 150, 168, 169); Defendants OPWDD, and Barlow's motions to seal certain exhibits in connection with their pending summary judgment motions, (Dkt. Nos. 144, 148); and Defendant Stander's motion to redact and seal certain portions of documents in connection with his pending motion for summary judgment, (Dkt. Nos. 146). For the reasons that follow, the parties' request to redact certain personal identifiers is granted and their motions to seal are otherwise denied in their entirety.

## II.    DISCUSSION

### A.    Sealing of Exhibits

#### 1.    Plaintiff's Motions to Seal

Plaintiff moves to seal three exhibits filed in support of her motion for partial summary judgment. (Dkt. No. 150; *see* Dkt. No. 149 (Plaintiff's motion for partial summary judgment)). Specifically, Plaintiff seeks to seal: Exhibit A, (Dkt. No. 149-2), "the Draft Investigative Report dated April 16, 2018, and revised on April 25, 2018"; Exhibit N, (Dkt. No. 149-15), Defendant Liam Stander's interrogation transcript dated March 13, 2018; and Exhibit O, (Dkt. No. 149-16), "an email from Defendant Alexis Barlow providing a statement to David Albano in furtherance of Defendant Dominie's arbitration proceeding," (Dkt. No. 150, at 1). Plaintiff argues that the information in these exhibits should be considered confidential under Section 1(d) of United States Magistrate Judge Christian Hummel's November 5, 2020 "Confidentiality Stipulation and Protective Order" (the "Protective Order"). (*Id.* at 1–2 (citing Dkt. No. 70, at 2 (designating as "Confidential" "[a]ny records, reports, or other documents prepared by the Agency, the Governor's Office of Employee Relations or any sub-office thereof, in connection with an investigation conducted regarding any of the events at issue in the instant lawsuit" ("agency investigative records")))).

Plaintiff has also moved to seal the majority of the exhibits she filed in connection with her opposition to Defendant Stander's motions for summary judgment. (Dkt. Nos. 168, 169; *see* Dkt. Nos. 166; 166-3 (Plaintiff's affidavit and exhibits in opposition to Defendant Stander's motion for summary judgment)). Specifically, Plaintiff seeks wholesale sealing of Exhibits B–Z, (Dkt. No. 166-3, at 23–63), AA, (*id.* at 64), CC–JJ, (*id.* at 70–77), MM, (*id.* at 88–93), and PP– QQ, (*id.* at 104–05). (Dkt. No. 168, at 1; Dkt. No. 169, at 1). Plaintiff asserts that Exhibits B–M, O–X, and PP "include testimony by witness [sic] who either participated in or conducted the

3

investigation referenced in Exhibit 'O' which is the Draft Investigative Report dated April 16, 2018" and that this report was marked "PRIVILEGED AND CONFIDENTIAL." (Dkt. No. 168, at 1). As such, Plaintiff argues the information contained in these exhibits should be considered confidential under Section 1(d) of the Protective Order, which protects agency investigative records. (Dkt. No. 168, at 1–2 (citing Dkt. No. 70, at 2)). Plaintiff asserts that Exhibit AA, an email from Defendant Barlow to David Albano providing a statement in furtherance of Defendant Dominie's arbitration proceeding, and Exhibits CC–JJ, also containing information pertaining to the arbitration, should be considered confidential under Section 1(d), the agency investigative records provision, of the Protective Order. (Dkt. No. 168, at 2 (citing Dkt. No. 70, at 2)). Plaintiff seeks to seal Exhibits N, Y, Z, and QQ on the basis that they contain information that "the parties otherwise agreed would be kept confidential under Section 1(e)" of the Protective Order. (Dkt. No. 169, at 1–2 (citing Dkt. No. 70, at 2)). Plaintiff also notes that she "has redacted Exhibits N and Z, to hide email addresses and telephone numbers (including personal cell numbers) for NYS employees." (Dkt. No. 169, at 2). Finally, Plaintiff seeks to seal Exhibit MM on the ground that it contains information that falls under Section 1(a) of the Protective Order, which designates as "Confidential," "medical and/or mental health care records."[1] (*Id.* at 1 (citing Dkt. No. 70, at 2)).

### 2. Defendant OPWDD's Motion to Seal

Defendant OPWDD seeks to seal Exhibits A–D to its motion for summary judgment. (Dkt. No. 148, at 1; *see* Dkt. No. 147 (Defendant OPWDD's motion for summary judgment)). Exhibits A and B, (Dkt. No. 147-3, at 3–4), contain copies of Plaintiff's August 31, 2021, and

---

[1] It is unclear from Plaintiff's submissions whether she seeks wholesale sealing of Exhibit MM, or seeks to file it with the identified redactions. (Dkt. No. 166-3, at 88–93).

September 1, 2021, deposition testimony. Exhibit C, (Dkt. No. 147-3, at 5), contains the transcript of Heidi-Lynn Wagner's deposition testimony. Exhibit D, (Dkt. No. 147-3, at 6), contains the transcript of Aubrey Shrestha's deposition testimony. Defendant OPWDD's purported basis for sealing Exhibits A through D is that they "contain or may contain references information or material that . . . [may] be deemed Confidential under" Section 1(a) of the Protective Order. (Dkt. No. 148, at 1–2 (citing Dkt. No. 70, at 2)). Defendant OPWDD additionally contends that "Exhibit A contains Plaintiff's current address, which is sensitive information given the allegations made in this action." (Dkt. No. 148, at 2).

### 3. Defendant Barlow's Motion for Leave to Seal

Defendant Barlow seeks to seal one exhibit in connection with her motion for summary judgment. (Dkt. No. 144, at 1; *see* Dkt. No. 143 (Defendant Barlow's motion for summary judgment)). Defendant Barlow argues that because Exhibit A, (Dkt. No. 143-3), contains Plaintiff's deposition transcript, it should therefore be considered confidential under Section 1(a) of the Protective Order, which designates medical or mental health care records as "Confidential." (*Id.* at 1–2 (citing Dkt. No. 70, at 2)). Additionally, Defendant Barlow seeks to seal this exhibit as it "contains Plaintiff's current address, which is sensitive information given the allegations made in this action." (*Id.* at 2).

### 4. Defendant Stander's Motion for Leave to Redact

Defendant Stander seeks to redact Exhibit A, (Dkt. No. 145-2), to his motion for summary judgment. (Dkt. No. 146, at 1; *see* Dkt. No. 145 (Defendant Stander's motion for summary judgment)). Exhibit A contains portions of his own deposition transcript, with redactions, taken on July 14, 2021. (*Id.*). Defendant Stander cites to Section 1(a) of the Protective Order in support of his redactions, stating the information redacted is "confidential as its

concerns medical and related personal issues. [sic] limited to mental-health treatment, and/or drug or substance-abuse treatment records." (*Id.* (citing Dkt. No. 70, at 2)).

### B.  Legal Standard

"The notion that the public should have access to the proceedings and documents of courts is integral to our system of government." *United States v. Erie Cnty.*, 763 F.3d 235, 238–39 (2d Cir. 2014). "Indeed, the common law right of public access to judicial documents is said to predate even the Constitution itself." *Id.* at 239. The First Amendment to the U.S. Constitution "also protects the public's right to have access to judicial documents." *Id.* A party seeking to seal documents submitted to a court bears the burden of showing that sealing is proper. *See DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997).

#### 1.  Common Law Right of Access

The Second Circuit has articulated a three-step process for determining whether documents should be sealed in light of the common law right of access. "Before any such common law right can attach . . . a court must first conclude that the documents at issue are indeed 'judicial documents.'" *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). To constitute a judicial document, "the item filed must be relevant to the performance of the judicial function and useful in the judicial process." *United States v. Amodeo* (*Amodeo I*), 44 F.3d 141, 145 (2d Cir. 1995).

Second, after determining that the documents are judicial documents and that the "common law presumption of access attaches," the court must "determine the weight of that presumption." *Lugosch*, 435 F.3d at 119. According to the Second Circuit,

> the weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts. Generally, the information will fall somewhere on a continuum from matters that directly affect an

> adjudication to matters that come within a court's purview solely to insure their irrelevance.

*United States v. Amodeo* (*Amodeo II*), 71 F.3d 1044, 1049 (2d Cir. 1995). When a document plays a role in a court's adjudication of litigants' substantive rights—a function that is "at the heart of Article III"—the presumption is strong, but "[a]s one moves along the continuum, the weight of the presumption declines." *Id.* When "documents are usually filed with the court and are generally available, the weight of the presumption is stronger than where filing with the court is unusual or is generally under seal." *Id.* at 1050.

Third, the court must balance any "competing considerations" against the weight of the presumption of access. *Lugosch*, 435 F.3d at 120. "Such countervailing factors include but are not limited to 'the danger of impairing law enforcement or judicial efficiency' and 'the privacy interests of those resisting disclosure.'" *Id.* (quoting *Amodeo II*, 71 F.3d at 1050); *accord Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 143 (2d Cir. 2016). When weighing privacy interests, courts should consider "the degree to which the subject matter is traditionally considered private rather than public." *Amodeo II*, 71 F.3d at 1051. Courts should also assess the "nature and degree of injury," paying heed to "the sensitivity of the information and the subject" but also to "how the person seeking access intends to use the information." *Id.* at 1051 (explaining that "[c]ommercial competitors seeking an advantage over rivals need not be indulged in the name of monitoring the courts").

### 2. First Amendment Right of Access

The First Amendment right of access stems from the qualified right of the public and the press "to attend judicial proceedings and to access certain judicial documents." *Lugosch*, 435 F.3d at 120 (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004)). Once a court concludes that there is a qualified First Amendment right of access to the judicial

documents at issue, it may only seal the documents "if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id*. (quoting *In re N.Y. Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)). "Broad and general findings by the trial court . . . are not sufficient to justify closure." *Id*. (quoting *In re N.Y. Times Co.*, 828 F.2d at 116). Examples of "higher values" may include law enforcement interests, the privacy of innocent third parties, *Amodeo II*, 71 F.3d at 1050, and the attorney-client privilege, *Lugosch*, 435 F.3d at 125.

### C. Application

The documents requested to be sealed in this case were submitted by the parties in support of and in opposition to Plaintiff's and Defendants' motions for summary judgment. "[I]t is well-settled that 'documents submitted to a court for its consideration in a summary judgment motion are—as a matter of law—judicial documents to which a strong presumption of access attaches, under both the common law and the First Amendment.'" *Brown v. Maxwell*, 929 F.3d 41, 47 (2d Cir. 2019) (quoting *Lugosch*, 435 F.3d at 121). As they are summary judgment submissions "used to determine litigants' substantive legal rights" they are subject to the "highest" presumption of access, and "should, absent exceptional circumstances, be subject to public scrutiny." *Lugosch*, 435 F.3d at 121, 123, 124 (quoting *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982)).

#### 1. Wholesale Sealing

The parties seek wholesale sealing of: Exhibits A, N, and O, (Dkt. Nos. 149-2, 149-15, 149-16), to Plaintiff's motion for partial summary judgment; Exhibits B–Z, (Dkt. No. 166-3, at 23–63), AA, (*id.* at 64), CC–JJ, (*id.* at 70–77), MM, (*id.* at 88–93), and PP–QQ, (*id.* at 104–05), to Plaintiff's Opposition to Defendants' motions for summary judgment; Exhibits A–D, (Dkt. No. 147-3, at 3–6), to Defendant OPWDD's motion for summary judgment; and Exhibit A, (Dkt.

No. 143-3), to Defendant Barlow's motion for summary judgment. However, the parties have not addressed the weight of the presumption or identified reasons that weigh against disclosure—other than in the most cursory fashion with citation to the Protective Order, which is insufficient to justify sealing. Not only does the Protective Order itself contemplate a separate motion to seal, (Dkt. No. 70, at 4), but the Local Rules specifically instruct that any motion to seal must "set[] forth the reason(s) that the referenced material should be sealed under the governing legal standard," L.R. 5.3(a) (citing *Lugosch*, 435 F.3d 119–27). Thus, the parties' broad citations to the Protective Order do not satisfy *Lugosch* and are, in any event, insufficient to overcome the presumption of access as the "mere existence of a confidentiality order says nothing about whether complete reliance on the order to avoid disclosure [is] reasonable." *Lugosch*, 435 F.3d at 126; *see also Doe v. U.S. Immigr. & Customs Enf't*, No. 19-cv-8892, 2021 WL 3862708, at *3, 2021 U.S. Dist. LEXIS 167094, at *7 (S.D.N.Y. Aug. 30, 2021) ("However, that a document was produced in discovery pursuant to a protective order has no bearing on the presumption of access that attaches when it becomes a judicial document." (quoting *Collado v. City of New York*, 193 F. Supp. 3d 286, 289 (S.D.N.Y. 2016))). Accordingly, Plaintiff and Defendants' motions to seal are denied without prejudice. The Court, however, grants the parties leave to file a letter brief, by December 19, 2022, not to exceed ten pages, providing specific reasons why each document should be sealed. *See Lugosch*, 435 F.3d at 124, *supra*. In their letter briefs, the parties should address each exhibit individually and indicate whether a redacted version could be filed. *See Sylvania v. Ledvance LLC*, No. 20-cv-9858, 2021 WL 412241, at *2, 2021 U.S. Dist. LEXIS 22447, at * 5 (S.D.N.Y. Feb. 5, 2021) ("A redaction will be approved only if it is narrowly tailored to the interest that justifies the redaction."). To the extent the parties seek to file redacted

9

versions of these exhibits, the proposed redacted versions must be submitted to the Court in accord with Local Rule 5.3(a) by December 19, 2022.

### 2. Proposed Redactions

As the email addresses and telephone numbers of NYS employees and Plaintiff's current address must be redacted in accordance with Local Rule 5.2(a), the proposed redactions to Plaintiff's Exhibits N, (Dkt. No. 149-15) and Z, (Dkt. No. 166-3, at 63), Defendant OPWDD's Exhibit A, (Dkt. No. 147-3, at 3), and Defendant Barlow's Exhibit A, (Dkt. No. 143-3), are appropriate. However, to the extent the parties seek wholesale sealing of these exhibits, their requests are denied for the reasons stated above.

As to Defendant Stander's motion to redact Exhibit A, (Dkt. No. 145-2), to his motion for summary judgment, those redactions pertaining to Defendant Stander's address and former name are granted. *See* L.R. 5.2(a). However, as to all other proposed redactions, (*see* Dkt. No. 145-2, at 39–40, 42–48), Defendant Stander states only that the redactions concern medical and mental-health issues and does not identify any specific basis in support of redaction or indicate whether the redactions are narrowly tailored to protect his privacy. *Lugosch*, 435 F.3d at 124 (sealing order must be "narrowly tailored to achieve the aim" of preserving higher values). Accordingly, Defendant Stander's request to redact these materials is denied without prejudice to filing a letter brief by December 19, 2022, providing specific reasons for the redactions.

### III. CONCLUSION

For these reasons, it is

**ORDERED** that Plaintiff's motion to seal, (Dkt. No. 169), is **GRANTED** in part to the extent Plaintiff seeks to redact email addresses and telephone numbers of New York State employees from Exhibits N, (Dkt. No. 166-3, at 35–36) and Z, (Dkt. No. 166-3, at 62–63); and it is further

**ORDERED** that Plaintiff's motions to seal, (Dkt. Nos. 150, 168, 169), are otherwise **DENIED** in their entirety with leave to renew; and it is further

**ORDERED** that Defendant Barlow and Defendant OPWDD's motions to seal, (Dkt. Nos. 148, 144), are **GRANTED** in part to the extent they seek to redact Plaintiff's current address, but are otherwise **DENIED** in their entirety with leave to renew; and it is further

**ORDERED** that Defendant Stander's motion to redact, (Dkt. No. 146), Exhibit A, (Dkt. No. 145-2), is **GRANTED** in part to the extent Defendant Stander seeks to redact his address and former name, but is otherwise **DENIED** in its entirety with leave to renew; and it is further

**ORDERED** that to the extent any party's renewed motion seeks to file a redacted version of an exhibit, the proposed redacted version must be provided to the Court in accord with Local Rule 5.3(a) by December 19, 2022; and it is further

**ORDERED** that if the parties do not file letter briefs in accordance with this Memorandum-Decision and Order by December 19, 2022, providing specific reasons for the requests for wholesale sealing and redaction of the Exhibits discussed above, the Clerk of the Court is directed to file these Exhibits publicly without further order.

**IT IS SO ORDERED.**

Dated: November 29, 2022

Brenda K. Sannes
Chief U.S. District Judge